**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHERINE JINES, JANE DOE 1, JANE DOE 2, JANE DOE 3, JOHN DOE 1 (a minor by and through his parent), and JOHN DOE 2 (a minor by and through his parent), on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

JURISDICTION AND VENUE ........................................................................... 2

THE PARTIES ..................................................................................................... 4

I.  Plaintiffs ................................................................................................... 4

    A.  Plaintiff Katherine Jines ................................................................. 4

    B.  Plaintiff Jane Doe 1 ........................................................................ 4

    C.  Plaintiff Jane Doe 2 ........................................................................ 4

    D.  Plaintiff Jane Doe 3 ........................................................................ 4

    E.  Plaintiff John Doe 1 ....................................................................... 5

    F.  Plaintiff John Doe 2 ....................................................................... 5

II. Defendants ............................................................................................... 5

    A.  The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) .......... 5

    B.  QualityHealth Staffing, LLC ......................................................... 7

FACTUAL ALLEGATIONS ............................................................................... 8

    A.  Devereux represented that it would provide children with a safe environment. .......... 15

    B.  Devereux and its staff members broke patients' and families' trust. .......... 16

    C.  Devereux failed to take steps to protect the children from abuse. ....... 24

    D.  Plaintiffs Were Abused in Devereux Facilities. ............................. 29

TOLLING OF STATUTE OF LIMITATIONS .................................................. 36

CAUSES OF ACTION ...................................................................................... 40

COUNT I VIOLATION OF TITLE IX (20 U.S.C. §§ 1681, *ET SEQ.*) CREATION OF SEXUALLY HOSTILE CULTURE/HEIGHTENED RISK OF SEXUAL HARASSMENT ............................................................ 40

COUNT II VIOLATION OF TITLE IX (20 U.S.C. § 1681(A), *ET SEQ.*) DELIBERATE INDIFFERENCE TO PRIOR SEXUAL HARASSMENT ............ 44

COUNT III NEGLIGENCE ............................................................................... 47

COUNT IV NEGLIGENT HIRING ................................................................... 48

COUNT V NEGLIGENT RETENTION ............................................................ 49

COUNT VI NEGLIGENT SUPERVISION ....................................................... 52

COUNT VII GROSS NEGLIENCE ................................................................... 53

**TABLE OF CONTENTS**
**(continued)**

Page

COUNT VIII NEGLIGENT MISREPRESENTATIONS AND OMISSIONS .......................... 56

COUNT IX VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* (PLAINTIFF JINES
AGAINST DEVEREUX) ................................................................................... 58

COUNT X VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CAL.
CIV. CODE §§ 1750 *ET SEQ.*  (PLAINTIFF JINES AGAINST DEVEREUX)........... 62

COUNT XI FAILURE TO REPORT CHILD ABUSE (CALIFORNIA CHILD ABUSE
AND NEGLECT REPORTING ACT,  CAL. PENAL CODE §§ 11164-11174.4)
(PLAINTIFF JINES AGAINST DEVEREUX) .............................................. 65

COUNT XII VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL"), 73 P.S. §
201-1, *ET SEQ.* (PLAINTIFFS JANE DOE 1, JOHN DOE 1, AND JOHN DOE 2
AGAINST DEVEREUX) ................................................................................... 66

COUNT XIII VICARIOUS LIABILITY ................................................................... 69

COUNT XIV ASSAULT AND BATTERY: JANE DOE 1 (PLAINTIFF JANE DOE 1
AGAINST DEVEREUX) ................................................................................... 70

COUNT XV ASSAULT AND BATTERY: PLAINTIFF JINES (PLAINTIFF JINES
AGAINST DEVEREUX) ................................................................................... 71

COUNT XVI ASSAULT AND BATTERY: JANE DOE 2 (PLAINTIFF JANE DOE 2
AGAINST DEVEREUX) ................................................................................... 71

COUNT XVII ASSAULT AND BATTERY: JANE DOE 3 (PLAINTIFF JANE DOE 3
AGAINST DEVEREUX) ................................................................................... 72

COUNT XVIII ASSAULT AND BATTERY: JOHN DOE 1 (PLAINTIFF JOHN DOE 1,
BY AND THROUGH HIS PARENT, AGAINST DEVEREUX) ................................. 73

COUNT XIX ASSAULT AND BATTERY: JOHN DOE 2 (PLAINTIFF JANE DOE 2,
BY AND THROUGH HIS PARENT, AGAINST DEVEREUX) ................................. 74

COUNT XX NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............................... 75

COUNT XXI INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ......................... 76

COUNT XXII BREACH OF FIDUCIARY DUTY ...................................................... 77

COUNT XXIII INJUNCTIVE AND EQUITABLE RELIEF  (PLAINTIFFS AND THE
NATIONWIDE CLASS AGAINST DEVEREUX) ...................................................... 77

CLASS ACTION ALLEGATIONS ......................................................................... 79

PRAYER FOR RELIEF ....................................................................................... 81

DEMAND FOR TRIAL BY JURY ......................................................................... 82

## INTRODUCTION

1.      Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"), through 21 facilities in 13 states, takes on responsibility for protecting more than 25,000 of our country's most vulnerable members: children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system.[1]

2.      Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Devereux failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law.

3.      As a result of Devereux's misconduct, children in Devereux facilities across the country have been reportedly sexually abused – often by Devereux staff.

4.      For example, in 2016, the Brevard County, Florida Sheriff's Office received reports of at least 200 incidents at Devereux, including 12 instances of children who experienced batteries and 11 who were subject to sexual offenses.[2]

5.      Then, in August 2020, the *Philadelphia Inquirer* released a devastating Report detailing decades of sexual, physical, and emotional abuse inflicted upon these especially vulnerable children by Devereux staff members. The Report reveals that "at least 41 children as young as 12, and with IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."

---

[1] https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=8C49CE92727 D35B4C0E776C432590E1B&pagename=about; https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited Dec. 17, 2020).

[2] Samantha Manning, *Manager at Devereux in Viera accused of having sexual relationship with student, police say*, WFTV.COM, https://www.wftv.com/news/local/manager-at-devereux-in-viera-accused-of-having-sexual-relationship-with-student-police-say/577702005/ (last visited Dec. 2, 2020).

6.      After the Inquirer's August 2020 report was published, an additional 13 former Devereux students came forward with allegations of sexual abuse they experienced.[3] These children were as young as 8 years old when they were sexually abused.[4] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[5] Seven of those children reportedly complained to Devereux staff or a social worker while the abuse was happening, but their complaints were ignored and the abuse continued.[6]

7.      Plaintiffs bring this lawsuit to hold Devereux accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Devereux's care.

8.      Accordingly, Plaintiffs Katherine Jines, Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe 1 (a minor by and through his parent), and John Doe 2 (a minor by and through his parent) make individual claims for the abuse they suffered and bring on behalf of others similarly situated a class action for injunctive relief to enjoin Defendant from continuing conduct that threatens imminent harm to the proposed class.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs allege actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034.

10.     This Court has subject matter jurisdiction over class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (1) Plaintiffs seek to represent a

---

[3] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited Dec. 2, 2020).
[4] *Id.*
[5] *Id.*
[6] *Id.*

nationwide class of individuals who were sexually, physically and/or emotionally abused at Devereux; (2) the amount in controversy exceeds $5,000,000, excluding interest and costs; (3) the proposed class consists of more than 100 individuals; and (4) none of the exceptions under the subsection applies to this action.

11.     This Court has subject matter jurisdiction over individual claims brought by Plaintiffs Jines, Jane Doe 2, and Jane Doe 3, based on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendants Devereux and QualityHealth are citizens of the state of Pennsylvania, where they are headquartered, incorporated, and operate their principal places of business. Plaintiff Jines is a citizen of Arizona, and Plaintiffs Jane Doe 2 and Jane Doe 3 are citizens of Florida. The amount in controversy, without interest and costs, exceeds $75,000.

12.     This Court has personal jurisdiction over Defendant the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) because its national headquarters is located at 444 Devereux Drive, Villanova, PA 19085. Devereux has continuous and systematic contacts with the state of Pennsylvania such that it is essentially "at home" in the state. Devereux was founded in Philadelphia, and its headquarters have remained in the state of Pennsylvania since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team operate out of their Pennsylvania headquarters. Defendant also operates approximately 90 Devereux facilities in northeast and southeast Pennsylvania.[7]

13.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

---

[7] https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited Jan. 19, 2021).

## THE PARTIES

### I.    Plaintiffs

#### A.    Plaintiff Katherine Jines

14.    Plaintiff Katherine Jines is a citizen of the state of Arizona and currently resides in Prescott Valley, Arizona.

15.    Plaintiff Jane Doe 2 was a patient at Devereux in Santa Barbara, California when she was approximately 13 years old, in or about 2013.

#### B.    Plaintiff Jane Doe 1

16.    Plaintiff Jane Doe 1 is a citizen of the state of Pennsylvania and currently resides in Oxford, Pennsylvania.

17.    Plaintiff Jane Doe 1 was a patient at Devereux in Malvern, Pennsylvania when she was approximately ages 14-17, beginning in or about 2003.

#### C.    Plaintiff Jane Doe 2

18.    Plaintiff Jane Doe 3 is a citizen of the state of Florida and currently resides in Tallahassee, Florida.

19.    Plaintiff Jane Doe 3 was a patient at Devereux in Woodville, Florida when she was approximately 14-16 years old, beginning in or about 2004.

#### D.    Plaintiff Jane Doe 3

20.    Plaintiff Jane Doe 4 is a citizen of the state of Florida and currently resides in Orlando, Florida.

21.    Plaintiff Jane Doe 4 was a patient at Devereux SIPP & Group Home in Woodville, Florida when she was approximately 14-16 years old, beginning in or about 2004.

### E.    Plaintiff John Doe 1

22.    Plaintiff John Doe 1, a minor by and through his parent, is a citizen of the state of Pennsylvania currently residing in Abington, Pennsylvania.

23.    Plaintiff John Doe 1 was a patient at Devereux in Malvern, Pennsylvania when he was approximately 8 years old, in or about 2018.

### F.    Plaintiff John Doe 2

24.    Plaintiff John Doe 1, a minor by and through his parent, is a citizen of the state of Pennsylvania currently residing in Thomasville, Pennsylvania.

25.    Plaintiff John Doe 2 was a patient at Devereux in Glenmoore, Pennsylvania when he was approximately 11 years old,  in or about 2019.

## II.    Defendants

### A.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)

26.    The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization which operates 21 campuses in 13 states[8], annually treating more than 25,000 children and young adults with advanced behavioral, intellectual, developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, PA 19085.

27.    Devereux's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide issues impacting Devereux

---

[8] Facilities are located in AZ, CA, CO, CT, DE, FL, GA, MA, –NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited Jan. 15, 2021).

campuses across the nation. Devereux's centralized decision-making is reflected in this team.  In addition to Devereux's CEO, included among Devereux's Senior Leadership Team are:

> a.    A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.

> b.    A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

> c.    A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values."

> d.    A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."

28.    Upon information and belief, at all times Devereux has been solely responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, as well as solely responsible for hiring, supervision, and disciplinary decisions concerning employees of Devereux facilities.

29.     Devereux regularly receives state and federal funding. Several examples of such funding include: funding from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program,[9] funding from "a combination of contracts and private foundation and government grants, including the U.S. Department of Education, Office of Special Education Programs" for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional Training and Research),[10] grants from the Pennsylvania Department of Education to develop programs for Devereux CARES, which has been licensed as an "Approved Private School,"[11] and a $40.2 million contract from the U.S. Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[12]

**B.      QualityHealth Staffing, LLC**

30.     QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc. QualityHealth is headquartered in King of Prussia, Pennsylvania.

31.     In April 2018, Devereux's newly-appointed President and CEO, Carl E. Clark II, announced an organizational redesign effort and expansion of its leadership team. The first phase of this redesign began in part with the launch of QualityHealth.[13]

---

[9] https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited Jan. 19, 2021).

[10] https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited Jan. 19, 2021).

[11] https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited Jan. 19, 2021).

[12] https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited Jan. 19, 2021). While this contract was still active as of August 2020; note, however, that the *Inquirer* reported the contract abandoned as of October 2020).

[13] https://www.devereux.org/site/SPageServer/?pagename=redesign_2018 (last visited Jan. 19, 2021).

32.     QualityHealth was formed to address the challenges related to recruiting and retaining individuals to work in the field of behavioral health. By providing "temporary, temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to fulfill roles in a timely manner and who experience difficulty in keeping up with the constant changes in employment regulation," QualityHealth aims to allow organizations to "focus on their mission of helping others, rather than spending time on staffing and employment issues."[14]

33.     Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as CEO of QualityHealth.

34.     At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control.

## FACTUAL ALLEGATIONS

35.     Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Devereux programs. Across its campuses in 13 states, Devereux offers hundreds of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[15]

---

[14] https://www.qhstaffing.com/about-us/ (last visited Jan. 19, 2021).
[15] https://www.devereux.org/site/SPageServer/?pagename=centers (last visited Jan. 19, 2021).

36.     Many parents send their children to a Devereux program because Devereux holds itself out as having expertise in supporting children with disabilities.[16] For foster youth, however, their placement in a Devereux program was likely the result of a series of decisions in the child welfare system.[17] Devereux offers several programs specifically tailored for youth who are under the custody of the state due to parental abuse or neglect.[18]

37.     Devereux CEO Carl Clark has admitted that, "Most of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[19]

38.     For the children who were abused at a Devereux facility, it was almost impossible to get help or stop the abuse because Devereux reportedly limited the contact many of them had with the outside world.[20] As Plaintiff John Doe 1 (below) has reported, when he tried to call his parents for help, Devereux staff forced him off of the phone, trapping the 8-year-old with his abusers.

---

[16] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited Jan. 15, 2021).

[17] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited Dec. 2, 2020).

[18] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited Jan. 15, 2021).

[19] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[20] *Id.*

39.    Nor was there any clear and safe mechanism by which victims could report abuse within Devereux; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.[21]

40.    Many of the children who were abused at Devereux were vulnerable, intellectually disabled, and already fleeing from abuse. Children with an IQ score below 70 are considered intellectually disabled.[22] Devereux is accused of abusing children with IQs as low as 50.[23]

41.    Devereux staff members also took advantage of children who had already been victims of sexual abuse and were at Devereux to seek healing.[24] As reported by the *Philadelphia Inquirer,* "A 15-year-old girl in a Devereux Florida program designed for sex-trafficking victims said she was raped twice by a staff member in 2017."[25] Plaintiff Jane Doe 4 was similarly raped by multiple staffers, who knew that she was a foster child who had been sexually abused before, as detailed below. Staff took advantage of these victims' vulnerability and emotional trauma

---

[21] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan. 15, 2021).

[22] MENTAL DISORDERS AND DISABILITIES AMONG LOW-INCOME CHILDREN 169 (Thomas F. Boat & Joel T. Wu eds., The National Academies Press 2015), https://www.ncbi.nlm.nih.gov/books/NBK332882/pdf/Bookshelf_NBK332882.pdf (last visited Jan. 19, 2021).

[23] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[24] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited Dec. 2, 2020).

[25] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

from past abuse. When these students were looking for adults whom they could trust and who made them feel safe, they were instead horrifically exploited.[26]

42.    The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[27]

43.    As reported by the *Philadelphia Inquirer,* Devereux staff have been accused of grooming children whom they abused; for example, they would offer children food,[28] which was at other times withheld from children like Plaintiff Jane Doe 3 (below) as a form of punishment. In describing one 43-year-old staff member's abuse of a girl "on the cusp of 15," the *Philadelphia Inquirer* reported, "She was flattered when he brought her gifts — an MP3 player, a necklace, a cell phone. He told her never to include his name in text messages – just his initials. They exchanged dozens of love letters."[29] The *Philadelphia Inquirer* further reported, "Instead of rigorously investigating red flags, Devereux repeatedly failed to identify clear signs that a staffer

---

[26] *Id.*

[27] https://www.childwelfare.gov/topics/can/factors/ (last visited Jan. 19, 2021).
[28] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited Dec. 2, 2020).
[29] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

- 11 -

may be grooming or sexually abusing a child, reporters found. The abuse often continued — or

even escalated."[30]

44.    Despite Defendant's awareness of decades of systematic sexual and physical

abuse of children in its care, Devereux has failed to enact appropriate uniform national and

system-wide protocols and policies to ensure the safety of its youth.[31] Devereux acted with an

extreme disregard for the wellbeing of children in its programs by failing to properly screen,

hire, and train employees, failing to report known abuse of youth in Devereux facilities, and

ignoring and covering up complaints alleged against it regarding child abuse.[32]

45.    Devereux has admitted that it was aware of repeated incidents of abuse within its

programs, as stated in the CEO's public response to the *Philadelphia Inquirer* Report.[33] Despite

this keen awareness of decades of systematic sexual and physical abuse of children in its care,

Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example,

after a staffer raped a 15-year-old girl at Devereux Georgia in 2012, the company created a

seven-page document identifying risk reduction strategies they planned to implement, including

training staff on sexual reactivity, developing a training video regarding supervision lapses

leading to sexual assaults, and adopting the "Diana Screen" program to evaluate new employees.

But when the victim sued Devereux, the vice president of operations/ executive director of the

Georgia campus testified at a jury trial, according to a news source, that she was unaware of new

---

[30] *Id.*

[31] *Id.*

[32]  Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan 15, 2021).

[33] *Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of Resident Safety*, https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited Jan. 15, 2021).

staff trainings regarding sexual reactivity and had no knowledge of training videos about supervision lapses.[34] Reportedly, she also testified at the jury trial that Devereux declined to adopt the Diana Screen method, which cost less than $30 to administer.[35]

46.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.[36]

47.    The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.[37]

48.    Indeed, Devereux's culture of indifference to the safety and well-being of its patients has caused abuse and sexual violence to flourish at Devereux for decades.[38] This toxic culture continues to thrive to this day,[39] even affecting staff. Employees and former employees

---

[34] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan 15, 2021).

[35] *Id.*

[36] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan 15, 2021).

[37] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited Jan. 19, 2021); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited Jan. 19, 2021)).

[38] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan 15, 2021).

[39] *Id.*

have posted reviews on Glassdoor.com, including a former Special Education Teacher who rated Devereux two out of five stars, complaining on December 14, 2019 about the "violent" environment and "minimal accountability," including the fact that "[m]ale staff are heavily relied upon to deescalate with minimal support from management. If staff aren't following expectations there are no consequences."[40]

49.    Another former employee who worked at Devereux as a Licensed Practical Nurse gave Devereux one out of five stars as an employer on May 29, 2018, and reported that:

> Devereux continues to put themselves out there as such a carding foundation for their clients . . . it's a cut throat intimidating, unsafe environment. . . very high turnover rate because they will overwork you, put you in unsafe situations no matter how much training they give you, when something goes wrong it's your fault no matter what happened . . . there isn't enough staff to take care of their clients properly and the nursing department who are supposed to be supportive of you and help take care of the clients treat the site nurses like garbage. . . stay away and protect your license and your back . . . run, don't walk away![41]

50.    A former DCP at a Devereux facility in Rutland, Massachusetts gave Devereux one of five stars as an employer, and reported in 2018 that:

> Frontline staff are taken advantage of, put in dangerous situations and penalized for speaking up. Work is very tiring, often resulting in injuries and culture is that it's frowned upon and sometimes discipline to use sick time [sic]. Leadership changes every week. They are good at making things look good but scratch beneath the surface and a lot of very concerning stuff going won with kids and staff. I was fired for calling out sick when I didn't have enough sick time. So much for 'caring' for people. Staff care way more about the kids than management and leadership. They prioritize profit and saving dollars. Kids placed inappropriately just to fill beds.
> **Advice to Management**
> Consider having some integrity, for the kids if not anything else.[42]

51.    These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Devereux program or facility

---

[40] *See* Exhibit 1 hereto.
[41] *See* Exhibit 2 hereto.
[42] *See* Exhibit 3 hereto.

across the nation.[43] This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.[44]

52.    Children arrive at Devereux facilities seeking treatment, healing, and belonging. For decades, Devereux has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.[45]

### A.    Devereux represented that it would provide children with a safe environment.

53.    Devereux boasts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[46] Devereux promised student learners compassion, knowledge, collaboration, dedication, learning, and progress.[47] Devereux provided hope to children who had mental health issues – along with their parents -- touting itself as "one of the largest and most advanced behavioral healthcare organizations in the country" with "a unique model that connects the latest scientific and medical advancements to practical, effective interventions in the treatment of behavioral health.[48]

54.    Children and their parents also trusted that patients would be kept safe based on Devereux's claims that "the safety and well-being of the children, adolescents and adults

---

[43] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Jan 15, 2021).
[44] *Id*
[45] *Id.*
[46] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited Dec. 2, 2020).
[47] *Id.*
[48] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited Dec. 2, 2020).

entrusted to our care is of the utmost importance."[49] Devereux advertises that it has a taskforce

focused on "ensuring every child and family is treated with care, compassion and dignity." It

also advertises a robust training and hiring process to ensure safety and security.[50]

      **B.**    **Devereux and its staff members broke patients' and families' trust.**

    55.    Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September

24, 2020, the City of Philadelphia announced that all youth would be removed from

Philadelphia-area residential care facilities operated by Devereux.[51]

    56.    Allegations of abuse at Devereux's facilities include:

        a.    As reported by the *Philadelphia Inquirer,* a Devereux staff member was

            charged with sexually abusing four children at a facility in Texas in

            2019.[52] One of the children was 12 years old.[53] Staff also allegedly

            threatened to beat up a 16-year-old girl if she told anyone about the

            abuse.[54] KPRC 2, a local Houston, TX news station, reported that the

            former Devereux staff member was being held "on two counts of sexual

---

[49] *Our Commitment to Safety and Security*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited Dec. 2, 2020).

[50] *What it Takes to Become a Devereux Employee*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=what_it_takes (last visited Dec. 2, 2020).

[51] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited Dec. 2, 2020).

[52] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[53] *Id.*

[54] *Id.*

assault of a child, two counts of aggravated sexual assault of a child and

two counts of indecency with a child involving sexual contact."[55]

b.   As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux

staff member at an Arizona facility sexually abused three girls in their

bedrooms and in the laundry room.[56] ABC15, a local Phoenix, Arizona

news station reported that the former Devereux staff member was being

held on "multiple charges of aggravated assault, sexual abuse and sexual

conduct with a minor."[57]

c.   In 2018, a 16-year-old boy with autism and developmental delays was

reportedly sexually assaulted by Devereux Staff at the Brandywine

facility,[58] located in Glenmoore, Pennsylvania.[59] The boy spent most of

his childhood in therapy learning how to do things like grip buttons and

zippers. One day, he fled the Glenmoore facility while his abuser at

Devereux chased him in a van. He was able to run to his program

---

[55] Bill Barajas, *Mental health worker faces slew of charges after being accused of sexually assaulting 4 children*, CLICK2HOUSTON.COM, https://www.click2houston.com/news/local/2019/12/20/mental-health-worker-faces-slew-of-charges-after-being-accused-of-sexually-assaulting-4-children/ (last visited Dec. 2, 2020).
[56] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).
[57] Joe Enea, *Behavioral health worker accused of sexually abusing young female patients in Phoenix*, ABC15 ARIZONA, https://www.abc15.com/news/crime/pd-behavioral-health-worker-accused-of-sexually-abusing-young-female-patients-in-phoenix (last visited Dec. 2, 2020).
[58] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).
[59] *Emotional and Behavior Health Challenges*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_services_for_children_adolescents_bh (last visited Dec. 2, 2020).

supervisor's office. He counted backwards, a technique he had learned to calm himself, and told the supervisor that a Devereux staff member had been sexually assaulting him and another 14-year-old child, who he saw as his "little brother." The boy tried to kill himself several times since his abuse at Devereux.[60] As reported by the *Philadelphia Inquirer*, the boy's abuser was sentenced to eight years in prison for abusing him and two other 14-year-old children.[61]

d.    In 2017, a Devereux staff member was accused of raping a 15-year-old victim of child sex trafficking at Devereux's Viera, Florida facility.[62] The victim had previously reported this staff member's increasing sexual misconduct towards her, but Devereux staff members dismissed her complaints.[63] After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse.[64] After being re-traumatized at Devereux, she was again sex-trafficked.[65] The Devereux staff member whom the student accused of raping her on campus came and found her through her sex

---

[60] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html \(last visited Dec. 2, 2020).
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*

trafficking name, and allegedly sexually abused her once again.[66] As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[67]

e.    In around 2014, a Devereux staff member and "married father with a degree in theology" sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. In particular, the staff member groomed his victim, including by exchanging "love letters" of which other Devereux staff members were aware,[68] protecting the victim from the employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to write more letters to him because that "could get him in trouble."[69] The *Philadelphia Inquirer* further reported, "A month after [the victim] was told to apologize to [the staff member], she was home for Thanksgiving when the staffer asked her to send him naked photographs of herself."[70] On her next home pass, the staff member told the victim to meet him in

---

[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*

Southwest Philadelphia. He took her shopping, buying her clothes and sneakers. He then drove her to an alley and sexually assaulted her in his car before he dropped her off at a bus station to find her way home."[71] The staff member continued to abuse the victim when she returned to Devereux, where he was alone with her almost every day.[72] The victim's roommate told her therapist what was going on, and Devereux staff members found a hidden cell phone with "naked photos and explicit messages between the two."[73] "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a minor, sexual abuse of children and corruption of minors after trial in September, 2016."[74,75]

f.    In 2012, another Devereux Staff member orally raped a girl through her bedroom window twice in one night in a Devereux Georgia facility.[76]

---

[71] *Id.*

[72] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[73] *Id.*

[74] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited Dec. 2, 2020).

[75] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[76] *Id.*

According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[77]

g.     In 2001, as reported by the *Philadelphia Inquirer*, a Devereux staff member allegedly raped a 15-year-old girl in a staff room when she was half-asleep and heavily medicated at the campus in Malvern, Pennsylvania.[78] She was able to call 911.[79] Devereux staff allegedly promised her father that this would never happen again.[80] Two weeks later another staff member allegedly raped her in the same staff room.[81] The staff member was high at the time and Devereux was allegedly aware that he had a drug problem.[82] The *Philadelphia Inquirer* reported that in a letter from prison, the staff member said, "My employer was aware of my drug problem and was in the process of getting me help."[83] The staff member impregnated his victim, who was then further traumatized by her abortion.[84] Many years later she still feels that she does not deserve to have children.[85] She considers the year she was raped at Devereux to be the year that she died.[86]

h.     As reported by the *Philadelphia Inquirer*, "In 2000, a 14-year-old at Devereux's Malvern, Pennsylvania campus confided to a male staffer that

---

[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*

she'd been abused by a relative; that DSP began molesting her and leaving used condoms on her windowsill, [the victim] said in an interview: 'I told them it was him, but they never made a report, ever.'"[87]

i.  As reported by the *Philadelphia Inquirer*, "Altogether, police said 16 girls had been sexually abused by staff at a Devereux facility located in Deerhaven, New Jersey, between 1996 and 1999."[88] In a 1997 instance, the *Philadelphia Inquirer* reported, "a supervisor was walking a 13-year-old to the nurse's station when his walkie-talkie crackled, and the girl began to cry. The voice on the supervisor's radio belonged to a 30-year-old staff member. He had molested her, the girl said."[89]

j.  According to a complaint filed in 2020, there were 13 more victims of sexual, physical, and verbal abuse in Pennsylvania in addition to the 41 reported by the *Philadelphia Inquirer* who were abused from 2004-2014.[90] The victims were as young as eight years old.[91] Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[92]

k.  In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-

---

[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited Dec. 2, 2020).
[91] *Id.*
[92] *Id.*

workers were accused of not reporting the incidents as required by law.[93]

Allegedly, in one instance, a "27-year-old [staff member] threw a 16-year-old to the ground and struck the victim with her knees multiple times, causing the victim to suffer a broken arm."[94]

l.    In 2016, a Devereux staff member in Viera, Florida faced child abuse charges for hitting and elbowing a child in the face multiple times, Florida Today reported.[95]

m.    Then, in 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child.[96] According to *Florida Today,* "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras."[97] A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[98]

---

[93] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients,* CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited Dec. 2, 2020).

[94] *Id.*

[95] Rick Neale, *Devereux Viera staffer charged with striking girl, 14,* FLORIDA TODAY, https://www.floridatoday.com/story/news/2016/11/05/devereux-viera-staffer-charged-striking-girl-14/93343094/ (last visited Dec. 2, 2020).

[96] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited Dec. 2, 2020).

[97] *Id.*

[98] *Id.*

**C.**      **Devereux failed to take steps to protect the children from abuse.**

57.      Devereux's centralized decision-making structure means rules, policies,

procedures promulgated by the Senior Leadership Team govern the administration of all

Devereux facilities nationwide.

58.      Devereux's failure to enact adequate policies to protect the children in its care,

and its failure to adequately screen, hire, train, and supervise staff, caused harm across

Defendant's facilities.

59.      Even Devereux's employees have observed the issues that he insufficient policies

and failures have caused. One current employee, a Direct Support Professional, gave Devereux

one out of five stars as an employer on Glassdoor.com on December 14, 2019, posting the

following review:

> There is absolutely no supportive infrastructure here, while the staff work with kids who
> are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting
> that way- I would be angry if I were them too. Some of the staff bully the kids, and
> occasionally, other staff. There is no support for reporting incidents. There is virtually no
> therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at
> 2:00 – many of the kids reported not having therapy for over a month, even though it is a
> residential TREATMENT center.  The staff are left completely on their own to structure
> the kids' days with no support from therapists. Staff egg on fights and threaten to restrain
> kids at every little sign of resistance. Kids have no choices, and there is no opportunity
> for them to engage in anything supportive of their growth and development. The job also
> pays little and uses that as leverage for people to work double shifts to gain overtime pay.
> Staff push themselves to exhaustion for the pay while working with kids who need A
> LOT of attention. Overall, extremely unsafe and unsupportive environment in so many
> ways.[99]

60.      A current employee who works as a Case Manager reviewed Devereux on

Glassdoor.com on April 23, 2019, giving it one out of five stars and complaining that, "Literally

---

[99] *See* Exhibit 4.

you get thrown into a job that you know nothing about and are expected manage a huge caseload. Impossible to function and maintain sanity. Not very team oriented."[100]

61.     As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the company wasn't attracting the right employees."[101] For example, the Devereux Deerhaven, New Jersey campus director told the *Daily Record* in 1985, "The problem is that the salaries that we are able to pay our staff are so inadequate."[102]

62.     In fact, a January 17, 2021 listing Glassdoor.com showed that Direct Support Professionals at Devereux facilities Pennsylvania have the potential for a rate increase to $13.75,[103] and that an Autism Activity Counselor at Devereux would make $14.75-$16.82 per hour.[104] An employee working 40 hours per week, 52 weeks per year at $13.75 would take home a gross annual salary of $28,600. The poverty level for a family of four in Pennsylvania in 2020 was $26,200.[105] A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50 plus $1 shift [differential] if you work after 3pm and on weekends. Working 14 hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no meal breaks. Expect injuries from the kids. Management always telling you how to do better, not addressing moral[e] or high turnover. Lack of supervisors because of high turnover and low moral[e]. Benefits are expensive and you already at a very low (non-living wage.)[106]

---

[100] *See* Exhibit 5 hereto.

[101] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[102] *Id.*

[103] *See* Exhibit 6, attached hereto.

[104] *See* Exhibit 7, attached hereto.

[105] https://dced.pa.gov/housing-and-development/weatherization/income-eligibility/ (last visited Jan. 19, 2021).

[106] *See* Exhibit 8 hereto.

63.    Another former Vocational Aide who worked at a Devereux facility in Woodbury, New Jersey gave Devereux one out of five stars, and reported in 2019 that, "[I]t is very hard surviving off of a paycheck coming from Devereux."[107] Also, the "rate increase" salary for Deveraux employees is only slightly higher than Pennsylvania's minimum wage of $7.25 per hour,[108] which is among the lowest in the nation and that has seen legislative efforts to increase it to $9.50 per hour.[109]

64.    There is no excuse for Devereux to have allowed this systemic abuse in its facilities. Devereux had the funds to hire qualified employees, provide adequate staffing and training, and to supervise its staff. Devereux receives more than $497 million per year and 95% of its revenue is from government sources.[110] In the fiscal year 2020, Devereux received approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was supposed to be used for housing and treating children with psychiatric, intellectual, and behavioral disabilities.[111] CBH, with which the City of Philadelphia contracts to place Medicaid recipients in psychiatric residential treatment, paid Devereux $12.9 million in 2019 -- $7.7 million of which was for residential treatment facilities.[112]

---

[107] *See* Exhibit 9 hereto.
[108] https://www.dli.pa.gov/Individuals/Labor-Management-Relations/llc/Documents/LLC-1%20REV%2009-20.pdf (last visited Jan. 19, 2021).
[109] *See, e.g.,* https://whyy.org/articles/pennsylvanias-lowest-wage-workers-may-have-a-raise-coming-or-not/ (last visited Jan. 19, 2021).
[110] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited Dec. 2, 2020).
[111] *Id.*
[112] *Id.*

65.    Despite the large amount of public funding that Devereux receives, Devereux has severely understaffed its facilities.[113] For example, as reported by the *Philadelphia Inquirer*, a staff member who was supposed to be responsible for only seven children in a shift would at times end up caring for twenty children.[114] The supervision issues were so severe that a police detective reportedly met with leaders at Devereux's Malvern campus to ask it to fix its staffing issues.[115]

66.    Other staff failed to do their jobs, which included ensuring children's safety. As reported by the *Philadelphia Inquirer,* Devereux staff seemed to disappear for hours and regularly slept through their shifts.[116] As further reported by the *Philadelphia Inquirer,* some of them played video games for hours without checking on the students even though that was part of their job.[117] It was further reported that instead of checking on students every 15 minutes during the night as required, some Devereux staff even came to work with sleeping bags and pillows so that they could sleep through the night.[118] One reason for these failures is that

---

[113] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[114] *Id.*

[115] *Id.*

[116] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited Dec. 2, 2020).

[117] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[118] *Id.*

- 27 -

Devereux's staff was severely underpaid and had to work more than one job.[119] Meanwhile, at least one child was reportedly sexually abused in a closet.[120]

67.    As reported by the *Philadelphia Inquirer*, Devereux only paid its staff an average of $26,000 per year in 2017.[121] The low pay encouraged staff to work 16- hour shifts to earn overtime pay.[122] Because pay was so low, Devereux likely could not attract employees who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[123] For example, according to the *Philadelphia Inquirer*, a former Devereux staff member who worked at a facility in Georgia between 2011 and 2013 said in a deposition recounted in the news report, "Because of the type of work that the staff does, they get burned out. And the pay isn't great, so you don't get people in there who are professional."[124]

68.    Devereux put vulnerable children in danger by underpaying and overworking staff, and inadequately supervising them, while receiving hundreds of millions in government funding.

69.    Despite this unacceptable failure to ensure children's safety from staff and other students, in 2018, Devereux campaigned to raise $1.25 million for a new facility, *Phoenix Business Journal* reported.[125]

---

[119] *Id.*
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] Angela Gonzales, *Nonprofit to break ground on $1.25M residential treatment center in Scottsdale*, PHOENIX BUSINESS JOURNAL, https://www.bizjournals.com/phoenix/news/2018/04/15/nonprofit-to-break-ground-on-1-25m-residential.html (last visited Dec. 2, 2020).

70.     Devereux announced later in 2020 that it had "received funding from the Florida State Legislature to expand the organization's Commercial Sexual Exploitation of Children (CSEC) program, which provides comprehensive treatment for children and adolescents who have experienced emotional, physical or sexual trauma."[126]

71.     Devereux was aware of initiatives that it could adopt to protect its students from abuse. It identified solutions such as increased training and employment screenings but failed to implement these measures for years.[127] Devereux also allowed boys to stay in rooms with walk-in closets even after they had begun to remove such closets from other areas of the facilities due to pervasive abuse. As the *Philadelphia Inquirer* reported, a boy was assaulted in one of these walk-in closets that had not yet been removed.[128] Because Devereux failed to take even these basic measures to protect its students, many students will carry the emotional and physical scars of Devereux's inaction for the rest of their lives.

**D.      Plaintiffs Were Abused in Devereux Facilities.**

72.     Plaintiffs Jines, Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe 1, and John Doe 2 were all abused during their stays at Devereux.

**Plaintiff Katherine Jines**

73.     Plaintiff Katherine Jines was 13 years old when she was abused by staff members and peers in a residential Devereux treatment center in Santa Barbara, California.

---

[126] *Devereux Florida Receives Funding to Support Sexually Exploited Youth*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=csec_2020_funding (last visited Dec. 2, 2020).

[127] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[128] *Id.*

74.     Devereux staff routinely allowed Plaintiff Jines' roommate to physically assault her. Each time that this physical abuse occurred, Plaintiff Jines would tell a staff member. The staff did nothing in response to this abuse.

75.     Plaintiff Jines was further traumatized by Devereux staff when she and the other young girls in her treatment program took showers. An adult male staffer sat on a couch outside the showers, watching Plaintiff Jines and the other naked young girls as they went in and out of the showers. Plaintiff Jines continues to live with the trauma, humiliation, and anguish of deplorable act.

76.     Devereux staff also administered medication to Plaintiff Jines which belonged to another patient.

77.     At no time could, nor did, Plaintiff Jines consent to any of these horrendous acts that she was forced to suffer through.

**Plaintiff Jane Doe 1**

78.     Plaintiff Jane Doe 1 was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff during her residential treatment at the Sugartown Road Devereux facility in Malvern, Pennsylvania. This treatment center provides intensive services for children like Jane Doe 1 who have advanced emotional, behavioral, and cognitive needs requiring full time residential treatment.

79.     During her stay at Devereux, Jane Doe 1 was placed with a roommate who expressed a desire for a physical relationship with Jane Doe 1. When Jane Doe 1 refused the attempts for a relationship, her roommate began sexually assaulting her by making unwanted physical advances.

80.    When Jane Doe 1 gained the courage to report this sexual harassment to a Devereux staff member entrusted with her care and supervision, that staff member punished her for "complaining" by placing her in solitary confinement.

81.    While Jane Doe 1 was in solitary confinement, her virginity was forcefully taken from her when an adult Devereux staff member raped her.

82.    Following this trauma, Jane Doe 1 was forced to return to room with the same sexually assaultive peer.

83.    On several occasions, Devereux staff members abused Jane Doe 1 by withholding meals from her as punishment when Jane Doe 1 "cried too much".

84.    At no time could, nor did, Plaintiff Jane Doe 1 consent to any of these horrendous acts that she was forced to suffer through.

**Plaintiff Jane Doe 2**

85.    Plaintiff Jane Doe 2 was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff during her stay at a therapeutic residential treatment program in Florida.

86.    Devereux staff members tasked with Jane Doe 2's care and treatment forced Jane Doe 3 to kiss another minor girl who was at the Devereux center for therapeutic behavioral care. Staff members took photos of Jane Doe 2 while she endured this abuse.

87.    Devereux staff also used abusive, humiliating, and degrading discipline techniques towards Plaintiff Jane Doe 2. One example of such abusive punishment includes making Jane Doe 2 pull her mattress out of her room and into the living room, forcing her to sleep in the common area and depriving her of her privacy.

88.    Devereux staff also punished Jane Doe 2 by withholding food and meals from her.

89.     During her purported treatment at Devereux, Plaintiff Jane Doe 2 was misdiagnosed with a mental illness she did not actually have. Devereux staff kept her medicated consistent with the mental illness, over-medicating her to keep her under control.

90.     At no time could, nor did, Plaintiff Jane Doe 2 consent to any of these horrendous acts that she was forced to suffer through.

**Plaintiff Jane Doe 3**

91.     Plaintiff Jane Doe 3 was a 14-year-old foster child when she was sexually groomed, assaulted and raped by multiple Devereux staff members during her treatment at the Devereux Statewide Inpatient Psychiatric Program and Group Home in Orlando, Florida. Jane Doe 3 entered this program as an abuse victim seeking healing, psychological treatment, and security, but exited the program with even deeper wounds due to the abhorrent sexual abuse she suffered at the hands of Devereux.

92.     A Devereux staff member began taking Jane Doe 3 and another patient to the movies. While on these excursions, the staff member would take Jane Doe 3 into the bathroom to perform sexual acts.

93.     Following these sexual assaults, the staff member continued to attempt contact with Jane Doe 3 using Devereux phone and email accounts. When Jane Doe 3 was asked about potential abuse, she did not want the staff member to get in trouble and denied that anything had happened to her.

94.     A second Devereux staff member then began a sexual "relationship" with Jane Doe 43. The relationship began with grooming behaviors by the adult Devereux staff member. The staff member then began picking up Plaintiff Jane Doe 3 in the Devereux van, taking her off

campus to have sexual relations with her. This pattern of predatory sexual behavior continued for over one year.

95.    Jane Doe 3, who was between 14 and 16 years old at the time, did not and could not comprehend the nature of these "romantic" and sexual interactions with an adult staffer. The staffer knew that Jane Doe 3 was a foster child who was receiving treatment for sexual abuse she had suffered in the past, and used that knowledge, in addition to Jane Doe 3's age, to take advantage of her vulnerabilities.

96.    At no time could Plaintiff Jane Doe 3 consent to any of these horrendous acts that she was forced to suffer through.

**Plaintiff John Doe 1**

97.    Plaintiff John Doe 1 was eight years old when he was physically abused during his treatment at Devereux in Malvern, Pennsylvania.

98.    John Doe 1's parents entrusted Devereux to provide a safe, therapeutic environment for John Doe 1 to overcome challenges related to his Autism Spectrum Disorder diagnosis.

99.    During John Doe 1's first two weeks at the program, his parents were denied any contact with John Doe 1.

100.    When Plaintiff John Doe 1 was finally able to talk to his parents on the phone, he told them that he was scared and had been hurt. Devereux staff then forced him off the phone.

101.    John Doe 1's parents were unable to reach him on the phone after this, so they went to the facility to demand to see John Doe 1 in person. Devereux allowed John Doe 1's parents to meet with him together with his case manager.

102.    John Doe 1's parents saw that he had a red mark on his neck. John Doe 1 described to his parents how Devereux staff had forced him into a choke hold, causing the marks on his neck. He also told his parents that Devereux staff had thrown him onto his bed, causing him to strike his head against the hard frame. John Doe 1 was visibly afraid and begged his parents to come home.

103.    John Doe 1's parents asked for the names of the staff members they met, as well as the names of the staff members who had abused their child, but were denied this information. They were told only that a "male employee", whose name they could not disclose, had injured their child, but that he was moved to a different unit and so was no longer in contact with John Doe 1. When John Doe 1's parents asked if these issues had been reported to DHS, they were not told either way.

104.    Plaintiff John Doe 1's parents removed him from Devereux the following week. Devereux resisted this decision and only allowed John Doe 1's parents to take him home after signing paperwork that this removal was "against medical advice."

**Plaintiff John Doe 2**

105.    Plaintiff John Doe 2 was 11 years old when he was physically and emotionally abused by multiple Devereux staff members while a patient at Devereux in Glenmoore, Pennsylvania.

106.    John Doe 2 was placed in this Devereux program after suffering with aggression and suicidality.

107.    Three to four months into his first placement at Devereux, he was moved to a new building with different staff members. It was in this setting when John Doe 2 first called his

mother to report that he did not feel safe. Because he knew his calls were monitored, John Doe 2 could not provide any more details.

108.    When John Doe 2's mother visited him at the facility, she noticed marks on his body. John Doe 2 told her that some of these marks were from other youth in his program, but other marks were caused by staff members. His wrist was so swollen that his mother considered bringing him to the emergency room. There were thumb marks on his ribs, including thumbnail indentations.

109.    John Doe 2 told his mother that staff members restrained him by holding their arms on his throat against a wall and putting their knees on his chest. Once, when John Doe 2 was being restrained in this way, he spit on the staff. The next day, this staff member berated him in front of everyone, saying, among other things, "You're a little pussy." John Doe 2 appeared to be experiencing a panic attack when recounting these details to his mother.

110.    During these visits, John Doe 2 behaved fearfully, looking over his shoulder at the staff members and speaking quietly as if he was afraid that the staffers would hear what he was saying.

111.    When John Doe 2's mother and/or therapist reported the abuse to ChildLine in Pennsylvania, there was an investigation conducted where the staff in question was moved for two weeks while the evidence was reviewed. One male staffer was investigated on three separate occasions for abuse of John Doe 2. But because the staff was aware of cameras in the general living spaces, they performed these unauthorized, abusive holds on John Doe 2 in areas where there are no cameras. And because the video monitoring does not capture audio, the verbal abuse could not be substantiated. After each investigation of the staff members, John Doe 2 told his mother that the staff members would retaliate against him for reporting the abuse.

## TOLLING OF STATUTE OF LIMITATIONS

112.    The statute of limitations is tolled based on the doctrines of continuing violations and fraudulent concealment.

113.    Upon information and belief, physical, emotional, and/or sexual abuse of Devereux patients occurred as early as 1996, and has continued until at least 2019, if not the present. [129]

114.    Tolling of the statute of limitations based on fraudulent concealment occurs where the entity liable for the claim fraudulently conceals the existence of the claim or the identity of any person liable for the claim from the knowledge of the person entitled to sue.[130] To satisfy the equitable principle of fraudulent concealment in order to toll the statute of limitations, Pennsylvania, California, and Florida case law agree that Plaintiffs must show: (1) successful concealment of the causes of action; and (2) fraudulent means to achieve that concealment.

115.    Devereux concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had causes of action against them at the time the physical, emotional, and sexual abuse occurred by making material representation(s) to Plaintiffs involving a past or existing fact by, including but not limited to:

        a.    Misrepresenting that the abuse experienced by Plaintiffs was part of their treatments, in part by accompanying the abuse with actual medical treatments including sedatives, as in the case of Plaintiff Jane Doe 2;

---

[129] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

[130] Pennsylvania, California, and Florida state case law all recognize the doctrine of fraudulent concealment as applied to the tolling of any relevant statutes of limitations. *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005); *Britton v. Girardi*, 235 Cal. App. 4th 721 (2015); *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635 (Fla. Dist. Ct. App. 2015).

b.      Misrepresenting that the abuse experienced by Plaintiffs was appropriate by taking advantage of the vulnerability of patients who were looking for adults whom they could trust and who made them feel safe, including by: building trust with patients as a method of grooming them for sexual abuse, bringing gifts to their patients, providing patients with extra privileges, and exchanging "love letters" with their patients;[131]

c.      Representing that Devereux's physical, emotional, and sexual abuse of Plaintiffs was normal, medically necessary, proper, appropriate, legitimate, and/or medically beneficial, generally;

d.      Representing that Devereux was not physically, emotionally, and sexually assaulting Plaintiffs;

e.      Representing that Plaintiffs should not question and/or report the conduct to appropriate authorities; and

f.      Representing that there was no possible cause of action against Devereux.

116.    The material representation(s) to Plaintiffs were false in that Devereux was actually physically, emotionally, and sexually violating Plaintiffs.

117.    When Devereux made the material representation(s), they knew or should have known that the representations were false in that the treatment of Plaintiffs was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty.

---

[131] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited Dec. 2, 2020).

118.    Devereux made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they had previously received strikingly similar complaints of physical, emotional, and sexual abuse by Devereux staff from other previous patients and knew that the appropriateness of their conduct had been questioned in the past.

119.    Defendant's representations were material, in that had Plaintiffs known the representations were false, they would have stopped seeking treatment from Devereux immediately.

120.    Devereux made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs in that Plaintiffs should believe that their treatment at Devereux's facilities was proper, appropriate, and legitimate; should not believe that they had been abused; should continue to be treated at Devereux's facilities so that the abuse could continue; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Devereux.

121.    Plaintiffs acted in reliance upon the material representation(s) in that they: (a) reasonably believed that their treatment was proper, appropriate, and legitimate; (b) reasonably did not believe that they had been physically, emotionally, and sexually abused; and (c) did not believe that they should question and/or report the conduct to appropriate authorities.

122.    In addition to affirmative false representations, Defendant failed to disclose to Plaintiffs that they were being abused and that Devereux had a history of committing physical, emotional, and sexual assaults in the guise of medical treatment.

123.    Defendant's representations caused Plaintiffs to be exposed to the risk of physical, emotional, and sexual abuse by Devereux staff, and to actually be physically, emotionally, and/or sexually abused by Devereux staff.

124.    Devereux is equitably estopped from relying upon a statute of limitations defense because of its gross negligence and silence as well as its active and deliberate efforts to deceive Plaintiffs and to conceal their unlawful and grossly negligent conduct. Through its gross negligence and silence, Devereux encouraged and influenced Plaintiffs to act to their disadvantage by telling them that their complaints about physical, sexual, and emotional abuse were unfounded, encouraging them to continue seeking treatment at Defendant's facilities and making them feel ashamed, such that Plaintiffs could not discover the nature, scope, and magnitude of Defendant's misconduct.  As set forth herein, Defendant also took active steps to misrepresent material facts.

125.    Plaintiffs' claims should be equitably tolled because any alleged failure to meet any deadline unavoidably arose from circumstances beyond Plaintiffs' control. Devereux concealed material facts regarding Devereux's misconduct and for decades Defendant misrepresented and fraudulently concealed this activity and the substantial risks posed by that misconduct.

126.    Devereux intended for the public, including Plaintiffs, to be deceived by this fraud such that Devereux's conduct remained unstopped for decades and the repercussions of their misconduct was not dealt with to the detriment of Plaintiffs. As set forth herein, Defendant knew the actual facts, that Devereux staff have been abusing their youth for decades, and that Defendant knowingly did nothing to stop it.

127.    Plaintiffs' damages, as herein alleged, were proximately caused by Devereux.

128.    As minors, Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Devereux at the time that such abuse occurred.

## CAUSES OF ACTION

### COUNT I
### Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
### Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment

129.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

130.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

131.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

132.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

133.    The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

134.    Plaintiffs are "persons" under Title IX.

135.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

136.    Defendant receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

137.    Under Title IX, Devereux was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

138.    Plaintiffs were subject to sexual harassment, abuse and assault by Devereux staff members while patients and/or residents at Defendant's facilities and programs as described above, including: experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sex with a minor; rape of a minor student by a staff member; male staff watching naked girls shower; forcing a Plaintiff to kiss other youth while taking photos; and repeated sexual grooming behaviors.

139.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.[132]

---

[132] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html.

140.    Devereux was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX, including through complaints by Plaintiffs Jines and Jane Doe 1 directly to Devereux staff that they were being abused and assaulted. In fact, the CEO of Devereux was not surprised to hear of the repeated sexual and physical abuse revealed by the *Philadelphia Inquirer's* recent investigation. As stated in his response to the Report, the CEO suggested that Devereux was aware of every incident of abuse included in the Report.[133]

141.    Devereux is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Devereux youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

142.    Devereux is responsible for setting and approving all national, organization-wide policies and protocols for Devereux programs and operations, including sex discrimination policies.

143.    Devereux failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

144.    By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

---

[133] https://www.devereux.org/site/SPageServer/?pagename=response_to_safety.

145.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiffs.

146.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiffs were damaged.

147.    Devereux was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

    a.    Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

    b.    Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Devereux;

    c.    Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Devereux residents and patients;

    d.    Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

    e.    Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

148.    Devereux's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

- 43 -

149.    Because Devereux failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Devereux, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

150.    In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Devereux acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

151.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT II
### Violation of Title IX (20 U.S.C. § 1681(a), *et seq.*)
### Deliberate Indifference to Prior Sexual Harassment

152.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

153.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

154.    Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

155.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

156.    Devereux regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

157.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

158.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

159.    Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment—including sexual assault—by school employees, students, and third parties.

160.    Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

161.    Before Plaintiffs were abused while at Devereux, Devereux had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

162.    Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Devereux.

163.    With this knowledge, Devereux had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

      a.    Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

      b.    Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

      c.    Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

      d.    Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

      e.    Improving Devereux's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

164.    Devereux's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

165.    By its acts and omissions, Devereux was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Devereux.

166.    As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Devereux's programs.

167.    Because Devereux did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Devereux, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

168.    The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Devereux.

169.    In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Devereux in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

170.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT III
## NEGLIGENCE

171.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

172.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

173.    Devereux acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing

to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Devereux programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs.

174.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

175.    By failing to exercise ordinary care through their acts and omissions, Devereux caused harm to Plaintiffs.

176.    Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

**COUNT IV**
**NEGLIGENT HIRING**

177.    Devereux is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendant's programs.

178.    Devereux knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags", Devereux would have known that these employees were not suitable for the particular duty of caring for children.

179.    It was unreasonable for Devereux to hire employees whom Devereux should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

180.    As detailed above, Plaintiffs were harmed by various Devereux staff members. These harms include: rape, sexual assault, sexual grooming behaviors, physical assault, and withholding meals.

181.    Because of Devereux's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

## COUNT V
## NEGLIGENT RETENTION

182.    Devereux became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Devereux patients and residents, and yet failed to investigate, discharge, or reassign these employees.

183.    Devereux reasonably should have known that its staff punished Jane Doe 1 by placing her in solitary confinement, raped her while in solitary confinement, and then forced her to share a room with a patient who Devereux staff knew had been making unwanted sexual advances towards her. With reasonable supervision, protocols, and checkpoints in place,

Devereux should have been aware of these egregious acts. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

184.    Devereux reasonably should have known that Devereux staff verbally and physically abused Plaintiff Jines, and allowed Plaintiff Jines' roommate to physically abuse her. Plaintiff Jines even reported this abuse to Devereux, putting them on actual notice of their employee's bad acts. Devereux also should have known that a male staffer routinely watched Plaintiff Jines while she and other young girls took showers. With reasonable supervision and protocols in place, Devereux should have known about each of these incidents. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

185.    Devereux reasonably should have known that Devereux staff abused Jane Doe 2 by forcing her to kiss another girl while its employees took photos, punished Jane Doe 2 by making her pull her mattress into the living room to sleep, withholding food from Jane Doe 2 as punishment, and misdiagnosed Jane Doe 2 with a mental illness she did not have, giving her medication consistent with that mental illness. Had Devereux adequately supervised its employees, Devereux reasonably would have known about these incidents. Despite the fact that Devereux reasonably should have known about this abuse, it allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

186.    Devereux reasonably should have known that a Devereux staff member sexually abused Jane Doe 3 by taking her to the movies and having sexual relations with her in the bathroom, that another Devereux staff member groomed Jane Doe 3, then had an abusive sexual

"relationship" with her for a year, routinely picking her up in the Devereux van to sexually assault her off campus. Had Devereux adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Jane Doe 3. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

187.    Devereux reasonably should have known that multiple male Devereux staffers were physically abusing Plaintiff John Doe 1, who was eight years old at the time and diagnosed with Autism Spectrum Disorder. Devereux staff did not allow John Doe 1 to speak to his parents for weeks. John Doe 1 displayed visible physical signs of abuse, including red marks on his neck. Had Devereux adequately and appropriately supervised and exercised control over its staff, Devereux would have been aware of the abuse that occurred to John Doe 1. Despite the fact that Defendant reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

188.    Devereux reasonably should have known, and did in fact know, that John Doe 2 was abused by three male Devereux staff members when he was 11 years old. John Doe 2 showed physical signs of abuse, including marks on his body, thumbnail indentations on his ribs, and an extremely swollen wrist. John Doe 2 told his mother, who reported to ChildLine Pennsylvania, that this abuse was caused by Devereux staff members. One of these employees was investigated three times. Each time, the staff member would retaliate against John Doe 2. Despite Devereux's knowledge that John Doe 2 was repeatedly being physically abused, including by the same Devereux employees, Defendant did not independently investigate,

transfer, or fire this employee, instead allowing the abuse of John Doe 2 to happen time and time again.

189.   Defendant reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendant's breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously harmed.

## COUNT VI
## NEGLIGENT SUPERVISION

190.   Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Defendant possessed a special relationship with Plaintiffs, as Devereux was entrusted with the duty of care and custody over Plaintiffs, who were minors at the time.

191.   Youth in Devereux programs cannot reasonably be expected to protect themselves. No child is reasonably able to protect himself or herself from sexual, physical, and emotional assaults and abuses by staff who are tasked with their care. This is even more true for youth in Defendant's programs, who come to Devereux because of their need for advanced behavioral health supports. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with others and understand an appropriate versus an inappropriate interaction with a teacher or staff member.

192.   Devereux failed to exercise ordinary care to prevent intentional harms by their employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse towards Devereux

patients, students, and residents. This gave Devereux reason to know that abuse of their residents and patients was commonplace, and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

193.    Devereux knew that it had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

194.    Despite knowing of this pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols including, for example: staffing sufficient numbers of Direct Support Professionals such that staff members are not alone with children, enacting supervision protocols to ensure that staff are following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and taking immediate action to investigate, reassign, and/or terminate employment for staff who engaged in abusive behavior towards their patients and residents.

195.    Because of Defendant's negligent supervision, in which Devereux breached its duty to exercise reasonable care to prevent outrageous and tragic harms to youth in its care, Plaintiffs were gravely harmed.

## COUNT VII
## GROSS NEGLIENCE

196.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

197.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

198.    Devereux acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

199.    At all relevant times, Devereux owed a duty to Plaintiffs to implement practices and policies to:

a.    Prevent sexual, emotional, and physical abuse of youth by Devereux staff;

b.    Prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

c.    Prohibit grooming and other sexually exploitative behavior by Devereux staff;

d.    Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

e.    Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

f.    Mandate the training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

g.    Protect Plaintiffs and from such abuse and foreseeable risks; and

h.    Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

200.    Defendant's duty arose from taking responsibility for the care and custody of youth attending their programs.

201.    Devereux acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Devereux for treatment, growth, and education, including Plaintiffs.

202.    Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Devereux created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

203.    As one of the nation's largest behavioral healthcare organizations, Devereux is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Devereux thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

204.    The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential

treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[134]

205.    By recklessly failing to keep these children safe while in its care and custody, Devereux exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

206.    As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Devereux.

## COUNT VIII
## NEGLIGENT MISREPRESENTATIONS AND OMISSIONS

207.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

208.    In the course of their business, Defendant presents itself as maintaining a gold standard in the field of behavioral health treatment for youth with disabilities. Devereux's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress.[135] Devereux details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."[136]

---

[134] https://www.childwelfare.gov/topics/can/factors/.
[135]https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=DD6B52FFC9FF6889D9FC
1A342C5CF38E&pagename=Mission.
[136] https://www.devereux.org/site/SPageServer/?pagename=philosophy_of_care.

209.    Defendant's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols "through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices."[137] Through its advertising, Devereux represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Devereux failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

210.    Devereux's website and advertising misrepresents material facts regarding the quality of its programs, as Devereux fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendant's representations were not true, as Devereux negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

211.    Plaintiffs and their family members relied on Defendant's representations about the quality of their programs in choosing to enroll in treatment at Devereux.

212.    Devereux knew or should have known that the representations about the quality of their programs – especially the safety and security of their patients, students and residents – would be relied upon by those individuals and their families.

213.    Plaintiffs were harmed because of Devereux's negligent misrepresentations about the safety and security of their programs.  Plaintiff parents and guardians reasonably relied on Devereux's representations of safety and security, and were thereby harmed when they unknowingly placed their children in Devereux's custody.

---

[137] https://www.devereux.org/site/SPageServer/?pagename=safety_and_security.

**COUNT IX**
**Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code**
**§§ 17200 *et seq.***
**(Plaintiff Jines Against Devereux)**

214.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

215.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice."

Unlawful

216.    Devereux's conduct is unlawful in violation of the UCL because, as described below, it violates the California Consumers Legal Remedies Act.

217.    Devereux's conduct is unfair because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious. Devereux took responsibility for the care, custody and wellbeing of Plaintiff Jines, a 13-year-old child with advanced and delicate behavioral health needs. Devereux was entrusted with the treatment of Plaintiff  Jines by her family, who sought Devereux's services to provide needed behavioral health interventions for their child.

218.    Devereux breached that trust and acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by, among other things:

> a.    Continuing to hold itself out to the public as a safe, therapeutic environment for children with behavioral health needs while knowing of systemic, continued abuse of youth by Devereux staff;

> b.    Intentionally concealing from the public incidents and reports of child abuse in Devereux facilities;

> c.    Failing to prevent sexual, emotional, and physical abuse of youth by Devereux staff;

d.      Inadequately screening new Direct Support Professionals responsible for frequent interaction and oversight of youth;

e.      Maintaining inadequate numbers of Direct Support Professionals such that youth were left unattended, unsupervised, and/or vulnerable to abuse occurring undetected by Devereux;

f.      Failing to prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

g.      Failing to prohibit grooming and other sexually exploitative behavior by Devereux staff;

h.      Failing to require and ensure the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

i.      Failing to implement the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

j.      Failing to mandate and implement adequate training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

k.      Failing to protect Plaintiff Jines from her abuse and its foreseeable risks; and

l.      Failing to provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

219.    The gravity of the harm resulting from Devereux's conduct far outweighs any conceivable utility of this conduct. There are reasonably available alternatives that would further Defendant's stated purpose as a behavioral health care provider for children, such as enhanced screening measures, more reasonable and rigorous training of Direct Support Professionals, increased staffing during vulnerable nighttime hours, enhanced supervision of Direct Support Professionals, and implementing safer surveillance and/or building designs so as to avoid blind spots.

220.    Plaintiff Jines, who was 13 years old, could not have reasonably avoided injury from Devereux, as she was verbally and physically abused by adult Devereux staff members who were responsible for her care and supervision.

<u>Fraudulent</u>

221.    Devereux's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer:

      a.    When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jines.

      b.    Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

222.    Devereux had the opportunity to tell Plaintiff Jines and her family the truth about their behavioral health centers and services when Plaintiff Jines' family enrolled her in this

treatment program. Despite this opportunity, Devereux failed to disclose the above information to Plaintiff Jines. Had Devereux made those disclosures, Plaintiff Jines would not have been sent to Devereux for her treatment.

223.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jines and her family.

224.    As a direct and proximate result of Defendant's UCL violations, Plaintiff Jines has suffered injuries in fact, including physical harms, and seeks appropriate relief under the UCL, including injunctive relief and restitution. Had Devereux not made misleading statements and omissions regarding the safety and security of their treatment program for youth, Plaintiff would not have enrolled in the program. In the meantime, Devereux generated more revenue than they otherwise would have by earning Plaintiff Jines' treatment program fees, unjustly enriching itself.

225.    Plaintiff Jines was harmed, and Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harm.

226.    The requested injunction under the UCL will primarily benefit the interests of the general public. It will have the primary purpose and effect of prohibiting unlawful acts that threaten injury to members of the public, most notably their vulnerable children, who have been

placed or who will be placed under the care and custody of Devereux Advanced Behavioral Health.

## COUNT X
### Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
### (Plaintiff Jines Against Devereux)

227.    Plaintiff Jines incorporates by reference all prior paragraphs as if set forth in full herein.

228.    Devereux is a "person" as defined by Civil Code §§ 1761(c) and 1770 and have provided "services" as defined by Civil Code §§ 1761(b) and 1770.

229.    Plaintiff Jines is a "consumer" as defined by Civil Code §§ 1761(d) and 1770 and has engaged in "transaction[s]" as defined by Civil Code §§ 1761(e) and 1770.

230.    Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiff Jines, and those acts and practices violated Civil Code § 1770, including by:

   a.    representing that their services had characteristics, uses, and benefits that they did not have;

   b.    representing that their services were of a particular standard, quality, or grade, when they were not;

   c.    advertising services with intent not to sell them as advertised; and

   d.    representing that the subject of a transaction had been supplied in accordance with a previous representation when it had not.

231.    Devereux's acts and practices violated the Consumers Legal Remedies Act because Devereux failed to disclose information that was material to Plaintiff Jines' transactions with them:

      a.      When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jines.

      b.      Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

232.    Devereux had ample means and opportunities to alert Plaintiff at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alter Plaintiff and her family that Plaintiff Jines had suffered abuse while being treated in Defendant's behavioral health center.

233.    Devereux had the opportunity to tell Plaintiff Jines and her family the truth about their behavioral health centers and services when Plaintiff Jines' family enrolled her in this treatment program. Despite this opportunity, Devereux failed to disclose the above information to Jane Doe 2. Had Devereux made those disclosures, Plaintiff Jane Doe 2 would not have been sent to Devereux for her treatment.

234.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff Jines through advertising, on its website, and in documents that its behavioral health treatment centers provided high

quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jines and her family.

235.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the Consumer Legal Remedies Act, Plaintiff Jines has suffered actual damages. Had Devereux not made misleading statements and omissions regarding the safety and security of their treatment program for youth, Plaintiff Jines would not have enrolled in the program. In the meantime, Devereux generated more revenue than they otherwise would have by earning Plaintiff Jines' treatment program fees, unjustly enriching itself.

236.    Plaintiff Jines was harmed, and Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harm.

237.    Plaintiff Jines accordingly is entitled to equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activity.

238.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff has sent a letter to Devereux notifying them of these CLRA violations and affording Devereux the opportunity to correct its business practices and rectify the harm caused. Plaintiff sent the CLRA notice via certified mail, return receipt requested, to Devereux at Devereux's principal place of business. Plaintiff seeks money damages under the CLRA.

239.    Plaintiff's CLRA venue declaration is attached as Exhibit 10 to this complaint in accordance with Cal. Civ. Code § 1780(d).

240.     The conduct of Devereux set forth herein was reprehensible and subjected Plaintiff Jines to cruel and unjust hardship in conscious disregard of her rights, constituting oppression, for which Devereux should be punished by punitive and exemplary damages in an amount according to proof. Devereux's behavior evidences a conscious disregard for the safety of the children entrusted to them. Devereux's conduct was and is despicable conduct and constitutes malice under Section 3294 of the California Civil Code. An officer, director, or managing agent of Devereux personally committed, authorized, and/or ratified the reprehensible conduct set forth herein. Plaintiff thus seeks an award of punitive damages sufficient to penalize Devereux.

**COUNT XI**
**FAILURE TO REPORT CHILD ABUSE**
**(California Child Abuse and Neglect Reporting Act,**
**Cal. Penal Code §§ 11164-11174.4)**
**(Plaintiff Jines Against Devereux)**

241.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

242.     The Child Abuse and Neglect Reporting Act, found in Sections 11164-11174.4 of the California Penal Code, imposes reporting requirements for certain professionals to report known or suspected instances of child abuse or neglect.

243.     Included in the list of "mandated reporters" are "an administrator or employee of a public or private organization whose duties require direct contact and supervision of children," "an employee of a child care institution, including, but not limited to, foster parents, group home personnel, and personnel of residential care facilities." Devereux and its staff fall within this list of mandated reporters, as Devereux is a behavioral health facility for youth through which its staff and employees routinely come into contact with children.

244.     In nearly every incident of abuse reported by the *Philadelphia Inquirer* in August 2020, Devereux failed to identify and report children on their campus that were being sexually

abused or subject to grooming behaviors. Instead, these children with disabilities and mental health needs were left to report their own abuse or the abuse of their peers.

245.    For Plaintiff Jines, Defendant had reason to know or suspect that she was being abused by Devereux staff. Plaintiff Jines was emotionally, verbally, and physically abused by Devereux staff. Employees allowed Plaintiff Jines' roommate to hit her, and when she reported this to Devereux staff, they knowingly and intentionally did nothing. Devereux was thus aware of these acts of physical abuse. Plaintiff Jines also suffered from emotional and sexual abuse by being forced to shower while being observed by a man who watched her get in and out of the shower naked. These acts of abuse all occurred within Devereux's facility in Santa Barbara, California.

246.    Devereux staff and officials need only "reasonable suspicion" that a child is being abused in order to trigger their duty to report. Even when clear, apparent, and repeated indicators of abuse and grooming were present, Devereux intentionally failed to take action to report this grievous abuse.

## COUNT XII
### Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*.
### (Plaintiffs Jane Doe 1, John Doe 1, and John Doe 2 Against Devereux)

247.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

248.    The UTPCPL prohibits acts of unfair competition and "unfair or deceptive acts or practices."

249.    Devereux is a "person" as defined by 73 P.S. § 201-2 and has engaged in "trade" or "commerce" as defined by 73 P.S. § 201-2.

250.     Plaintiffs Jane Doe 1, John Doe 2, and John Doe 3 are "person[s]" as defined by 73 P.S. § 201-2 who, through their parents and/or guardians, purchased behavioral health treatment services from Devereux.

251.     Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiffs, and those acts and practices violated the UTPCPL, 73 P.S. § 201-2, including by:

      a.     Representing that their services had characteristics or benefits that they did not have;

      b.     Representing that their services were of a particular standard, quality or grade, when they were not;

      c.     Advertising services with intent not to sell them as advertised; and

      d.     Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

252.     Devereux's acts and practices violated the UTPCPL because Devereux failed to disclose information that was material to Plaintiffs' transactions with them:

      a.     When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiffs Jane Doe 1, John Doe 1, and John Doe 2.

      b.     Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims

of sexual, physical, and emotional abuse by Devereux staff, and that

Devereux did not take appropriate actions in response to this known abuse.

253.    Devereux had ample means and opportunities to alert Plaintiff sat the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alter Plaintiffs and their family that Jane Doe 1, John Doe 1, and John Doe 2 had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

254.    Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of their treatment centers. Had Devereux made the above disclosures, revealing to Plaintiffs and their families that in reality, Devereux's patient were prone to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Plaintiffs would not have been sent to Devereux for their treatment.

255.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from Jane Doe 1, John Doe 1, and John Doe 2 and their families.

256.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the UTPCPL, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Devereux. Devereux's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms.

257.    Plaintiffs Jane Doe 1, John Doe 1, and John Doe 2 are accordingly entitled to actual damages, equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

**COUNT XIII**
**VICARIOUS LIABILITY**

258.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

259.    When each Plaintiff was sexually, physically, and/or emotionally abused by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients.

260.    Devereux is vicariously liable under the doctrine of *respondeat superior* for the tortious conduct committed by their staff members during their staff's treatment of children at Devereux.

261.    Devereux staff members' sexual, physical, and/or emotional abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

262.    Devereux ratified their staff members' abusive conduct towards Plaintiffs by failing to discipline, take corrective action, and/or report the child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by their staff, as described above.

263.    These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within their facilities. Devereux knew that their patients, including Plaintiffs, were particularly susceptible to abuse as

youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

264.    As a direct and proximate result of Devereux's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

## COUNT XIV
## ASSAULT AND BATTERY: JANE DOE 1
### (Plaintiff Jane Doe 1 Against Devereux)

265.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

266.    While residing at Devereux in Malvern, PA between the ages of 14 and 17, Devereux Advanced Behavioral Health's staff members punished Jane Doe 1 with solitary confinement after she reported her roommate's attempts to have unwanted sexual contact with her.

267.    While in solitary confinement, Jane Doe 1, a minor, was raped by Devereux staff.

268.    Devereux staff members subsequently forced Jane Doe 1 to return to live with the same roommate who attempted to assault her. Devereux staff also punished Jane Doe 1 for crying by withholding her meals.

269.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery by Devereux Advanced Behavioral Health.

270.    As a direct and proximate result of Defendant's assault and battery, Jane Doe 1 suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Jane Doe 1 for the rest of her life.

## COUNT XV
### ASSAULT AND BATTERY: PLAINTIFF JINES
### (Plaintiff Jines Against Devereux)

271.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

272.    While a patient at Devereux in Santa Barbara, CA at age 13, Devereux staff physically and verbally abused Plaintiff Jines. Devereux staff allowed Plaintiff Jines' roommate to physically abuse and hit her. When she reported this abuse, the Devereux staff members did nothing.

273.    Plaintiff Jines witnessed a man sitting on a couch watching her and other minor girls getting in and out of the shower while naked.

274.    At no time did Plaintiff Jines consent to these abuses and harms that she suffered.

275.    These acts, which include attempts or actual uses of harmful or offensive touching, constitute assault and battery by Devereux Advanced Behavioral Health.

276.    As a direct and proximate result of Defendant's acts, Plaintiff Jines has suffered severe emotional and physical harms that continue to affect her today, and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XVI
### ASSAULT AND BATTERY: JANE DOE 2
### (Plaintiff Jane Doe 2 Against Devereux)

277.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

278.    While a patient at Devereux in Woodville, FL between the ages of 14 and 16, Devereux staff forced Plaintiff Jane Doe 2 to kiss another girl while Devereux staff took photos.

279.    Devereux staff members punished Plaintiff Jane Doe 2 by making her move her mattress to the living room to sleep. Devereux staff also withheld food from Jane Doe 2 as punishment.

280.    Devereux misdiagnosed Jane Doe 2 with a mental illness that she did not have. Devereux staff medicated Jane Doe 2 according to this misdiagnosed mental illness.

281.    Plaintiff Jane Doe 2 did not and could not consent to these grievous harms and abuses.

282.    These intentional acts of bodily harm and/or non-consensual sexual acts constitute assault and battery by Devereux Advanced Behavioral Health.

283.    As a direct and proximate result of Defendant's acts, Jane Doe 2 has suffered severe emotional and physical harms that continue to affect her today, and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XVII
### ASSAULT AND BATTERY: JANE DOE 3
#### (Plaintiff Jane Doe 3 Against Devereux)

284.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

285.    While a patient at Devereux in Orlando, Florida between the ages of 14 and 16, Jane Doe 3 was sexually assaulted, sexually groomed, raped, and physically abused by multiple Devereux staffers.

286.    One Devereux staff member took Jane Doe 3 on an excursion to the movies, where the staff member sexually assaulted Jane Doe 3 in the bathroom.

287.    Another Devereux staff member groomed Jane Doe 3 to have a romantic "relationship" with the staff member, eventually beginning a pattern and practice of picking up Jane Doe 3 in the Devereux van to have sex with Jane Doe 3, a minor, off campus.

288.    Plaintiff Jane Doe 3 did not and could not consent to these grievous harms and abuses.

289.    These intentional acts of bodily harm and/or non-consensual sexual acts with a minor constitute assault and battery by Devereux Advanced Behavioral Health.

290.    As a direct and proximate result of Defendant's acts, Jane Doe 3 has suffered severe emotional and physical harms that continue to affect her today, and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XVIII
## ASSAULT AND BATTERY: JOHN DOE 1
### (Plaintiff John Doe 1, By and Through His Parent, Against Devereux)

291.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

292.    While a patient at Devereux in Malvern, PA at age 8, John Doe 1 was denied the ability to speak to his parents for his first two weeks at school. John Doe 1 has been diagnosed with autism spectrum disorder.

293.    When John Doe 1 was able to speak to his parents, he told them that he had been hurt and that he was scared, after which Devereux staff made him get off the phone.

294.    When John Doe's parents were unable to reach him by phone any further, they drove to Devereux and discovered a red mark on John Doe's neck. John Doe told them that he was placed in a choke hold and had hit his head when Devereux staff threw him on his bed. John Doe was scared and begged his parents to go home.

295.    Devereux staff refused to tell John Doe 1's parents which staff members had injured John Doe 1. They told his parents that John Doe 1 had been moved to a different unit, but refused to tell them whether any actions had been reported to DHS. John Doe 1's parents then removed him from his placement at Devereux despite Devereux staff fighting this decision.

296.    These grievous actions are intentional, unwanted, and offensive physical contacts which constitute assault and battery of John Doe 1 by Devereux Advanced Behavioral Health.

297.    As a result of Devereux's actions, Devereux directly and proximately caused John Doe 1 to suffer both physical and emotional harms that he continues to suffer from today. These injuries will continue to cause John Doe 1 suffering for the rest of his life.

## COUNT XIX
## ASSAULT AND BATTERY: JOHN DOE 2
### (Plaintiff Jane Doe 2, By and Through His Parent, Against Devereux)

298.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

299.    While placed at Devereux in Glenmoore, Pennsylvania at age 11, three or more Devereux staff members physical and verbally abused John Doe 2.

300.    John Doe 2 called his mother to warn her of this abuse, but could not describe the harms in detail over monitored phone calls. When his mother visited him in person, she witnessed marks on his body including a swollen wrist, thumb marks on his ribs, and thumbnail indentations to his skin.

301.    John Doe 2 told his mother that staff members performed inappropriate restraints by pushing him against the wall while holding their arms on his throat and shoving their knee into his back.

302.    The same staff members publicly berated John Doe 2 when he reacted to the inappropriate restraint by spitting. The staff member mocked and chastised him in front of other youth and staff members, calling him a "little pussy."

303.    After John Doe 2's mother and/or therapist reported this physical and verbal abuse, one male staffer retaliated against John Doe 2 after being investigated on three occasions.

304.     These intentional actions by Devereux staff resulted in an unwanted, harmful, and offensive contact with Plaintiff John Doe 2. Such contact would offend a reasonably person's sense of dignity.

305.     As a result of Devereux's actions, Devereux directly and proximately caused John Doe 2 to suffer both physical and emotional harms that he continues to suffer from today. These injuries will continue to cause John Doe 2 suffering for the rest of his life.

### COUNT XX
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

306.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

<u>Plaintiff Jines:</u>

307.     Devereux's negligent conduct caused Plaintiffs to suffer serious emotional distress including suffering, anguish, horror, grief, anxiety, worry, humiliation, and shame. Devereux's negligence was a substantial factor in causing this serious emotional distress. Such conduct constitutes negligent infliction of emotional distress, as defined by California state law. CACI § 1620.

<u>Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe 1, and John Doe 2:</u>

308.     Under Florida and Pennsylvania state law, Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress, as: 1) Devereux acted negligently, as described above; 2) Devereux's negligence placed Plaintiffs in the zone of danger of physical impact or injury, as each plaintiff was physically abused by Devereux staff; and 3) Plaintiffs suffered emotional distress as a result of Devereux's negligent conduct. Pa. SSJI (Civ) § 13.40; Fla. Stat. § 420.

309.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

## COUNT XXI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

310.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

311.    Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result. Pa. SSJI (Civ) § 17.40; CACI § 1600; Fla. Stat. § 410.

312.    Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

313.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

314.    By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms, and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

## COUNT XXII
## BREACH OF FIDUCIARY DUTY

315.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

316.    Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

317.    By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached their fiduciary duty towards Plaintiffs.

318.    Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

## COUNT XXIII
## INJUNCTIVE AND EQUITABLE RELIEF
### (Plaintiffs and the Nationwide Class Against Devereux)

319.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

320.    Class members are currently at risk of irreparable harm due to Defendant's failure to enact and enforce appropriate and sufficient policies, procedures, and processes for the prevention of physical, emotional, and sexual abuse of youth enrolled in their programs and residing in their facilities. On behalf of the Class, Plaintiffs seek injunctive and equitable relief requiring Devereux to implement institution-wide policies and practices to prevent continued abuse within their programs.

321.    The risk of irreparable harm that Plaintiffs and Class Members face is higher than the general societal risk of these harms, and that increased risk is directly traceable to the actions and inactions of Devereux.

322.    These harms through which Devereux has placed Plaintiffs and Class Members at risk are irreparable. Child abuse, whether it be physical, emotional, or sexual abuse, and the trauma, pain, and suffering that it creates, cannot be undone. Youth, especially youth with disabilities and advanced mental health and behavioral needs, carry the trauma they endured as children with them for the rest of their lives. No monetary compensation can reverse this pain. Therefore, proactive injunctive relief is necessary to eliminate the increased risk posed by Defendant's actions and inactions in order to protect Plaintiffs and Class Members from irreparable harm.

323.    The common injury suffered by Plaintiffs and the Class – being placed at heightened risk of sexual, physical, and emotional abuse and assault by Devereux – will be redressed by the requested injunctive relief.

324.    Devereux has a duty, triggered by federal and state law, to protect its patients and residents. This duty includes a responsibility to:

a.    Protect students from physical, emotional, and sexual abuse while placed in Devereux programs and facilities;

b.    Promptly and thoroughly report known and reasonably suspected of physical, emotional, and sexual abuse at Devereux;

c.    Properly respond to this child abuse when it occurs; and

d.    Supervise, monitor, and prevent Devereux staff from committing acts of abuse against child patients and residents.

325.    Devereux has breached its duty towards Plaintiffs and Class Members by failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and address incidents of child abuse in Devereux's programs and facilities.

326.    Accordingly, Plaintiffs, on behalf of themselves and the Class, request that the Court issue an Order requiring Devereux to implement and enforce best-practice policies and procedures for the prevention of, and response to, physical, emotional, and sexual abuse at Devereux.

327.    In crafting their specific injunctive relief demands, Plaintiffs intend to consult with experts to determine the best practices that should be implemented in order to prevent further child abuse at Devereux. By way of example, such policies and practices may include:

      a.    rigorous hiring and screening protocols;

      b.    revised guidelines governing interactions between staff and youth;

      c.    robust sexual reactivity training for Direct Support Professionals (DSPs);

      d.    improved training for DSPs regarding de-escalation techniques;

      e.    increased supervision of DSPs, especially during the most vulnerable nighttime windows;

      f.    compliance with physical building requirements to increase visibility such that individuals cannot commit abuse in concealed areas; and

      g.    improved video monitoring infrastructure.

## CLASS ACTION ALLEGATIONS

328.    Plaintiffs bring their Injunctive Relief claim individually and as a class action pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2).

329.    This action is brought on behalf of the following "Nationwide Class": "All individuals placed in Devereux Advanced Behavioral Health programs and facilities, by and through the parents and/or guardians of those who are minors."

330.    Plaintiffs reserve the right to modify or amend the class definitions, including the addition of one or more subclasses, after having the opportunity to conduct discovery.

331.    Numerosity: Devereux reports that they serve more than 25,000 youth annually.[138] As such, the members of the Class are so numerous that joinder is impractical.

332.    Typicality: Plaintiffs' claims are typical of the claims of each class member in that Plaintiffs, like all class members, were enrolled in a Devereux program and therefore subjected to the same policy and practice of negligent supervision and systematic abuse by staff. Plaintiffs and the class members were injured through Devereux's failure to protect them, and Plaintiffs are advancing the same legal theories on behalf of themselves and the Class.

333.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests and the interests of all other members of the Class are identical, and Plaintiffs are cognizant of their duty and responsibility to the Class. Accordingly, Plaintiffs can fairly and adequately represent the interests of the Class. Moreover, Plaintiffs' counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiffs and counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

334.    Commonality: There are numerous questions of law and fact common to the Class. Questions common to the class include:

      a.    The extent of Defendant's knowledge of or deliberate indifference to the pattern of abuse and neglect of youth in their programs.

---

[138] https://www.devereux.org/site/SPageServer/?pagename=open_letter.

b.     Whether Devereux had a duty to implement and enforce more comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities.

c.     Whether Devereux's pattern of negligent staffing constituted a breach of their duty to supervise and care for children who were placed in their custody.

d.     Whether Defendant's polices, practices, and customs failed to satisfy their duty to report abuse as required under federal law for all persons engaged in a professional capacity working with children, such as teachers, social workers and physicians; such persons are required to report incidents of child abuse that occur while such person is engaged in a professional capacity in a federally "contracted" facility. 34 U.S.C. § 23041(a)(1).

e.     The scope of the injunctive relief and damages to which the Plaintiffs and members of the Class are entitled.

335.    Equitable Relief: Class action is appropriate under Rule 23(b)(2) because Devereux has acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole. Such injunctive relief includes, but is not limited to, the implementation of systemic changes to prevent such conduct in the future as mentioned above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter a judgment on their behalf and against Devereux, and further grant the following relief:

A.    Award Plaintiffs and Class members compensatory damages, punitive damages, pain and suffering, and any other relief to which they are entitled under the law;

B.    Certify the proposed Class pursuant to the Federal Rules of Civil Procedure Rule 23(a) and (b)(2);

C.    Designate Plaintiffs as representatives of the proposed Class and Plaintiffs' counsel as Class counsel;

D.    Award injunctive relief requiring Devereux to implement and enforce policies and practices to prevent future incidents of abuse, including those set out above because (1) there is a substantial likelihood that Plaintiffs and the Class will prevail on the merits; (2) there is a real and substantial threat that the Class will suffer irreparable injury if the injunction is not granted; (3) the Class's threatened injury outweighs any threatened harm to Devereux; and (4) granting the injunction will serve the public interest. Award Plaintiffs and the Class prejudgment interest, costs and attorneys' fees; and

E.    Award to the Plaintiffs and the Class for such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of the proposed Class, respectfully request a trial by jury as to all matters so triable.

Dated: January 26, 2021                    Respectfully submitted,

_/s/ Joseph G. Sauder_
Joseph G. Sauder
Lori G. Kier
Davina C. Okonkwo
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue

Berwyn, PA 19312
Tel: (610) 200-0580
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
lgk@sstriallawyers.com
dco@sstrialllawyers.com

Annika K. Martin (*pro hac vice* application pending)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013
Phone: (212) 355-9500
Facsimile: (212) 355-9592
akmartin@lchb.com

Mark Chalos (*pro hac vice* application pending)
Hannah Lazarz (*pro hac vice* application pending)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com
hlazarz@lchb.com