**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATHERINE JINES, GILBERT KAHN, JOHN BRAINARD, NICCO BERETTA, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JOHN DOE 1 (a minor by and through his parent), JOHN DOE 2 (a minor by and through his parent), and JOHN DOE 3 (a minor by and through his parent), | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 21-346<br><br>SECOND AMENDED COMPLAINT |
| Plaintiffs,<br>v. | ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| The DEVEREUX FOUNDATION (d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH) and QUALITYHEALTH STAFFING, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 2

THE PARTIES ............................................................................................................... 3

I.      Plaintiffs ............................................................................................................. 3

        A.      Plaintiff Katherine Jines ........................................................................ 3

        B.      Plaintiff Gilbert Kahn ............................................................................ 4

        C.      Plaintiff John Brainard .......................................................................... 4

        D.      Plaintiff Nicco Beretta .......................................................................... 4

        E.      Plaintiff Jane Doe 1 ............................................................................... 4

        F.      Plaintiff Jane Doe 2 ............................................................................... 5

        G.      Plaintiff Jane Doe 3 ............................................................................... 5

        H.      Plaintiff Jane Doe 4 ............................................................................... 5

        I.      Plaintiff Jane Doe 5 ............................................................................... 5

        J.      Plaintiff Jane Doe 6 ............................................................................... 6

        K.      Plaintiff John Doe 1 (a minor by and through his parent) ..................... 6

        L.      Plaintiff John Doe 2 (a minor by and through his parent) ..................... 6

        M.      Plaintiff John Doe 3 (a minor by and through his parent) .................... 6

II.     Defendants ......................................................................................................... 7

        A.      The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) .......... 7

        B.      QualityHealth Staffing, LLC ................................................................ 9

FACTUAL ALLEGATIONS ....................................................................................... 10

        A.      Devereux represented that it would provide children with a safe environment. .............................................................................. 17

        B.      Devereux and its staff members broke patients' and families' trust. ................... 18

        C.      Devereux failed to take steps to protect the children from abuse. ...................... 26

        D.      Plaintiffs Were Abused in Devereux Facilities. ................................... 32

                1.      Plaintiff Katherine Jines ........................................................... 32

                2.      Plaintiff Gilbert Kahn ............................................................... 32

                3.      Plaintiff John Brainard .............................................................. 35

                4.      Plaintiff Nicco Beretta .............................................................. 36

# TABLE OF CONTENTS
## (continued)

Page

5. Plaintiff Jane Doe 1 ...................................................... 38

6. Plaintiff Jane Doe 2 ...................................................... 39

7. Plaintiff Jane Doe 3 ...................................................... 39

8. Plaintiff Jane Doe 4 ...................................................... 40

9. Plaintiff Jane Doe 5 ...................................................... 43

10. Plaintiff Jane Doe 6 ...................................................... 44

11. Plaintiff John Doe 1 ...................................................... 46

12. Plaintiff John Doe 2 ...................................................... 47

13. Plaintiff John Doe 3 ...................................................... 48

TOLLING OF STATUTE OF LIMITATIONS ................................. 51

CAUSES OF ACTION ...................................................................... 55

COUNT I VIOLATION OF TITLE IX (20 U.S.C. §§ 1681, *ET SEQ.*) CREATION OF SEXUALLY HOSTILE CULTURE/HEIGHTENED RISK OF SEXUAL HARASSMENT ............................................................................. 55

COUNT II VIOLATION OF TITLE IX (20 U.S.C. § 1681(A), *ET SEQ.*) DELIBERATE INDIFFERENCE TO PRIOR SEXUAL HARASSMENT ........................... 60

COUNT III NEGLIGENCE ............................................................... 63

COUNT IV NEGLIGENT HIRING .................................................. 65

COUNT V NEGLIGENT RETENTION ........................................... 65

COUNT VI NEGLIGENT SUPERVISION ...................................... 68

COUNT VII GROSS NEGLIENCE .................................................. 70

COUNT VIII NEGLIGENT MISREPRESENTATIONS AND OMISSIONS ........................ 72

COUNT IX VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.* (PLAINTIFF JINES AGAINST DEVEREUX) ..................................................... 74

COUNT X VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*  (PLAINTIFF JINES AGAINST DEVEREUX) ........... 78

COUNT XI FAILURE TO REPORT CHILD ABUSE (CALIFORNIA CHILD ABUSE AND NEGLECT REPORTING ACT,  CAL. PENAL CODE §§ 11164-11174.4) (PLAINTIFF JINES AGAINST DEVEREUX) ...................................... 82

COUNT XII VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL"), 73 P.S. § 201-1, *ET SEQ.* (PLAINTIFFS KAHN, BRAINARD, JANE DOE 1, JOHN DOE 1, AND JOHN DOE 2 AGAINST DEVEREUX) ............................................ 83

**TABLE OF CONTENTS**
**(continued)**

Page

COUNT XIII VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES–
CONSUMER PROTECTION ACT ("DTPA"), TEX. BUS. & COM. CODE
ANN. §§ 17.41, ET SEQ. (PLAINTIFF GILBERT KAHN AGAINST
DEVEREUX)....................................................................................................... 86

COUNT XIV VIOLATIONS OF THE COLORADO CONSUMER PROTECTION
ACT,  COLORADO REVISED STATUTES ("C.R.S.") § 6-1-101, ET SEQ.
(PLAINTIFFS JOHN DOE 3, A MINOR BY AND THROUGH HIS PARENT,
AND JANE DOE 4 AGAINST DEVEREUX) ............................................................ 89

COUNT XV VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
ARIZONA REVISED STATUTES ("A.R.S.") §44-1521 *ET SEQ.* (PLAINTIFF
JANE DOE 5 AGAINST DEVEREUX) ...................................................................... 92

COUNT XVI VICARIOUS LIABILITY ..................................................................... 95

COUNT XVII ASSAULT AND BATTERY: JANE DOE 1 (PLAINTIFF JANE DOE 1
AGAINST DEVEREUX) ......................................................................................... 96

COUNT XVIII ASSAULT AND BATTERY: PLAINTIFF JINES (PLAINTIFF JINES
AGAINST DEVEREUX) ......................................................................................... 98

COUNT XIX ASSAULT AND BATTERY: JANE DOE 2 (PLAINTIFF JANE DOE 2
AGAINST DEVEREUX) ......................................................................................... 99

COUNT XX ASSAULT AND BATTERY: JANE DOE 3 (PLAINTIFF JANE DOE 3
AGAINST DEVEREUX) ....................................................................................... 100

COUNT XXI ASSAULT AND BATTERY: PLAINTIFF KAHN (PLAINTIFF
GILBERT KAHN AGAINST DEVEREUX)................................................................ 100

COUNT XXII ASSAULT AND BATTERY: PLAINTIFF BERETTA (PLAINTIFF
NICCO BERETTE AGAINST DEVEREUX) ............................................................. 101

COUNT XXIII ASSAULT AND BATTERY: PLAINTIFF BRAINARD (PLAINTIFF
JOHN BRAINARD AGAINST DEVEREUX)............................................................. 102

COUNT XXIV ASSAULT AND BATTERY: JOHN DOE 3 (PLAINTIFF JOHN DOE
3, BY AND THROUGH HIS PARENT, AGAINST DEVEREUX) ............................ 102

COUNT XXV ASSAULT AND BATTERY: JANE DOE 4 (PLAINTIFF JANE DOE 4
AGAINST DEVEREUX) ....................................................................................... 104

COUNT XXVI ASSAULT AND BATTERY: JANE DOE 5 (PLAINTIFF JANE DOE 5
AGAINST DEVEREUX) ....................................................................................... 105

COUNT XXVII ASSAULT AND BATTERY: JANE DOE 6 (PLAINTIFF JANE DOE 6
AGAINST DEVEREUX) ....................................................................................... 106

COUNT XXVIII ASSAULT AND BATTERY: JOHN DOE 1 (PLAINTIFF JOHN DOE
1, BY AND THROUGH HIS PARENT, AGAINST DEVEREUX) ............................ 108

COUNT XXIX ASSAULT AND BATTERY: JOHN DOE 2 (PLAINTIFF JANE DOE 2,
BY AND THROUGH HIS PARENT, AGAINST DEVEREUX) ................................. 109

**TABLE OF CONTENTS**
**(continued)**

**Page**

COUNT XXX NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ........................... 110

COUNT XXXI INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................... 111

COUNT XXXII BREACH OF FIDUCIARY DUTY ............................................................... 112

PRAYER FOR RELIEF ......................................................................................................... 113

DEMAND FOR TRIAL BY JURY ........................................................................................ 113

## INTRODUCTION

1.      Each year, The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health), along with its staffing company QualityHealth Staffing, LLC (collectively "Devereux"), through 21 facilities in 13 states, takes on responsibility for protecting more than 25,000 of our country's most vulnerable members: children with autism, intellectual and developmental disabilities, and specialty mental health needs, including youth in the child welfare system.[1]

2.      Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, Devereux exposed them to predators and abusers. Devereux failed to enact safety measures and other policies to protect children; failed to adequately screen, hire, train, and supervise staff; and failed to fulfill its duties under state and federal law.

3.      As a result of Devereux's misconduct, children in Devereux facilities across the country have reportedly been sexually abused – often by Devereux staff.

4.      In August 2020, the *Philadelphia Inquirer* released a devastating Report detailing decades of sexual, physical, and emotional abuse inflicted upon these especially vulnerable children by Devereux staff members. The Report reveals that "at least 41 children as young as 12, and with IQs as low as 50, have been raped or sexually assaulted by Devereux staff members in the last 25 years."

5.      After the Inquirer's August 2020 report was published, an additional 13 former Devereux students came forward with allegations of sexual abuse they experienced.[2] These

---

[1] https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=8C49CE92727 D35B4C0E776C432590E1B&pagename=about; https://www.devereux.org/site/SPageServer/?pagename=open_letter (last visited June 15, 2021).
[2] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 15, 2021).

children were as young as 8 years old when they were sexually abused.[3] Twelve of the children were allegedly abused in Pennsylvania Devereux facilities, and one was abused in a Delaware Devereux facility.[4] Seven of those children reportedly complained to Devereux staff or a social worker while the abuse was happening, but their complaints were ignored and the abuse continued.[5]

6.      Plaintiffs bring this lawsuit to hold Devereux accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Devereux's care.

7.      Accordingly, Plaintiffs Katherine Jines, Gilbert Kahn, John Brainard, Nicco Beretta, Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, John Doe 1 (a minor by and through his parent), John Doe 2 (a minor by and through his parent), and John Doe 3 (a minor by and through his parent), make individual claims for the abuse they suffered.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs allege actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034.

9.      This Court has subject matter jurisdiction over individual claims brought by Plaintiffs Jines, Kahn, Brainard, Beretta, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, and John Doe 3 based on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendants Devereux and QualityHealth are citizens of the state of Pennsylvania, where they are headquartered, incorporated, and operate their principal places of business. Plaintiff Katherine Jines is a citizen of Arizona, Plaintiff Gilbert Kahn is a citizen of Vermont, Plaintiff John

---

[3] *Id.*
[4] *Id.*
[5] *Id.*

Brainard is a citizen of Maine, Plaintiff Nicco Beretta is a citizen of New York, Plaintiffs Jane

Doe 2 and Jane Doe 3 are citizens of Florida, Plaintiff Jane Doe 4 is a citizen of Colorado,

Plaintiff Jane Doe 5 is a citizen of Arizona, and Plaintiff John Doe 3 is a citizen of California.

The amount in controversy, without interest and costs, exceeds $75,000.

10.     This Court has personal jurisdiction over Defendant the Devereux Foundation

(d/b/a Devereux Advanced Behavioral Health) because its national headquarters is located at 444

Devereux Drive, Villanova, Pennsylvania 19085. Devereux has continuous and systematic

contacts with the state of Pennsylvania such that it is essentially "at home" in the state. Devereux

was founded in Philadelphia, and its headquarters have remained in the state of Pennsylvania

since it was granted its nonprofit charter in 1938. Devereux's CEO and Senior Leadership Team

operate out of their Pennsylvania headquarters. Defendant also operates approximately 90

Devereux facilities in northeast and southeast Pennsylvania.[6]

11.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because, *inter alia*,

substantial parts of the events or omissions giving rise to the claim occurred in the District and/or

a substantial part of property that is the subject of the action is situated in the District.

## THE PARTIES

### I.     Plaintiffs

#### A.     Plaintiff Katherine Jines

12.     Plaintiff Katherine Jines is a citizen of the state of Arizona and currently resides

in Prescott Valley, Arizona.

13.     Plaintiff Jines was a patient at Devereux in Santa Barbara, California when she

was approximately 13 years old, in or about 2004.

---

[6] https://www.devereux.org/site/SPageServer/?pagename=pa_about (last visited June 15, 2021).

**B.**     **Plaintiff Gilbert Kahn**

14.     Plaintiff Gilbert Kahn is a citizen of the state of Vermont and currently resides in Bradford, Vermont.

15.     Plaintiff Kahn was a patient at Devereux in Devon, Pennsylvania when he was approximately 14 years old, in or about 1976.  He also was a patient at the Brandywine Devereux facility before being moved to a Devereux facility in Victoria, Texas when he was about 15 years old, in or about 1977-1978.

**C.**     **Plaintiff John Brainard**

16.     Plaintiff John Brainard is a citizen of the state of Maine and currently resides in Fairfield, Maine.

17.     Plaintiff  Brainard was a patient at multiple Devereux facilities in Pennsylvania and Massachusetts.  His first placement was at Devereux's Gateway facility near Devon, Pennsylvania location beginning when he was about six years old.  He was placed in another Devereux facility when he was about 13 or 14 years old.

**D.**     **Plaintiff Nicco Beretta**

18.     Plaintiff Nicco Beretta is a citizen of the state of New York and currently resides in Brooklyn, New York.

19.     Plaintiff Beretta was a patient at Devereux Deerhaven in Chester, New Jersey for approximately three years, between the years 1987 and 1990.  He was nearly 12 years old when he first arrived at the Devereux facility, and was nearly 16 years old when he left.

**E.**     **Plaintiff Jane Doe 1**

20.     Plaintiff Jane Doe 1 is a citizen of the state of Pennsylvania and currently resides in Oxford, Pennsylvania.

21.     Plaintiff Jane Doe 1 was a patient at Devereux in Malvern, Pennsylvania when she was approximately ages 14-17, beginning in or about 2003.

**F.      Plaintiff Jane Doe 2**

22.     Plaintiff Jane Doe 2 is a citizen of the state of Florida and currently resides in Tallahassee, Florida.

23.     Plaintiff Jane Doe 2 was a patient at Devereux in Woodville, Florida when she was approximately 14-16 years old, beginning in or about 2004.

**G.      Plaintiff Jane Doe 3**

24.     Plaintiff Jane Doe 3 is a citizen of the state of Florida and currently resides in Orlando, Florida.

25.     Plaintiff Jane Doe 3 was a patient at Devereux SIPP & Group Home in Woodville, Florida when she was approximately 14-16 years old, beginning in or about 2004.

**H.      Plaintiff Jane Doe 4**

26.     Plaintiff Jane Doe 4 is a citizen of the state of Colorado and currently resides in Lakewood, Colorado.

27.     Plaintiff Jane Doe 4 was a patient at Devereux in Westminster, Colorado when she was approximately 14 years old, beginning on or about April 20, 1995.

**I.      Plaintiff Jane Doe 5**

28.     Plaintiff Jane Doe 5 is a citizen of the state of Arizona and currently resides in Glendale, Arizona.

29.     Plaintiff Jane Doe 5 was a patient at the Devereux facility in Scottsdale, Arizona when she was approximately 14 years old, beginning in or about 2005.

**J.**      **Plaintiff Jane Doe 6**

30.      Plaintiff Jane Doe 6 is a citizen of the state of Pennsylvania currently residing in Media, Pennsylvania.

31.      Plaintiff Jane Doe 6 was a patient at Gateway Devereux in Newtown Square, Pennsylvania when she was approximately 14-16 years old, in or about 1997-1999.

**K.**      **Plaintiff John Doe 1 (a minor by and through his parent)**

32.      Plaintiff John Doe 1, a minor by and through his parent, is a citizen of the state of Pennsylvania currently residing in Abington, Pennsylvania.

33.      Plaintiff John Doe 1 was a patient at Devereux in Malvern, Pennsylvania when he was approximately 8 years old, in or about 2018.

**L.**      **Plaintiff John Doe 2 (a minor by and through his parent)**

34.      Plaintiff John Doe 2, a minor by and through his parent, is a citizen of the state of Pennsylvania currently residing in Thomasville, Pennsylvania.

35.      Plaintiff John Doe 2 was a patient at Devereux in Glenmoore, Pennsylvania when he was approximately 11 years old, in or about 2019.

**M.**      **Plaintiff John Doe 3  (a minor by and through his parent)**

36.      Plaintiff John Doe 3, a minor by and through his parent, is a citizen of the state of California and currently resides in Long Beach, California.

37.      Plaintiff John Doe 3 was a patient at Devereux in Westminster, Colorado beginning at approximately age 14, from about February 2019 to July 2020.

II.     **Defendants**

     A.     **The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health)**

    38.     The Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) is a private behavioral health organization which operates 21 campuses in 13 states[7], annually treating more than 25,000 children and young adults with advanced behavioral, intellectual, developmental, and mental health needs. Included among Devereux's facilities and programs are residential treatment centers, psychiatric hospitals, group homes, supported living communities, schools, special education centers, and outpatient programs. Devereux's national headquarters is located at 444 Devereux Drive, Villanova, Pennsylvania 19085.

    39.     The Devereux Foundation's leadership is comprised of institutional chief officers, referred to as the Senior Leadership Team, who oversee organization-wide issues impacting Devereux campuses across the nation. Devereux's centralized decision-making is reflected in this team.  In addition to Devereux's CEO, included among Devereux's Senior Leadership Team are:

        a.     A Chief Financial Officer and Operating Vice President, who is responsible for setting nationwide financial strategies and information technology efforts, and who manages "all facility-related matters" for all nationwide Devereux centers. This officer also serves as the chief executive officer of Devereux's staffing company, QualityHealth Staffing, LLC.

---

[7] Facilities are located in AZ, CA, CO, CT, DE, FL, GA, MA, –NJ, NY, PA, RI, and TX. *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited Jan. 15, 2021).

b. A Chief Operating Officer responsible for "all operational aspects of the organization's national network."

c. A Senior Vice President and Chief Strategy Officer, who is tasked with "developing, communicating, executing and sustaining strategic initiatives across the organization that are aligned with Devereux's mission and core values."

d. A Senior Vice President of People Operations, who develops nationwide employee-related initiatives and is "responsible for innovation in the following areas: talent acquisition, engagement and retention, employee development, and total rewards, along with further strengthening Devereux's culture and employment environment."

40. Upon information and belief, at all times Devereux has been solely responsible for setting and enforcing the policies and procedures governing patient safety and treatment at all Devereux facilities, as well as solely responsible for hiring, supervision, and disciplinary decisions concerning employees of Devereux facilities.

41. Devereux regularly receives state and federal funding. Several examples of such funding include: funding from the Florida legislature to expand Devereux Florida's Commercial Sexual Exploitation of Children Program,[8] funding from "a combination of contracts and private foundation and government grants, including the U.S. Department of Education, Office of Special Education Programs" for Devereux's Center for Effective Schools (a non-profit research and training center which is a division of Devereux Institute of Clinical and Professional

---

[8] https://www.news-journalonline.com/story/news/2020/10/06/devereux-florida-receives-funding-expand-child-trafficking-program/5852153002/ (last visited June 15, 2021J).

Training and Research),[9] grants from the Pennsylvania Department of Education to develop programs for Devereux CARES, which has been licensed as an "Approved Private School,"[10] and a $40.2 million contract from the U.S. Office of Refugee Resettlement to house migrant youth at Devereux facilities in five states.[11]

> **B.**   **QualityHealth Staffing, LLC**

42.     QualityHealth Staffing, LLC, a Devereux subsidiary, is a behavioral health staffing company which was formed in 2018 by Devereux and PeopleShare, Inc. QualityHealth is headquartered in King of Prussia, Pennsylvania.

43.     In April 2018, Devereux's newly-appointed President and CEO, Carl E. Clark II, announced an organizational redesign effort and expansion of its leadership team. The first phase of this redesign began in part with the launch of QualityHealth.[12]

44.     QualityHealth was formed to address the challenges related to recruiting and retaining individuals to work in the field of behavioral health. By providing "temporary, temporary-to-hire, and direct hire staffing assistance to organizations who find it a challenge to fulfill roles in a timely manner and who experience difficulty in keeping up with the constant changes in employment regulation," QualityHealth aims to allow organizations to "focus on their mission of helping others, rather than spending time on staffing and employment issues."[13]

---

[9] https://www.devereux.org/site/SPageServer/?pagename=ces_our_approach (last visited June 15, 2021).

[10] https://www.devereux.org/site/SPageServer/?pagename=penn_devereux_cares_services (last visited June 15, 2021).

[11] https://billypenn.com/2020/08/26/devereux-abuse-migrant-children-detain-federal-contract-devon/ (last visited June 15, 2021). While this contract was still active as of August 2020; note, however, that the *Inquirer* reported the contract abandoned as of October 2020).

[12] https://www.devereux.org/site/SPageServer/?pagename=redesign_2018 (last visited June 15, 2021J).

[13] https://www.qhstaffing.com/about-us/ (last visited June 15, 2021).

45. Robert C. Dunne, Devereux's Senior VP and Chief Financial Officer, serves as CEO of QualityHealth.

46. At all times relevant herein, QualityHealth has been and has acted as an agent of the Devereux Foundation (d/b/a Devereux Advanced Behavioral Health) and subject to its control.

## FACTUAL ALLEGATIONS

47. Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Devereux programs. Across its campuses in 13 states, Devereux offers hundreds of clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less-intensive services from Devereux such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Devereux's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced commercial sexual exploitation, and psychiatric specialty hospitals.[14]

48. Many parents send their children to a Devereux program because Devereux holds itself out as having expertise in supporting children with disabilities.[15] For many foster youth, such as Plaintiff Nicco Beretta, their placement in a Devereux facility was the result of a series of

---

[14] https://www.devereux.org/site/SPageServer/?pagename=centers (last visited June 15, 2021 ).
[15] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited June 15, 2021 ).

decisions in the child welfare system.[16] Devereux offers several programs specifically tailored for youth who are under the custody of the state due to parental abuse or neglect.[17]

49.    Devereux CEO Carl Clark has admitted that, "Most of the kids we care for have been traumatized in their life outside of Devereux and the worst possible thing is to have that occur while they're in a therapeutic environment."[18]

50.    For the children who were abused at a Devereux facility, it was almost impossible to get help or stop the abuse because Devereux reportedly limited the contact many of them had with the outside world.[19] As Plaintiff John Doe 1 (below) has reported, when he tried to call his parents for help, Devereux staff forced him off of the phone, trapping the 8-year-old with his abusers.

51.    Nor was there any clear and safe mechanism by which victims could report abuse within Devereux; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.[20]

---

[16] Barbara Laker & Wendy Ruderman, *Philly to remove 53 kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited June 15, 2021).

[17] *Devereux Pennsylvania Foster Care*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_foster (last visited June 15, 2021 ).

[18] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021 ).

[19] *Id.*

[20] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

52.     Many of the children who were abused at Devereux were vulnerable, intellectually disabled, and already fleeing from abuse. Children with an IQ score below 70 are considered intellectually disabled.[21] Devereux is accused of abusing children with IQs as low as 50.[22]

53.     Devereux staff members also took advantage of children who had already been victims of sexual abuse and were at Devereux to seek healing.[23] As reported by the *Philadelphia Inquirer,* "A 15-year-old girl in a Devereux Florida program designed for sex-trafficking victims said she was raped twice by a staff member in 2017."[24] Plaintiff Jane Doe 4 was similarly raped by multiple staffers, who knew that she was a foster child who had been sexually abused before, as detailed below. Staff took advantage of these victims' vulnerability and emotional trauma from past abuse. When these students were looking for adults whom they could trust and who made them feel safe, they were instead horrifically exploited.[25]

54.     The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with

---

[21] MENTAL DISORDERS AND DISABILITIES AMONG LOW-INCOME CHILDREN 169 (Thomas F. Boat & Joel T. Wu eds., The National Academies Press 2015), https://www.ncbi.nlm.nih.gov/books/NBK332882/pdf/Bookshelf_NBK332882.pdf (last visited June 15, 2021).

[22] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021 ).

[23] *Devereux Advanced Behavioral Health Centers*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited June 15, 2021).

[24] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021 ).

[25] *Id.*

---

disabilities are easily targeted because they are more likely to be perceived as weak or

vulnerable, and are seen as less likely to report abuse, especially when the victim has limited

communication abilities or cognitive impairments. Especially in a group home or residential

treatment setting, abuse can more easily be hidden and children may have limited access to

police, advocates, or social services representatives who can intervene.[26]

55.     As reported by the *Philadelphia Inquirer,* Devereux staff have been accused of

grooming children whom they abused; for example, they would offer children food,[27] which was

at other times withheld from children like Plaintiff Jane Doe 3 (below) as a form of punishment.

In describing one 43-year-old staff member's abuse of a girl "on the cusp of 15," the

*Philadelphia Inquirer* reported, "She was flattered when he brought her gifts — an MP3 player,

a necklace, a cell phone. He told her never to include his name in text messages – just his initials.

They exchanged dozens of love letters."[28] The *Philadelphia Inquirer* further reported, "Instead of

rigorously investigating red flags, Devereux repeatedly failed to identify clear signs that a staffer

may be grooming or sexually abusing a child, reporters found. The abuse often continued — or

even escalated."[29]

56.     Despite Defendant's awareness of decades of systematic sexual and physical

abuse of children in its care, Devereux has failed to enact appropriate uniform national and

---

[26] https://www.childwelfare.gov/topics/can/factors/ (last visited June 15, 2021).

[27] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 15, 2021).

[28] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[29] *Id.*

system-wide protocols and policies to ensure the safety of its youth.[30] Devereux acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Devereux facilities, and ignoring and covering up complaints alleged against it regarding child abuse.[31]

57.     Devereux has admitted that it was aware of repeated incidents of abuse within its programs, as stated in the CEO's public response to the *Philadelphia Inquirer* Report.[32] Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Devereux has failed to enact sufficient measures to ensure the safety of their youth. For example, after a staffer raped a 15-year-old girl at Devereux Georgia in 2012, the company created a seven-page document identifying risk reduction strategies they planned to implement, including training staff on sexual reactivity, developing a training video regarding supervision lapses leading to sexual assaults, and adopting the "Diana Screen" program to evaluate new employees. But when the victim sued Devereux, the vice president of operations/executive director of the Georgia campus testified at a jury trial, according to a news source, that she was unaware of new staff trainings regarding sexual reactivity and had no knowledge of training videos about

---

[30] *Id.*
[31]  Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[32] *Message from President and CEO Carl E. Clark II: Devereux's Response to Issues of Resident Safety*, https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited June 15, 2021).

supervision lapses.[33] Reportedly, she also testified at the jury trial that Devereux declined to

adopt the Diana Screen method, which cost less than $30 to administer.[34]

58.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and

procedures for the prevention of, and proper response to, abuse of its patients exacerbates and

amplifies the trauma of the actual abuse due to institutional betrayal.[35]

59.    The term "Institutional Betrayal" refers to wrongdoings perpetrated by an

institution upon individuals dependent on that institution, including failure to prevent or respond

supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse)

committed within the context of the institution.[36]

60.    Indeed, Devereux's culture of indifference to the safety and well-being of its

patients has caused abuse and sexual violence to flourish at Devereux for decades.[37] This toxic

culture continues to thrive to this day,[38] even affecting staff. Employees and former employees

---

[33] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[34] *Id.*
[35] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[36] Jennifer J. Freyd, *Institutional Betrayal and Institutional Courage*, https://dynamic.uoregon.edu/jjf/institutionalbetrayal/ (last visited June 15, 2021); *see also* Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69 AM. PSYCH. ASSOC. 575 (2014) (available at: https://pages.uoregon.edu/dynamic/jjf/articles/sf2014.pdf (last visited June 15, 2021)).
[37] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[38] *Id.*

have posted reviews on Glassdoor.com, including a former Special Education Teacher who rated

Devereux two out of five stars, complaining on December 14, 2019 about the "violent"

environment and "minimal accountability," including the fact that "[m]ale staff are heavily relied

upon to deescalate with minimal support from management. If staff aren't following expectations

there are no consequences."[39]

61.     Another former employee who worked at Devereux as a Licensed Practical Nurse

gave Devereux one out of five stars as an employer on May 29, 2018, and reported that:

> Devereux continues to put themselves out there as such a carding foundation for their
> clients . . . it's a cut throat intimidating, unsafe environment. . . very high turnover rate
> because they will overwork you, put you in unsafe situations no matter how much
> training they give you, when something goes wrong it's your fault no matter what
> happened . . . there isn't enough staff to take care of their clients properly and the nursing
> department who are supposed to be supportive of you and help take care of the clients
> treat the site nurses like garbage. . . stay away and protect your license and your back . . .
> run, don't walk away![40]

62.     A former DCP at a Devereux facility in Rutland, Massachusetts gave Devereux

one of five stars as an employer, and reported in 2018 that:

> Frontline staff are taken advantage of, put in dangerous situations and penalized for
> speaking up. Work is very tiring, often resulting in injuries and culture is that it's
> frowned upon and sometimes discipline to use sick time [sic]. Leadership changes every
> week. They are good at making things look good but scratch beneath the surface and a lot
> of very concerning stuff going won with kids and staff. I was fired for calling out sick
> when I didn't have enough sick time. So much for 'caring' for people. Staff care way
> more about the kids than management and leadership. They prioritize profit and saving
> dollars. Kids placed inappropriately just to fill beds.
> **Advice to Management**
> Consider having some integrity, for the kids if not anything else.[41]

---

[39] *See* Exhibit 1 hereto.
[40] *See* Exhibit 2 hereto.
[41] *See* Exhibit 3 hereto.

63.     These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Devereux program or facility across the nation.[42] This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.[43]

64.     Children arrive at Devereux facilities seeking treatment, healing, and belonging. For decades, Devereux has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.[44]

**A.     Devereux represented that it would provide children with a safe environment.**

65.     Devereux boasts that it "changes lives – by unlocking and nurturing human potential for people living with emotional, behavioral or cognitive differences."[45] Devereux promised student learners compassion, knowledge, collaboration, dedication, learning, and progress.[46] Devereux provided hope to children who had mental health issues – along with their parents -- touting itself as "one of the largest and most advanced behavioral healthcare organizations in the country" with "a unique model that connects the latest scientific and medical advancements to practical, effective interventions in the treatment of behavioral health.[47]

---

[42] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[43] *Id*
[44] *Id.*
[45] *Mission, Values and Commitment to Service*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=Mission (last visited June 15, 2021).
[46] *Id.*
[47] *About Devereux Advanced Behavioral Health*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=about (last visited June 15, 2021).

66.     Children and their parents also trusted that patients would be kept safe based on Devereux's claims that "the safety and well-being of the children, adolescents and adults entrusted to our care is of the utmost importance."[48] Devereux advertises that it has a taskforce focused on "ensuring every child and family is treated with care, compassion and dignity." It also advertises a robust training and hiring process to ensure safety and security.[49]

**B.      Devereux and its staff members broke patients' and families' trust.**

67.     Following the *Inquirer*'s reporting of abuse at Devereux facilities, on September 24, 2020, the City of Philadelphia announced that all youth would be removed from Philadelphia-area residential care facilities operated by Devereux.[50]

68.     Allegations of abuse at Devereux's facilities include:

a.      As reported by the *Philadelphia Inquirer,* a Devereux staff member was charged with sexually abusing four children at a facility in Texas in 2019.[51] One of the children was 12 years old.[52] Staff also allegedly threatened to beat up a 16-year-old girl if she told anyone about the

---

[48] *Our Commitment to Safety and Security*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited June 15, 2021).

[49] *What it Takes to Become a Devereux Employee*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=what_it_takes (last visited June 15, 2021).

[50] Department of Human Services, Department of Behavioral Health and Intellectual Disability Services, and Office of the Mayor, *DHS and CBH to Remove Philadelphia Children from Devereux Facilities*, CITY OF PHILADELPHIA, https://www.phila.gov/2020-09-24-dhs-and-cbh-to-remove-philadelphia-children-from-devereux-facilities/ (last visited June 15, 2021).

[51] Lisa Gartner & Barbara Laker*, At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[52] *Id.*

abuse.[53] KPRC 2, a local Houston, TX news station, reported that the former Devereux staff member was being held "on two counts of sexual assault of a child, two counts of aggravated sexual assault of a child and two counts of indecency with a child involving sexual contact."[54]

b.  As reported by the *Philadelphia Inquirer,* in 2018 and 2019, a Devereux staff member at an Arizona facility sexually abused three girls in their bedrooms and in the laundry room.[55] ABC15, a local Phoenix, Arizona news station reported that the former Devereux staff member was being held on "multiple charges of aggravated assault, sexual abuse and sexual conduct with a minor."[56]

c.  In 2018, a 16-year-old boy with autism and developmental delays was reportedly sexually assaulted by Devereux Staff at the Brandywine

---

[53] *Id.*

[54] Bill Barajas, *Mental health worker faces slew of charges after being accused of sexually assaulting 4 children*, CLICK2HOUSTON.COM, https://www.click2houston.com/news/local/2019/12/20/mental-health-worker-faces-slew-of-charges-after-being-accused-of-sexually-assaulting-4-children/  (last visited June 15, 2021).

[55] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[56] Joe Enea, *Behavioral health worker accused of sexually abusing young female patients in Phoenix*, ABC15 ARIZONA, https://www.abc15.com/news/crime/pd-behavioral-health-worker-accused-of-sexually-abusing-young-female-patients-in-phoenix (last visited June 15, 2021).

facility,[57] located in Glenmoore, Pennsylvania.[58] The boy spent most of

his childhood in therapy learning how to do things like grip buttons and

zippers. One day, he fled the Glenmoore facility while his abuser at

Devereux chased him in a van. He was able to run to his program

supervisor's office. He counted backwards, a technique he had learned to

calm himself, and told the supervisor that a Devereux staff member had

been sexually assaulting him and another 14-year-old child, who he saw as

his "little brother." The boy tried to kill himself several times since his

abuse at Devereux.[59] As reported by the *Philadelphia Inquirer*, the boy's

abuser was sentenced to eight years in prison for abusing him and two

other 14-year-old children.[60]

d.   In 2017, a Devereux staff member was accused of raping a 15-year-old

victim of child sex trafficking at Devereux's Viera, Florida facility.[61] The

victim had previously reported this staff member's increasing sexual

misconduct towards her, but Devereux staff members dismissed her

---

[57] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[58] *Emotional and Behavior Health Challenges*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=penn_services_for_children_adolescents_bh (last visited June 15, 2021).

[59] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[60] *Id.*

[61] *Id.*

complaints.[62] After the victim told a nurse that a Devereux staff member had raped her, Devereux staff brought her in to the campus director's office and told the victim she was probably just having a flashback from her previous sexual abuse.[63] After being re-traumatized at Devereux, she was again sex-trafficked.[64] The Devereux staff member whom the student accused of raping her on campus came and found her through her sex trafficking name, and allegedly sexually abused her once again.[65] As the *Philadelphia Inquirer* investigation reported, "At 1:20 a.m., local police pulled the staff member over for driving with his headlights off. Seeing a young, disoriented girl in the passenger seat, officers asked to search his cell phone. They found a video that the staff member had just recorded, of him sexually abusing the victim. He was charged with lewd and lascivious battery on a child. He pleaded guilty to a lesser charge of interference with custody."[66]

e.    In around 2014, a Devereux staff member and "married father with a degree in theology" sexually abused a girl "on the cusp of 15" at Devereux's Malvern, Pennsylvania facility. In particular, the staff member groomed his victim, including by exchanging "love letters" of which other Devereux staff members were aware,[67] protecting the victim from the

---

[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*

employee when they found a love letter. Further, a Devereux manager required the victim to apologize to the staff member and told her not to write more letters to him because that "could get him in trouble."[68] The *Philadelphia Inquirer* further reported, "A month after [the victim] was told to apologize to [the staff member], she was home for Thanksgiving when the staffer asked her to send him naked photographs of herself."[69] On her next home pass, the staff member told the victim to meet him in Southwest Philadelphia. He took her shopping, buying her clothes and sneakers. He then drove her to an alley and sexually assaulted her in his car before he dropped her off at a bus station to find her way home."[70] The staff member continued to abuse the victim when she returned to Devereux, where he was alone with her almost every day.[71] The victim's roommate told her therapist what was going on, and Devereux staff members found a hidden cell phone with "naked photos and explicit messages between the two."[72] "A county jury convicted [the staff member] on charges of institutional sexual assault, unlawful contact with a

---

[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[72] *Id.*

minor, sexual abuse of children and corruption of minors after trial in September, 2016."[73,74]

f.   In 2012, another Devereux Staff member orally raped a girl through her bedroom window twice in one night in a Devereux Georgia facility.[75] According to the *Philadelphia Inquirer*, a jury returned a verdict in favor of the victim with $50 million dollars in punitive damages.[76]

g.   In 2001, as reported by the *Philadelphia Inquirer*, a Devereux staff member allegedly raped a 15-year-old girl in a staff room when she was half-asleep and heavily medicated at the campus in Malvern, Pennsylvania.[77] She was able to call 911.[78] Devereux staff allegedly promised her father that this would never happen again.[79] Two weeks later another staff member allegedly raped her in the same staff room.[80] The staff member was high at the time and Devereux was allegedly aware that he had a drug problem.[81] The *Philadelphia Inquirer* reported that in a

---

[73] Matt Miller, *School staffer who had sex with 16-year-old student must stay in prison, Pa. court rules*, PENNLIVE.COM, https://www.pennlive.com/news/2018/07/school_counselor_who_has_sex_w.html (last visited June 15, 2021).
[74] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*

letter from prison, the staff member said, "My employer was aware of my drug problem and was in the process of getting me help."[82] The staff member impregnated his victim, who was then further traumatized by her abortion.[83] Many years later she still feels that she does not deserve to have children.[84] She considers the year she was raped at Devereux to be the year that she died.[85]

h.   As reported by the *Philadelphia Inquirer*, "In 2000, a 14-year-old at Devereux's Malvern, Pennsylvania campus confided to a male staffer that she'd been abused by a relative; that DSP began molesting her and leaving used condoms on her windowsill, [the victim] said in an interview: 'I told them it was him, but they never made a report, ever.'"[86]

i.   As reported by the *Philadelphia Inquirer*, "Altogether, police said 16 girls had been sexually abused by staff at a Devereux facility located in Deerhaven, New Jersey, between 1996 and 1999."[87] In a 1997 instance, the *Philadelphia Inquirer* reported, "a supervisor was walking a 13-year-old to the nurse's station when his walkie-talkie crackled, and the girl began to cry. The voice on the supervisor's radio belonged to a 30-year-old staff member. He had molested her, the girl said."[88]

---

[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*

j.      According to a complaint filed in 2020, there were 13 more victims of sexual, physical, and verbal abuse in Pennsylvania in addition to the 41 reported by the *Philadelphia Inquirer* who were abused from 2004-2014.[89] The victims were as young as eight years old.[90] Several victims told Devereux staff members of their abuse, but Devereux did not act to protect them.[91]

k.      In 2018, at the Devereux Kanner Center in Pennsylvania, an employee was accused of beating children on multiple occasions, and two co-workers were accused of not reporting the incidents as required by law.[92] Allegedly, in one instance, a "27-year-old [staff member] threw a 16-year-old to the ground and struck the victim with her knees multiple times, causing the victim to suffer a broken arm."[93]

l.      In 2016, a Devereux staff member in Viera, Florida faced child abuse charges for hitting and elbowing a child in the face multiple times, Florida Today reported.[94]

---

[89] Barbara Laker & Wendy Ruderman, *An additional 13 allege they were sexually assaulted as children by Devereux staff*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/devereux-lawsuit-sexual-abuse-children-pennsylvania-20201005.html (last visited June 15, 2021).
[90] *Id.*
[91] *Id.*
[92] *3 Employees At Developmental Challenge Facility Accused of Beating Teen, Adult Clients,* CBS PHILLY, https://philadelphia.cbslocal.com/2018/11/28/devereux-kanner-center-staff-members-accused-of-beating-teen-adult-clients/ (last visited June 15, 2021).
[93] *Id.*
[94] Rick Neale, *Devereux Viera staffer charged with striking girl, 14*, FLORIDA TODAY, https://www.floridatoday.com/story/news/2016/11/05/devereux-viera-staffer-charged-striking-girl-14/93343094/ (last visited June 15, 2021).

m.      Then, in 2020, *Florida Today* reported that two Devereux employees were arrested for severely beating a child.[95] According to *Florida Today,* "Brevard County Sheriff's Office investigators said one employee at the residential behavioral health center in Viera held down a child with his knee while repeatedly hitting him as another employee attempted to obstruct the view of security cameras."[96] A medical examination revealed that "the boy was covered in abrasions and bruises after the beating."[97]

## C.      Devereux failed to take steps to protect the children from abuse.

69.      Devereux's centralized decision-making structure means rules, policies, procedures promulgated by the Senior Leadership Team govern the administration of all Devereux facilities nationwide.

70.      Devereux's failure to enact adequate policies to protect the children in its care, and its failure to adequately screen, hire, train, and supervise staff, caused harm across Defendant's facilities.

71.      Even Devereux's employees have observed the issues that its insufficient policies and failures have caused. One current employee, a Direct Support Professional, gave Devereux one out of five stars as an employer on Glassdoor.com on December 14, 2019, posting the following review:

> There is absolutely no supportive infrastructure here, while the staff work with kids who are aggressive, angry, and unpredictable. I don't even blame the kids for feeling or acting that way- I would be angry if I were them too. Some of the staff bully the kids, and occasionally, other staff. There is no support for reporting incidents. There is virtually no therapeutic support for kids – the kids are in school until 1:00 and the therapist leaves at

---

[95] Tyler Vazquez, *Two Devereux employees arrested; two others fired in child abuse case*, FLORIDA TODAY, https://www.floridatoday.com/story/news/crime/2020/03/11/two-devereux-employees-arrested-two-others-fired-child-abuse-case/5022529002/ (last visited June 15, 2021).
[96] *Id.*
[97] *Id.*

2:00 – many of the kids reported not having therapy for over a month, even though it is a residential TREATMENT center.  The staff are left completely on their own to structure the kids' days with no support from therapists. Staff egg on fights and threaten to restrain kids at every little sign of resistance. Kids have no choices, and there is no opportunity for them to engage in anything supportive of their growth and development. The job also pays little and uses that as leverage for people to work double shifts to gain overtime pay. Staff push themselves to exhaustion for the pay while working with kids who need A LOT of attention. Overall, extremely unsafe and unsupportive environment in so many ways.[98]

72.     A current employee who works as a Case Manager reviewed Devereux on Glassdoor.com on April 23, 2019, giving it one out of five stars and complaining that, "Literally you get thrown into a job that you know nothing about and are expected manage a huge caseload. Impossible to function and maintain sanity. Not very team oriented."[99]

73.     As reported by the *Philadelphia Inquirer*, "clinical staff raised warnings that the company wasn't attracting the right employees."[100] For example, the Devereux Deerhaven, New Jersey campus director told the *Daily Record* in 1985, "The problem is that the salaries that we are able to pay our staff are so inadequate."[101]

74.     In fact, a January 17, 2021 listing Glassdoor.com showed that Direct Support Professionals at Devereux facilities Pennsylvania have the potential for a rate increase to $13.75,[102] and that an Autism Activity Counselor at Devereux would make $14.75-$16.82 per hour.[103] An employee working 40 hours per week, 52 weeks per year at $13.75 would take home

---

[98] *See* Exhibit 4.
[99] *See* Exhibit 5 hereto.
[100] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[101] *Id.*
[102] *See* Exhibit 6, attached hereto.
[103] *See* Exhibit 7, attached hereto.

a gross annual salary of $28,600. The poverty level for a family of four in Pennsylvania in 2020

was $26,200.[104] A Direct Care Professional in Colorado complained on Glassdoor.com:

> Expected to work two to three hours after shift to do paperwork. Only pay 12.50
> plus $1 shift [differential] if you work after 3pm and on weekends. Working 14
> hour shifts with no 15 minute breaks, bathroom breaks when you can (rare), no
> meal breaks. Expect injuries from the kids. Management always telling you how
> to do better, not addressing moral[e] or high turnover. Lack of supervisors
> because of high turnover and low moral[e]. Benefits are expensive and you
> already at a very low (non-living wage.)[105]

75.     Another former Vocational Aide who worked at a Devereux facility in Woodbury,

New Jersey gave Devereux one out of five stars, and reported in 2019 that, "[I]t is very hard

surviving off of a paycheck coming from Devereux."[106] Also, the "rate increase" salary for

Deveraux employees is only slightly higher than Pennsylvania's minimum wage of $7.25 per

hour,[107] which is among the lowest in the nation and that has seen legislative efforts to increase it

to $9.50 per hour.[108]

76.     There is no excuse for Devereux to have allowed this systemic abuse in its

facilities. Devereux had the funds to hire qualified employees, provide adequate staffing and

training, and to supervise its staff. Devereux receives more than $497 million per year and 95%

of its revenue is from government sources.[109] In the fiscal year 2020, Devereux received

---

[104] https://dced.pa.gov/housing-and-development/weatherization/income-eligibility/ (last visited
June 15, 2021).
[105] *See* Exhibit 8 hereto.
[106] *See* Exhibit 9 hereto.
[107] https://www.dli.pa.gov/Individuals/Labor-Management-Relations/llc/Documents/LLC-
1%20REV%2009-20.pdf (last visited June 15, 2021).
[108] *See, e.g.,* https://whyy.org/articles/pennsylvanias-lowest-wage-workers-may-have-a-raise-
coming-or-not/ (last visited June 15, 2021).
[109] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities
after it finds lax supervision*, THE PHILADELPHIA INQUIRER,
https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-
children-20200924.html (last visited June 15, 2021).

approximately $7.1 million from the Philadelphia DHS, about $1.1 million of which was

supposed to be used for housing and treating children with psychiatric, intellectual, and

behavioral disabilities.[110] CBH, with which the City of Philadelphia contracts to place Medicaid

recipients in psychiatric residential treatment, paid Devereux $12.9 million in 2019 -- $7.7

million of which was for residential treatment facilities.[111]

77.     Despite the large amount of public funding that Devereux receives, Devereux has

severely understaffed its facilities.[112] For example, as reported by the *Philadelphia Inquirer*, a

staff member who was supposed to be responsible for only seven children in a shift would at

times end up caring for twenty children.[113] The supervision issues were so severe that a police

detective reportedly met with leaders at Devereux's Malvern campus to ask it to fix its staffing

issues.[114]

78.     Other staff failed to do their jobs, which included ensuring children's safety. As

reported by the *Philadelphia Inquirer,* Devereux staff seemed to disappear for hours and

regularly slept through their shifts.[115] As further reported by the *Philadelphia Inquirer,* some of

them played video games for hours without checking on the students even though that was part

---

[110] *Id.*

[111] *Id.*

[112] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismiss*ed, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[113] *Id.*

[114] *Id.*

[115] Barbara Laker & Wendy Ruderman, *Philly to remove 53kids from Devereux's live-in facilities after it finds lax supervision*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/philadelphia/devereux-philadelphia-abuse-council-remove-children-20200924.html (last visited June 15, 2021).

of their job.[116] It was further reported that instead of checking on students every 15 minutes during the night as required, some Devereux staff even came to work with sleeping bags and pillows so that they could sleep through the night.[117] One reason for these failures is that Devereux's staff was severely underpaid and had to work more than one job.[118] Meanwhile, at least one child was reportedly sexually abused in a closet.[119]

79.     As reported by the *Philadelphia Inquirer*, Devereux only paid its staff an average of $26,000 per year in 2017.[120] The low pay encouraged staff to work 16- hour shifts to earn overtime pay.[121] Because pay was so low, Devereux likely could not attract employees who were properly trained in caring for children with disabilities and mental health needs. The *Philadelphia Inquirer* reported that "former staffers pointed to low pay as a reason for the misconduct."[122] For example, according to the *Philadelphia Inquirer*, a former Devereux staff member who worked at a facility in Georgia between 2011 and 2013 said in a deposition recounted in the news report, "Because of the type of work that the staff does, they get burned out. And the pay isn't great, so you don't get people in there who are professional."[123]

---

[116] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismisse*d, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Id.*
[121] *Id.*
[122] *Id.*
[123] *Id.*

80.     Devereux put vulnerable children in danger by underpaying and overworking staff, and inadequately supervising them, while receiving hundreds of millions in government funding.

81.     Despite this unacceptable failure to ensure children's safety from staff and other students, in 2018, Devereux campaigned to raise $1.25 million for a new facility, *Phoenix Business Journal* reported.[124]

82.     Devereux announced later in 2020 that it had "received funding from the Florida State Legislature to expand the organization's Commercial Sexual Exploitation of Children (CSEC) program, which provides comprehensive treatment for children and adolescents who have experienced emotional, physical or sexual trauma."[125]

83.     Devereux was aware of initiatives that it could adopt to protect its students from abuse. It identified solutions such as increased training and employment screenings but failed to implement these measures for years.[126] Devereux also allowed boys to stay in rooms with walk-in closets even after they had begun to remove such closets from other areas of the facilities due to pervasive abuse. As the *Philadelphia Inquirer* reported, a boy was assaulted in one of these walk-in closets that had not yet been removed.[127] Because Devereux failed to take even these

---

[124] Angela Gonzales, *Nonprofit to break ground on $1.25M residential treatment center in Scottsdale*, PHOENIX BUSINESS JOURNAL, https://www.bizjournals.com/phoenix/news/2018/04/15/nonprofit-to-break-ground-on-1-25m-residential.html (last visited June 15, 2021).

[125] *Devereux Florida Receives Funding to Support Sexually Exploited Youth*, DEVEREUX ADVANCED BEHAVIORAL HEALTH, https://www.devereux.org/site/SPageServer/?pagename=csec_2020_funding (last visited June 15, 2021).

[126] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed,* THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[127] *Id.*

basic measures to protect its students, many students will carry the emotional and physical scars of Devereux's inaction for the rest of their lives.

### D. **Plaintiffs Were Abused in Devereux Facilities.**

84.      Plaintiffs Jines, Gilbert Kahn, John Brainard, Nicco Beretta, Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, John Doe 1, John Doe 2, and John Doe 3 were all abused during their stays at Devereux.

#### 1. **Plaintiff Katherine Jines**

85.      Plaintiff Katherine Jines was 13 years old when she was abused by staff members and peers in a residential Devereux treatment center in Santa Barbara, California.

86.      Devereux staff routinely allowed Plaintiff Jines' roommate to physically assault her. Each time that this physical abuse occurred, Plaintiff Jines would tell a staff member. The staff did nothing in response to this abuse.

87.      Plaintiff Jines was further traumatized by Devereux staff when she and the other young girls in her treatment program took showers. An adult male staffer sat on a couch outside the showers, watching Plaintiff Jines and the other naked young girls as they went in and out of the showers. Plaintiff Jines continues to live with the trauma, humiliation, and anguish of deplorable act.

88.      Devereux staff also administered medication to Plaintiff Jines which belonged to another patient.

89.      At no time could, nor did, Plaintiff Jines consent to any of these horrendous acts that she was forced to suffer through.

#### 2. **Plaintiff Gilbert Kahn**

90.      Plaintiff Gilbert Kahn was 14 years old when he was first abused by staff members in a residential Devereux treatment center in Devon, Pennsylvania.  In addition to the

Devon facility, Kahn also was a patient at Devereux's Brandywine facility in Pennsylvania. Kahn was first placed at Devereux after being separated from his abusive father and experiencing significant abuse and neglect at home.

91.     Once Plaintiff Kahn arrived at Devereux, Devereux staff forcefully medicated him with a number of different pills, liquid drugs, and long-acting injections, including Mellaril. These medications took a terrible toll on Kahn's physical and mental health, which led to Kahn's decision to flee the facility with several other boys who were housed there.

92.     After Kahn's mother found that he had run away, he was returned to Devereux, where he was transferred to a larger, more secure (i.e. "lock up") facility in Victoria, Texas.

93.     At the Victoria, Texas facility, more Devereux staff members sedated Plaintiff Kahn, this time using the drug Thorazine.  Kahn continued to attempt to run away from Devereux to escape this abuse, sometimes successfully.

94.      On several occasions, Devereux staff punished Kahn by locking him in solitary confinement.  The solitary confinement cell was a 7-x-7 foot room with nothing but a small window.  Staff occasionally placed a tray of food on the floor of the cell for Kahn to eat off the ground.  He was allowed to leave only to use the restroom.  Kahn was only 14 years old the first time he was locked in solitary confinement.  This punishment was typically used for one day at a time, but on one occasion, he was locked in solitary for *two weeks* because staff said he was "not listening."  When he was finally released, Kahn recalls being highly paranoid and fearful of those around him.

95.     Solitary confinement is known to cause severe psychological, physical, and emotional impairments to adults and juveniles alike.[128]  When children are locked in isolation,

---

[128] https://pediatrics.aappublications.org/content/137/5/e20154180 (last visited June 15, 2021).

however, the neurological impact is even more extreme.  Because a child's brain is still

developing, the intense suffering, stress, and emotional trauma imposed by isolation can cause

permanent neurological damage.[129]  Because of this, many courts recognize that the solitary

confinement of children is a form of torture.[130]  The use of solitary confinement for children is

widely banned.  As of 2016, the Department of Justice no longer allows the use of solitary

confinement for juveniles in federal custody. *Id.* In over 21 states, solitary confinement may not

be used to discipline juveniles. *Id.* Several courts have also recognized  that in some instances,

the solitary confinement of juveniles violates the 8th Amendment prohibition on cruel and

unusual punishment.[131]

96.     Still suffering from the trauma of his two-week confinement, Kahn decided to

escape from Devereux once again.  This time, after being caught outside the facility, Devereux

required Kahn to be evaluated at a hospital before returning.  He was placed at Summit Oaks in

New Jersey to receive a psychiatric evaluation, where he was again placed in isolation, further

compounding the effects of Devereux's prior abuse.

97.     Now an adult, Kahn is sterile.  Kahn believes that he is unable to have children

due Devereux regularly forcing him to take large doses of Mellaril and Thorazine as a young

teenager.

98.     At no time could, nor did, Plaintiff Kahn consent to any of these horrendous acts

that he was forced to suffer through.  Kahn continues to suffer the lasting psychological and

---

[129] https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(18)30943-7/fulltext (last
visited June 15, 2021).
[130] https://www.aclu-wa.org/story/solitary-confinement-especially-harmful-juveniles-and-should-
not-be-used-punish-them (last visited June 15, 2021).
[131] https://socialchangenyu.com/review/banishing-solitary-litigating-an-end-to-the-solitary-
confinement-of-children-in-jails-and-prisons/ (last visited June 15, 2021).

emotional impacts of the abuse he endured as a child locked in solitary confinement while at Devereux, including but not limited to anxiety, fear, neurological issues, confusion, and depressive episodes.

### 3.   Plaintiff John Brainard

99.     Plaintiff John Brainard was just six years old when he was placed at the Gateway Devereux facility near Devon, Pennsylvania after his mother catastrophically was pushed out a window, leaving her with lasting brain damage.  With his mother unable to care for him and his father stationed in Vietnam, Brainard became an orphan at a very young age.

100.     Brainard quickly became friends with a peer who was also placed at the Gateway facility, Ignatius.  Brainard and Ignatius were best friends, spending all of their time together and forming a strong bond.  One day, Devereux staff took Ignatius and several other children on an outing, but did not bring Brainard along.  The staff left Ignatius unattended, and the child tragically drowned in a pond.  This traumatic loss left Brainard broken, suffering from grief he did not know how to process, and led Brainard to suffer from "survivor's guilt."

101.     When Brainard was six or seven years old, Devereux placed him with a 15-year-old roommate.  This teenage resident began bribing Brainard to perform sexual acts using football stickers.  When Brainard refused, the teenager forcefully removed Brainard's clothing and began raping him.  Brainard screamed for help for thirty minutes, but no Devereux staff came to help him.

102.     Between ages six and eight, while still placed at the Devon, Pennsylvania facility, Devereux began sending Brainard and four of his peers to a laboratory where people in white coats "evaluated" them.  At the laboratory, Brainard was strapped to a table and forced to lay still for hours while leads were hooked up to his head and chest.  Brainard recalls this occurring at least 30 times over a period of three years.  Brainard continues to be haunted by this experience.

He describes feeling like a "lab rat" and still does not know the purpose of these experiments or what any data may have been used for.

103.    At his various Devereux placements, staff members forced Brainard to take a number of medications including Ritalin despite a lack of any known diagnosis requiring such medication.  Beginning at a very young age, Brainard recalls feeling "high as a kite" and "drugged out."

104.    The impacts of the abuse Brainard suffered as a Devereux resident continue to impact his life today.  The sexual abuse he suffered beginning at age six led to humiliation, shame, embarrassment, confusion, and severe anxiety.  Brainard continues to have nightmares stemming from being raped by a teenager when he was only six years old, and can recall the exact room and the exact floor where this abhorrent incident occurred.  Brainard has spent decades anguishing over the loss of his childhood and his gross mistreatment by Devereux staff. He continues to experience grief, depression, and incredible anger stemming from his abuse at Devereux.

### 4.    Plaintiff Nicco Beretta

105.    Plaintiff Nicco Beretta suffered three years of physical and sexual abuse while residing at Devereux's Deerhaven facility in Chester, New Jersey.

106.    Plaintiff Beretta arrived at Devereux Deerhaven as a result of New Jersey's child welfare system.  At only 12 years old, New Jersey's child welfare agency (then called the Division of Youth and Family Services, or "DYFS") determined that Beretta's mother was no longer equipped to care for Beretta and placed him at the Arthur Brisbane Child Treatment Center.  After nearly a year at this placement, DYFS decide to move him to Devereux

Deerhaven, a Devereux campus for "emotionally disturbed" girls, to provide him with a more "permanent" residential placement.[132]

107.    The most severe abuse occurred during Beretta's first year at Devereux Deerhaven, when he was about 12 years old.  Another resident, who was 17 years old at the time, began frequently physically and sexually assaulting Beretta.  This older resident would drag him up the stairs at one of the cottages on the campus to perpetrate the abuse.  This abuse regularly happened openly in front of Devereux staffers, who did nothing about it.

108.    During Beretta's second year at Devereux, he recalls Deerhaven being the subject of public criticism, which led to staffers being brought in from across the country to try to "turn it around."  Despite this attempt to ameliorate issues with staffers, the staff continued to be improperly trained, and turnover remained high.

109.    Beretta's experiences leading up to his departure from Devereux Deerhaven reflect many of the issues he experienced over the past three years.  Devereux staff began making false accusations of Beretta acting inappropriately towards younger girls at the facility, basing their accusations in part on Beretta's past abuse as a child.  Beretta responded to these accusations by withdrawing, and began experiencing depression.  After an intense exchange with Devereux staff regarding their false charges, Beretta attempted to take his own life by cutting. He ended up at a 28-day hospital that was able to advocate for Beretta to return home to live with his mother due to his adverse experiences at Devereux.

110.    After three years of grievous abuse while residing at a Devereux facility, Plaintiff Beretta experienced anger, confusion, grief, shame, anxiety, and fear.  He was left suffering from

---

[132] Note that following the events underlying this Complaint, Plaintiff Beretta has transitioned and uses male-identifying pronouns.

sustained Post Traumatic Stress Disorder and incredible trauma stemming from his abuse.  He describes being on and off disability support for most of his adult life as a result of his abuse by Devereux.

### 5.    Plaintiff Jane Doe 1

111.    Plaintiff Jane Doe 1 was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff during her residential treatment at the Sugartown Road Devereux facility in Malvern, Pennsylvania. This treatment center provides intensive services for children like Jane Doe 1 who have advanced emotional, behavioral, and cognitive needs requiring full time residential treatment.

112.    During her stay at Devereux, Jane Doe 1 was placed with a roommate who expressed a desire for a physical relationship with Jane Doe 1. When Jane Doe 1 refused the attempts for a relationship, her roommate began sexually assaulting her by making unwanted physical advances.

113.    When Jane Doe 1 gained the courage to report this sexual harassment to a Devereux staff member entrusted with her care and supervision, that staff member punished her for "complaining" by placing her in solitary confinement.

114.    While Jane Doe 1 was in solitary confinement, her virginity was forcefully taken from her when an adult Devereux staff member raped her.

115.    Following this trauma, Jane Doe 1 was forced to return to room with the same sexually assaultive peer.

116.    On several occasions, Devereux staff members abused Jane Doe 1 by withholding meals from her as punishment when Jane Doe 1 "cried too much".

117.    At no time could, nor did, Plaintiff Jane Doe 1 consent to any of these horrendous acts that she was forced to suffer through.

### 6.     **Plaintiff Jane Doe 2**

118.    Plaintiff Jane Doe 2 was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff during her stay at a therapeutic residential treatment program in Florida.

119.    Devereux staff members tasked with Jane Doe 2's care and treatment forced Jane Doe 3 to kiss another minor girl who was at the Devereux center for therapeutic behavioral care. Staff members took photos of Jane Doe 2 while she endured this abuse.

120.    Devereux staff also used abusive, humiliating, and degrading discipline techniques towards Plaintiff Jane Doe 2. One example of such abusive punishment includes making Jane Doe 2 pull her mattress out of her room and into the living room, forcing her to sleep in the common area and depriving her of her privacy.

121.    Devereux staff also punished Jane Doe 2 by withholding food and meals from her.

122.    During her purported treatment at Devereux, Plaintiff Jane Doe 2 was misdiagnosed with a mental illness she did not actually have. Devereux staff kept her medicated consistent with the mental illness, over-medicating her to keep her under control.

123.    At no time could, nor did, Plaintiff Jane Doe 2 consent to any of these horrendous acts that she was forced to suffer through.

### 7.     **Plaintiff Jane Doe 3**

124.    Plaintiff Jane Doe 3 was a 14-year-old foster child when she was sexually groomed, assaulted and raped by multiple Devereux staff members during her treatment at the Devereux Statewide Inpatient Psychiatric Program and Group Home in Woodville, Florida. Jane Doe 3 entered this program as an abuse victim seeking healing, psychological treatment, and security, but exited the program with even deeper wounds due to the abhorrent sexual abuse she suffered at the hands of Devereux.

125.    A Devereux staff member began taking Jane Doe 3 and another patient to the movies. While on these excursions, the staff member would take Jane Doe 3 into the bathroom to perform sexual acts.

126.    Following these sexual assaults, the staff member continued to attempt contact with Jane Doe 3 using Devereux phone and email accounts. When Jane Doe 3 was asked about potential abuse, she did not want the staff member to get in trouble and denied that anything had happened to her.

127.    A second Devereux staff member then began a sexual "relationship" with Jane Doe 3.  The relationship began with grooming behaviors by the adult Devereux staff member. The staff member then began picking up Plaintiff Jane Doe 3 in the Devereux van, taking her off campus to have sexual relations with her. This pattern of predatory sexual behavior continued for over one year.

128.    Jane Doe 3, who was between 14 and 16 years old at the time, did not and could not comprehend the nature of these "romantic" and sexual interactions with an adult staffer. The staffer knew that Jane Doe 3 was a foster child who was receiving treatment for sexual abuse she had suffered in the past, and used that knowledge, in addition to Jane Doe 3's age, to take advantage of her vulnerabilities.

129.    At no time could Plaintiff Jane Doe 3 consent to any of these horrendous acts that she was forced to suffer through.

### 8.    Plaintiff Jane Doe 4

130.    Plaintiff Jane Doe 4 was 14 years old when she was sexually, physically, and emotionally abused by Devereux staff during her roughly one-month placement at Devereux in Westminster, Colorado between about April 20 to May 8, 1995.

131.    Jane Doe 4's parents sent her to Devereux to receive behavioral support after she had run away from home because of family issues.  Before age 14, Jane Doe 4 had been homeschooled and lived in two different countries.  English was her second language, and she struggled with communication.  Jane Doe 4 did not know where her parents were taking her, and upon arrival, Devereux staff told her that she was not loved by her parents, who did not want her anymore, and that she would be forced to live at Devereux "forever."

132.    Devereux staff acted aggressively towards Jane Doe 4, causing her to fear even making eye contact with staff members.  On one occasion, staff members found Jane Doe 4 smoking a cigarette outside.  They punished her by forcing her to do jumping jacks in a padded room and threatened her with a five-point harness restraint and forced drugs if she refused.  Staff then made her sit alone at a small school desk from morning until night for seven days and write "I will never smoke cigarettes again" 10,000 times.

133.    Jane Doe 4 tried to tell Devereux staff that she had experienced abuse at home. The staff did not report or address this abuse or give Jane Doe 4 any resources to help her.

134.    Devereux staff drugged Jane Doe 4 with Paxil and a powerful ADHD medication without any discussion or consent.  Staff would check each patient's mouth to ensure that they swallowed all pills that they were given.  Nearly every child was drugged with some sort of medication.

135.    Jane Doe 4 did not receive the therapy or services that her family had anticipated when placing her at Devereux.  Instead, Jane Doe 4 recounts sitting in her room for days on end, receiving no services whatsoever.  One day when there was an inspection of the facility, staff members brought out a game of Monopoly for the patients to play.  As soon as the inspection ended, staffers made the children put the game away immediately, telling them they could only

bring it out again during the next inspection.  Jane Doe 4 recalls only attending one "group session" during which the patients were asked to speak about how they were going to change their behavior—not constituting any form of actual mental health treatment.

136.   Staff also openly spoke about various aspects of patients' private medical and personal histories.  They would mock patients and make fun of different children's medical information in front of other patients.  Staff would warn the female patients that different male patients had histories of sexual violence, advising the young girls to "be careful" around them.  Jane Doe 4 recalls these staff members frequently complaining about the amount of hours they were working, their long shifts, and the meager pay they were receiving.

137.   During orientation, Devereux staff told Jane Doe 4 was told that when male patients were "going to masturbate," they needed to tell two staff members who would watch them.  As a female patient, Jane Doe 4 was watched by male staffers while she showered.

138.   During Jane Doe 4's time at Devereux, her roommate began screaming during the night because the staff would not let her sleep with her stuffed teddy bear.  Jane Doe 4 witnessed staff strap her roommate's hands and legs to the bed during the night and put oven mitts on her hands.  Her roommate was unsupervised during an extended period of time, during which she went to the bathroom and hung herself from the shower curtain.  In addition to Devereux abhorrently allowing this incident to occur, Jane Doe 4 was traumatized by her roommate's suicide.

139.   When Devereux told Jane Doe 4 that she would be released to return home to her family, they allowed her to have one phone call home.  Devereux staff warned Jane Doe 4 that they would be on the line during the call and if she spoke badly about the program or told her

parents she "didn't like it," this would demonstrate Jane Doe 4's lack of progress, they would disconnect the phone, and she would not be allowed to return home.

140.    Devereux revealed to Jane Doe 4's family that prior entering Devereux, she had been taking birth control medication.  Devereux immediately discontinued Jane Doe 4's birth control medication.  Roughly two months after returning home, Jane Doe 4 discovered she was pregnant.

141.    Jane Doe 4 spent an entire year after she returned home grappling with the trauma and suffering she experienced during her placement at Devereux.  She finally mustered the ability to tell her parents about the abuse she endured, describing her time at Devereux as "marking the end of [her] childhood."

142.    Plaintiff Jane Doe 4 has not forgotten, nor will she forget, her traumatizing experience at Devereux where her childhood was taken from her without her consent.  Jane Doe 4 will continue to suffer from this trauma and abuse for the rest of her life. She also states that she wants to speak out on behalf of her peers who were also abused by Devereux staff, including those who died at a young age or received life sentences due to incidents that occurred at Devereux.

### 9.    **Plaintiff Jane Doe 5**

143.    Plaintiff Jane Doe 5 was a 14-year-old girl when she was sent to her placement at the Scottsdale, Arizona Devereux Behavioral Health facility.

144.    Jane Doe 5 was repeatedly raped by a male staffer in his mid-30's during her time at Devereux.  This staff member would wake Jane Doe 5 in the middle of the night and covertly bring her into a conference room, where he forced her to perform vile sexual acts.  While the staff member raped Jane Doe 5, he would force her to bend over and "tell him that she liked it."

The staff member threatened Jane Doe 5 that if she told anyone about what he did, she would get in trouble and never be able to leave the facility.

145.    Jane Doe 5 recalls that this staff member was employed at Devereux for roughly seven months.  Jane Doe 5 was not the only victim of this sexual predator, who would routinely make sexual advances and "hit on" other young girls at the facility.

146.    Jane Doe 5 reported the abuse to Devereux staff and to her own family.  No one believed her. Because of the way that her mother and other Devereux staff responded to the abuse, Jane Doe 5 began to think that what happened was her own fault.

147.    Towards the end of her time at Devereux, Devereux staff began heavily medicating Jane Doe 5.  When Jane Doe 5's mother saw how Devereux was sedating her daughter, she finally removed Jane Doe 5 from the Devereux facility.  After this, Jane Doe 5 was never able to attend a "regular" school again.  She was forced to attend a behavioral school where students were strip searched by male staff and could not make phone calls home without staff members listening in.

148.    At no time could Plaintiff Jane Doe 5 consent to any of these horrendous acts that she was forced to suffer through, and she continues to live with the pain and trauma of her abuse every day.  Jane Doe 5 has suffered from, and will continue to suffer from, emotional pain, anxiety, depression, fear, confusion, denial, and anger related to the abuse she endured at Devereux.

### 10.    **Plaintiff Jane Doe 6**

149.    Plaintiff Jane Doe 6 was 14 years old when she was physically and sexually molested by Devereux staffers for over approximately one year.

150.    Jane Doe 6 entered the Devereux system after her father passed away.  Her mother's new husband decided that he did not want Jane Doe 6 around because of her

"emotional problems." She was sent to live at Gateway Devereux in Newtown Square, Pennsylvania around 1997-1999.

151.    On one of Jane Doe 6's first nights at Devereux, another patient attacked her while the children were entirely unsupervised by Devereux staff.

152.    Two staff members began sexually molesting Jane Doe 6 nearly every morning and evening. They would place a blanket over her head and touch her breasts, buttocks, and crotch areas. Jane Doe 6 states that while she was not vaginally penetrated, she knew other girls in her unit were, so the fear of that escalation was constant.

153.    On one occasion, an art teacher at Devereux and an assistant physically beat Jane Doe 6 after she "mouthed off." The art teacher and the other staffer led her outside, where they punched her in the head and kicked her in the vagina, beating her until she was "dazed and unable to get up for two minutes." The art teacher told her that she had problems because "kids like her never had their ass beat before." Jane Doe 6 was left on the ground for 15 minutes, crying and in incredible pain, before she returned to the art classroom.

154.    Jane Doe 6 had run away from other facilities similar to Devereux before. She viewed her placement at Devereux Gateway as "the final stop before the judicial system." Every 90 days, Jane Doe 6 would be "reviewed" to determine if she should be released. Jane Doe 6 feared that complaining about her abuse would prevent her from receiving a satisfactory review so that she would be able to return home.

155.    Towards the end of her time at Devereux, Jane Doe 6 received "home passes" which would allow her to leave the facility to visit her family. When she returned to the facility after a home visit, Devereux staff drug-tested her and told her that she tested positive for benzodiazepines. The staff locked Jane Doe 6 in solitary confinement for multiple days as

punishment.  Despite testing positive for benzodiazepines, Jane Doe 6 never had access to any

drugs during her home visits, so her mother called Devereux to inform them that the Zoloft that

Devereux was administering to Jane Doe 6 may have caused her positive test results.  Despite

this, Jane Doe 6 continued to be punished and heavily medicated by Devereux staff, who would

no longer let her visit her mother due to the positive drug test.

156.     After suffering through this sexual, physical, and emotional abuse at Devereux's

hands for roughly one year, Jane Doe 6 was finally released and able to return home.  The effects

of her abuse and the trauma that she experienced did not surface for Jane Doe 6 until her 20s, as

Jane Doe 6 tried to "block it out" as best as she could in the years immediately following her

return home.  Jane Doe 6 will continue to suffer from the fear, anxiety, stress, and grief related to

her abuse at Devereux for the rest of her life.

### 11.     Plaintiff John Doe 1

157.     Plaintiff John Doe 1 was eight years old when he was physically abused during

his treatment at Devereux in Malvern, Pennsylvania.

158.     John Doe 1's parents entrusted Devereux to provide a safe, therapeutic

environment for John Doe 1 to overcome challenges related to his Autism Spectrum Disorder

(ASD) diagnosis.

159.     During John Doe 1's first two weeks at the program, his parents were denied any

contact with John Doe 1.

160.     When Plaintiff John Doe 1 was finally able to talk to his parents on the phone, he

told them that he was scared and had been hurt. Devereux staff then forced him off the phone.

161.     John Doe 1's parents were unable to reach him on the phone after this, so they

went to the facility to demand to see John Doe 1 in person. Devereux allowed John Doe 1's

parents to meet with him together with his case manager.

162.     John Doe 1's parents saw that he had a red mark on his neck. John Doe 1 described to his parents how Devereux staff had forced him into a choke hold, causing the marks on his neck. He also told his parents that Devereux staff had thrown him onto his bed, causing him to strike his head against the hard frame. John Doe 1 was visibly afraid and begged his parents to come home.

163.     John Doe 1's parents asked for the names of the staff members they met, as well as the names of the staff members who had abused their child, but were denied this information. They were told only that a "male employee", whose name they could not disclose, had injured their child, but that he was moved to a different unit and so was no longer in contact with John Doe 1. When John Doe 1's parents asked if these issues had been reported to DHS, they were not told either way.

164.     Plaintiff John Doe 1's parents removed him from Devereux the following week. Devereux resisted this decision and only allowed John Doe 1's parents to take him home after signing paperwork that this removal was "against medical advice."

### 12.     Plaintiff John Doe 2

165.     Plaintiff John Doe 2 was 11 years old when he was physically and emotionally abused by multiple Devereux staff members while a patient at Devereux in Glenmoore, Pennsylvania.

166.     John Doe 2 was placed in this Devereux program after suffering from aggression and suicidality.

167.     Three to four months into his first placement at Devereux, he was moved to a new building with different staff members. It was in this setting when John Doe 2 first called his mother to report that he did not feel safe. Because he knew his calls were monitored, John Doe 2 could not provide any more details.

168.     When John Doe 2's mother visited him at the facility, she noticed marks on his body. John Doe 2 told her that some of these marks were from other youth in his program, but other marks were caused by staff members. His wrist was so swollen that his mother considered bringing him to the emergency room. There were thumb marks on his ribs, including thumbnail indentations.

169.     John Doe 2 told his mother that staff members restrained him by holding their arms on his throat against a wall and putting their knees on his chest. Once, when John Doe 2 was being restrained in this way, he spit on the staff. The next day, this staff member berated him in front of everyone, saying, among other things, "You're a little pussy." John Doe 2 appeared to be experiencing a panic attack when recounting these details to his mother.

170.     During these visits, John Doe 2 behaved fearfully, looking over his shoulder at the staff members and speaking quietly as if he was afraid that the staffers would hear what he was saying.

171.     When John Doe 2's mother and/or therapist reported the abuse to ChildLine in Pennsylvania, there was an investigation conducted where the staff in question was moved for two weeks while the evidence was reviewed. One male staffer was investigated on three separate occasions for abuse of John Doe 2. But because the staff was aware of cameras in the general living spaces, they performed these unauthorized, abusive holds on John Doe 2 in areas where there are no cameras. And because the video monitoring does not capture audio, the verbal abuse could not be substantiated. After each investigation of the staff members, John Doe 2 told his mother that the staff members would retaliate against him for reporting the abuse.

### 13.     Plaintiff John Doe 3

172.     Plaintiff John Doe 3 was 14 years old when he arrived at the Devereux facility in Westminster, Colorado.  Lauded as one of the best autism support programs for boys in the

country, John Doe 3's mother hoped that the program would provide support for John Doe 3's

co-morbid issues with auditory processing, ADHD, and severe anxiety.  But instead of receiving

the support that this child needed, Devereux staff took advantage of John Doe 3 by physically

and emotionally abusing him for 17 months.

173.    For children with ASD , behavioral challenges are common and expected.  Many

youth with ASD exhibit physically aggressive behaviors such as hitting, kicking, and biting.[133]

Other common behaviors include a hypersensitivity to being touched, temper tantrums, and

unusual or overwhelming reactions to certain sights or sounds.[134] Residential behavioral health

centers, especially those which specialize in ASD support, require specialized training of their

staff to respond humanely and appropriately to outbursts and aggression related to a child's

ASD.[135] When staff lack such training, instead resorting to aggressive physical restraints and/or

placement into a seclusion room, children are placed at heightened risk of physical and

emotional injuries, or even death.[136]

174.    Devereux staff forcefully restrained John Doe 3 "at least 60 times."  After many

of these instances, John Doe 3 was left with red marks and bruises, as documented by his nurse.

Not only did these physical restraints go beyond the protocol for acceptable behavioral health

management techniques, but these staff members also knew, or should have known, that because

of his ASD-related responses to human contact as well as to improperly used verbal de-

---

[133] https://www.cdc.gov/ncbddd/autism/signs.html (last visited June 15, 2021).
[134] *Id.*
[135] https://www.npr.org/2019/06/15/729955321/how-some-schools-restrain-or-seclude-students-a-look-at-a-controversial-practice (last visited June 15, 2021).
[136] https://psmag.com/education/restraint-and-seclusion-and-the-death-of-max-benson (last visited June 15, 2021); https://www.npr.org/2018/12/09/675145052/school-where-student-with-autism-died-violated-state-regulations-officials-say (last visited June 15, 2021).

escalation techniques, John Doe 3 cannot be touched by anyone other than his mother without becoming triggered and traumatized.

175.    Devereux staff also failed to appropriately monitor and supervise other patients in John Doe 3's unit, leaving John Doe 3 vulnerable to grossly harmful experiences.  John Doe 3 witnessed another patient regularly have sexual encounters in front of him and other children in his unit.  This includes the placement of a resident on the unit who engaged in sexual acts with the peers during the time she was there.  John Doe 3 also witnessed a roommate attempt to commit suicide.  His own abuse, combined with observing these horrific and tragic incidents caused John Doe 3 to begin to self-harm behaviors and attempt to take his own life.

176.    In or about June 2020, John Doe 3 got into an argument with a peer.  In an attempt to diffuse the argument, one female staff grabbed John Doe's shoulder from behind and with the assistance of two other female staff members, tackled John Doe 3 to the ground.  John Doe 3 responded by kicking the staff members.  Instead of providing John Doe 3 with the interventions, services, and behavioral coping strategies John Doe 3 required to manage his outbursts, Devereux allowed these female staff members to criminally charge him with a felony assault and a misdemeanor assault.  In March 2021, after numerous hearings, his completion of a "Making Better Choices" online course and eight hours of community service, Devereux's case against John Doe 3 was dismissed by the court and his record was expunged.

177.    Because Devereux staff were not properly equipped, qualified, or trained to respond to John Doe 3's ASD-related outbursts or self-harming behaviors, John Doe 3's mother removed him from Devereux in July 2020.  John Doe 3's mother describes this experience as leaving her son "worse than when he entered".

178.     John Doe 3 continues to suffer from the severe emotional and psychological impacts of the repeated physical abuse he endured while at Devereux.  John Doe 3 is now more fearful of others and his behavioral challenges have become more extreme. He now struggles to cope with the severe trauma inflicted by the Devereux staff who physically abused him in response to typical ASD-related behaviors.  Instead of receiving the therapeutic treatment John Doe 3's mother sought for her child, John Doe 3 is now left suffering from confusion, anger, anxiety, fear, and worsened behavioral outbursts.  Prior to the start of in-person learning at his new high school, John Doe 3's mother had to arrange for a private tour of the facility to demonstrate to him that there were no seclusion rooms and that restraints would not be used to provide the behavioral support that he needed while in an educational setting.

## TOLLING OF STATUTE OF LIMITATIONS

179.     The statute of limitations is tolled based on the doctrines of continuing violations and fraudulent concealment.

180.     Upon information and belief, physical, emotional, and/or sexual abuse of Devereux patients occurred as early as 1996, and has continued until at least 2019, if not the present. [137]

181.     Tolling of the statute of limitations based on fraudulent concealment occurs where the entity liable for the claim fraudulently conceals the existence of the claim or the identity of any person liable for the claim from the knowledge of the person entitled to sue.[138] To satisfy the

---

[137] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

[138] Pennsylvania, California, and Florida state case law all recognize the doctrine of fraudulent concealment as applied to the tolling of any relevant statutes of limitations. *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005); *Britton v. Girardi*, 235 Cal. App. 4th 721 (2015); *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635 (Fla. Dist. Ct. App. 2015).

equitable principle of fraudulent concealment in order to toll the statute of limitations, Pennsylvania, California, New Jersey, Texas, and Florida case law are in agreement that Plaintiffs must show: (1) successful concealment of the causes of action; and (2) fraudulent means to achieve that concealment.

182.   Devereux concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had causes of action against them at the time the physical, emotional, and sexual abuse occurred by making material representation(s) to Plaintiffs involving a past or existing fact by, including but not limited to:

a.   Misrepresenting that the abuse experienced by Plaintiffs was part of their treatments, in part by accompanying the abuse with actual medical treatments including sedatives, as in the case of Plaintiffs Kahn, Brainard, Jane Doe 2, Jane Doe 4, Jane Doe 5, and Jane Doe 6;

b.   Misrepresenting that the abuse experienced by Plaintiffs was appropriate by taking advantage of the vulnerability of patients who were looking for adults whom they could trust and who made them feel safe, including by: building trust with patients as a method of grooming them for sexual abuse, bringing gifts to their patients, providing patients with extra privileges, and exchanging "love letters" with their patients;[139]

---

[139] Lisa Gartner & Barbara Laker, *At the nation's leading behavioral health nonprofit for youth, Devereux staff abused children in their care for years – while red flags were dismissed*, THE PHILADELPHIA INQUIRER, https://www.inquirer.com/news/inq/devereux-advanced-behavioral-health-abuse-children-pennsylvania-20200811.html (last visited June 15, 2021).

    c.        Warning patients that if they were to report abuse by staff members, they would be severely punished or forbidden from ever returning home, as in the case of Jane Doe 4 and Jane Doe 5;

    d.        Representing that Devereux's physical, emotional, and sexual abuse of Plaintiffs was normal, medically necessary, proper, appropriate, legitimate, and/or medically beneficial, generally;

    e.        Representing that Devereux was not physically, emotionally, and sexually assaulting Plaintiffs;

    f.        Representing that Plaintiffs should not question and/or report the conduct to appropriate authorities; and

    g.        Representing that there was no possible cause of action against Devereux.

183.    The material representation(s) to Plaintiffs were false in that Devereux was actually physically, emotionally, and sexually violating Plaintiffs.

184.    When Devereux made the material representation(s), they knew or should have known that the representations were false in that the treatment of Plaintiffs was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty.

185.    Devereux made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they had previously received strikingly similar complaints of physical, emotional, and sexual abuse by Devereux staff from other previous patients and knew that the appropriateness of their conduct had been questioned in the past.

186.    Defendant's representations were material, in that had Plaintiffs known the representations were false, they would have stopped seeking treatment from Devereux immediately.

187.    Devereux made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs in that Plaintiffs should believe that their treatment at Devereux's facilities was proper, appropriate, and legitimate; should not believe that they had been abused; should continue to be treated at Devereux's facilities so that the abuse could continue; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Devereux.

188.    Plaintiffs acted in reliance upon the material representation(s) in that they: (a) reasonably believed that their treatment was proper, appropriate, and legitimate; (b) reasonably did not believe that they had been physically, emotionally, and sexually abused; and (c) did not believe that they should question and/or report the conduct to appropriate authorities.

189.    In addition to affirmative false representations, Defendant failed to disclose to Plaintiffs that they were being abused and that Devereux had a history of committing physical, emotional, and sexual assaults in the guise of medical treatment.

190.    Defendant's representations caused Plaintiffs to be exposed to the risk of physical, emotional, and sexual abuse by Devereux staff, and to actually be physically, emotionally, and/or sexually abused by Devereux staff.

191.    Devereux is equitably estopped from relying upon a statute of limitations defense because of its gross negligence and silence as well as its active and deliberate efforts to deceive Plaintiffs and to conceal their unlawful and grossly negligent conduct. Through its gross

negligence and silence, Devereux encouraged and influenced Plaintiffs to act to their disadvantage by telling them that their complaints about physical, sexual, and emotional abuse were unfounded, encouraging them to continue seeking treatment at Defendant's facilities and making them feel ashamed, such that Plaintiffs could not discover the nature, scope, and magnitude of Defendant's misconduct.  As set forth herein, Defendant also took active steps to misrepresent material facts.

192.    Plaintiffs' claims should be equitably tolled because any alleged failure to meet any deadline unavoidably arose from circumstances beyond Plaintiffs' control. Devereux concealed material facts regarding Devereux's misconduct and for decades Defendant misrepresented and fraudulently concealed this activity and the substantial risks posed by that misconduct.

193.    Devereux intended for the public, including Plaintiffs, to be deceived by this fraud such that Devereux's conduct remained unstopped for decades and the repercussions of their misconduct was not dealt with to the detriment of Plaintiffs. As set forth herein, Defendant knew the actual facts, that Devereux staff have been abusing their youth for decades, and that Defendant knowingly did nothing to stop it.

194.    Plaintiffs' damages, as herein alleged, were proximately caused by Devereux.

195.    As minors, Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Devereux at the time that such abuse occurred.

## CAUSES OF ACTION

### COUNT I
### Violation of Title IX (20 U.S.C. §§ 1681, *et seq.*)
### Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment

196.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

197.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

198.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

199.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

200.    The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

201.    Plaintiffs are "persons" under Title IX.

202.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

203.    Defendant receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

204.    Under Title IX, Devereux was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

205.    Plaintiffs were subject to sexual harassment, abuse and assault by Devereux staff members while patients and/or residents at Defendant's facilities and programs as described above, including: experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sex with a minor; rape of a minor student by a staff member; male staff watching naked girls shower; forcing a Plaintiff to kiss other youth while taking photos; and repeated sexual grooming behaviors.

206.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.[140]

207.    Devereux was on actual notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX. Devereux staff directly witnessed (or perpetrated) the abuse of each Plaintiff, constituting actual notice. Further, Plaintiffs Jines, Jane Doe 1, Jane Doe 6, and John Doe 3 and his mother complained directly to Devereux staff that they were being abused and assaulted, yet the abuse continued without corrective action by Devereux. The history of sexual abuse at Devereux facilities is well-documented.  In fact, the CEO of Devereux was not surprised to hear of the repeated sexual and physical abuse revealed by the *Philadelphia Inquirer's* recent investigation. As stated in his

---

[140] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html (last visited June 15, 2021).

response to the Report, the CEO suggested that Devereux was aware of *every* incident of abuse included in the Report.[141]

208.    Devereux is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Devereux youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

209.    Devereux is responsible for setting and approving all national, organization-wide policies and protocols for Devereux programs and operations, including sex discrimination policies.

210.    Devereux failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

211.    By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

212.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Devereux was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiffs. Plaintiffs, who were all school-aged at the time of their abuse, relied on Devereux to receive their education.  Being subjected to pervasive, repeated abuse and a sustained threat of sexual assault denied Plaintiffs the ability to benefit from Devereux's educational opportunities.  The severe anxiety, trauma, fear, and suffering inflicted

---

[141] https://www.devereux.org/site/SPageServer/?pagename=response_to_safety (last visited June 15, 2021).

by Devereux prohibited Plaintiffs' ability to meaningfully participate in their classes and educational programming at Devereux.  For Jane Doe 6, one of her abusers even included her own teacher.

213.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiffs were damaged.

214.    Devereux was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

    a.    Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

    b.    Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Devereux;

    c.    Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Devereux residents and patients;

    d.    Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

    e.    Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

215.    Devereux's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

216.     Because Devereux failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Devereux, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

217.     In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Devereux acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

218.     Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT II
### Violation of Title IX (20 U.S.C. §§ 1681(a), *et seq.*)
### Deliberate Indifference to Prior Sexual Harassment

219.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

220.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

221.     Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

222.    Devereux's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Devereux provides to its patients and residents, placing Devereux squarely in the purview of Title IX.

223.    Devereux regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*

224.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

225.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

226.    Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment—including sexual assault—by school employees, students, and third parties.

227.    Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

228.    As detailed above, before Plaintiffs were abused while at Devereux, Devereux had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

229.    Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Devereux.

230.    With this knowledge, Devereux had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

    a.    Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

    b.    Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

    c.    Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

    d.    Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

    e.    Improving Devereux's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

231.    Devereux's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

232.    By its acts and omissions, Devereux was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Devereux.

233.    As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Devereux's programs.

234.     Because Devereux did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Devereux, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

235.     The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment where Plaintiffs could learn. Plaintiffs, who were all school-aged at the time of their abuse, relied on Devereux to receive their education.  Being subjected to pervasive, repeated abuse and a sustained threat of sexual assault denied Plaintiffs the ability to benefit from Devereux's educational opportunities.  The severe anxiety, trauma, fear, and suffering inflicted by Devereux prohibited Plaintiffs' ability to meaningfully participate in their classes and educational programming at Devereux.  For Jane Doe 6, one of her abusers even included her own teacher.

236.     In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Devereux in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

237.     Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT III
## NEGLIGENCE

238.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

239.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

240.    Devereux acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Devereux facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Devereux programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Devereux facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Devereux programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Devereux programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Devereux programs.

241.    Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

242.    By failing to exercise ordinary care through their acts and omissions, Devereux caused harm to Plaintiffs.

243.    Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

## COUNT IV
## NEGLIGENT HIRING

244.    Devereux is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendant's programs.

245.    Devereux knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags", Devereux would have known that these employees were not suitable for the particular duty of caring for children.

246.    It was unreasonable for Devereux to hire employees whom Devereux should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

247.    As detailed above, Plaintiffs were harmed by various Devereux staff members. These harms include: rape, sexual assault, sexual grooming behaviors, physical assault, and withholding meals.

248.    Because of Devereux's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Devereux shown due care in the screening of its employees, Devereux staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

## COUNT V
## NEGLIGENT RETENTION

249.    Devereux became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Devereux patients and residents, and yet failed to investigate, discharge, or reassign these employees.

250.    Devereux knew or should have known that the retention of staff members who abused Plaintiffs posed a risk or hazard to the youth in its treatment programs.

251.    Devereux reasonably should have known that its staff punished Jane Doe 1 by placing her in solitary confinement, raped her while in solitary confinement, and then forced her to share a room with a patient who Devereux staff knew had been making unwanted sexual advances towards her. With reasonable supervision, protocols, and checkpoints in place, Devereux should have been aware of these egregious acts. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

252.    Devereux reasonably should have known that Devereux staff verbally and physically abused Plaintiff Jines, and allowed Plaintiff Jines' roommate to physically abuse her. Plaintiff Jines even reported this abuse to Devereux, putting them on actual notice of their employee's bad acts. Devereux also should have known that a male staffer routinely watched Plaintiff Jines while she and other young girls took showers. With reasonable supervision and protocols in place, Devereux should have known about each of these incidents. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

253.    Devereux reasonably should have known that Devereux staff abused Jane Doe 2 by forcing her to kiss another girl while its employees took photos, punished Jane Doe 2 by

making her pull her mattress into the living room to sleep, withholding food from Jane Doe 2 as punishment, and misdiagnosed Jane Doe 2 with a mental illness she did not have, giving her medication consistent with that mental illness. Had Devereux adequately supervised its employees, Devereux reasonably would have known about these incidents. Despite the fact that Devereux reasonably should have known about this abuse, it allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

254.    Devereux reasonably should have known that a Devereux staff member sexually abused Jane Doe 3 by taking her to the movies and having sexual relations with her in the bathroom, that another Devereux staff member groomed Jane Doe 3, then had an abusive sexual "relationship" with her for a year, routinely picking her up in the Devereux van to sexually assault her off campus. Had Devereux adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Jane Doe 3. Despite the fact that Devereux reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

255.    Devereux reasonably should have known that multiple male Devereux staffers were physically abusing Plaintiff John Doe 1, who was eight years old at the time and diagnosed with ASD Autism Spectrum Disorder. Devereux staff did not allow John Doe 1 to speak to his parents for weeks. John Doe 1 displayed visible physical signs of abuse, including red marks on his neck. Had Devereux adequately and appropriately supervised and exercised control over its staff, Devereux would have been aware of the abuse that occurred to John Doe 1. Despite the fact that Defendant reasonably should have known about this abuse, Defendant allowed the

abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

256.     Devereux reasonably should have known, and did in fact know, that John Doe 2 was abused by three male Devereux staff members when he was 11 years old. John Doe 2 showed physical signs of abuse, including marks on his body, thumbnail indentations on his ribs, and an extremely swollen wrist. John Doe 2 told his mother, who reported to ChildLine Pennsylvania, that this abuse was caused by Devereux staff members. One of these employees was investigated three times. Each time, the staff member would retaliate against John Doe 2. Despite Devereux's knowledge that John Doe 2 was repeatedly being physically abused, including by the same Devereux employees, Defendant did not independently investigate, transfer, or fire this employee, instead allowing the abuse of John Doe 2 to happen time and time again.

257.     Defendant reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendant's breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously harmed.

## COUNT VI
## NEGLIGENT SUPERVISION

258.     Devereux owed a duty to exercise reasonable care in its operation of programs for youth with developmental and/or intellectual disabilities, behavioral needs, and mental health concerns such as to avoid harm to the vulnerable youth in its custody. Defendant possessed a special relationship with Plaintiffs, as Devereux was entrusted with the duty of care and custody over Plaintiffs, who were minors at the time.

259.     Devereux knew or should have known that the lack of supervision of staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs.

260.     Youth in Devereux programs cannot reasonably be expected to protect themselves. No child is reasonably able to protect himself or herself from sexual, physical, and emotional assaults and abuses by staff who are tasked with their care. This is even more true for youth in Defendant's programs, who come to Devereux because of their need for advanced behavioral health supports. In many instances, advanced intellectual and/or developmental disabilities and behavioral health needs inhibit a child's ability to know or appreciate the nature of their relationships with others and understand an appropriate versus an inappropriate interaction with a teacher or staff member.

261.     Devereux failed to exercise ordinary care to prevent intentional harms by their employees acting outside the scope of their employment. Devereux was aware that its employees had for decades committed acts of sexual, physical, and emotional abuse towards Devereux patients, students, and residents. This gave Devereux reason to know that abuse of their residents and patients was commonplace and that Devereux needed to implement procedures and practices to prevent intentional harms by Devereux staff.

262.     Devereux knew that it had the ability to control the conduct of its staff, as Devereux is in an employer-employee relationship in which Devereux sets standards, protocols, and policies for its staff, exercises a supervisory role over staff, and has the capacity to fire and reassign its employees.

263.     Despite knowing of this pattern and practice of abuse in Devereux programs, Devereux failed to enact and implement appropriate policies and protocols including, for example: staffing sufficient numbers of Direct Support Professionals such that staff members are

not alone with children, enacting supervision protocols to ensure that staff are following proper procedures, eliminating blind spots in Devereux facilities where abuse occurred undetected, and taking immediate action to investigate, reassign, and/or terminate employment for staff who engaged in abusive behavior towards their patients and residents.

264.    Because of Defendant's negligent supervision, in which Devereux breached its duty to exercise reasonable care to prevent outrageous and tragic harms to youth in its care, Plaintiffs were gravely harmed.

## COUNT VII
## GROSS NEGLIENCE

265.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

266.    Devereux owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

267.    Devereux acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

268.    At all relevant times, Devereux owed a duty to Plaintiffs to implement practices and policies to:

      a.    Prevent sexual, emotional, and physical abuse of youth by Devereux staff;

      b.    Prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

      c.    Prohibit grooming and other sexually exploitative behavior by Devereux staff;

d.      Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

e.      Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

f.      Mandate the training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

g.      Protect Plaintiffs from such abuse and foreseeable risks; and

h.      Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

269.    Defendant's duty arose from taking responsibility for the care and custody of youth attending their programs.

270.    Devereux acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Devereux for treatment, growth, and education, including Plaintiffs.

271.    Devereux knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Devereux created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

272.     As one of the nation's largest behavioral healthcare organizations, Devereux is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Devereux thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

273.     The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.[142]

274.     By recklessly failing to keep these children safe while in its care and custody, Devereux exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

275.     As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Devereux.

## COUNT VIII
## NEGLIGENT MISREPRESENTATIONS AND OMISSIONS

276.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

---

[142] https://www.childwelfare.gov/topics/can/factors/ (last visited June 15, 2021).

277.    In the course of their business, Defendant presents itself as maintaining a gold standard in the field of behavioral health treatment for youth with disabilities. Devereux's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress.[143] Devereux details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."[144]

278.    Defendant's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols "through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices."[145] Through its advertising, Devereux represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Devereux failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

279.    Devereux's website and advertising misrepresents material facts regarding the quality of its programs, as Devereux fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendant's representations were not true,

---

[143]https://www.devereux.org/site/SPageServer/?NONCE_TOKEN=DD6B52FFC9FF6889D9FC1A342C5CF38E&pagename=Mission (last visited June 15, 2021).
[144] https://www.devereux.org/site/SPageServer/?pagename=philosophy_of_care (last visited June 15, 2021).
[145] https://www.devereux.org/site/SPageServer/?pagename=safety_and_security (last visited June 15, 2021).

as Devereux negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

280.    Plaintiffs and their family members relied on Defendant's representations about the quality of their programs in choosing to enroll in treatment at Devereux.

281.    Devereux knew or should have known that the representations about the quality of their programs – especially the safety and security of their patients, students and residents – would be relied upon by those individuals and their families.

282.    Plaintiffs were harmed because of Devereux's negligent misrepresentations about the safety and security of their programs.  Plaintiffs' parents and guardians reasonably relied on Devereux's representations of safety and security and were thereby harmed when they unknowingly placed their children in Devereux's custody.

## COUNT IX
### Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*
### (Plaintiff Jines Against Devereux)

283.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

284.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice."

<u>Unlawful</u>

285.    Devereux's conduct is unlawful in violation of the UCL because, as described below, it violates the California Consumers Legal Remedies Act.

286.    Devereux's conduct is unfair because it is immoral, unethical, unscrupulous, oppressive, and substantially injurious. Devereux took responsibility for the care, custody and wellbeing of Plaintiff Jines, a 13-year-old child with advanced and delicate behavioral health

needs. Devereux was entrusted with the treatment of Plaintiff Jines by her family, who sought Devereux's services to provide needed behavioral health interventions for their child.

287.    Devereux breached that trust and acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by, among other things:

a.    Continuing to hold itself out to the public as a safe, therapeutic environment for children with behavioral health needs while knowing of systemic, continued abuse of youth by Devereux staff;

b.    Intentionally concealing from the public incidents and reports of child abuse in Devereux facilities;

c.    Failing to prevent sexual, emotional, and physical abuse of youth by Devereux staff;

d.    Inadequately screening new Direct Support Professionals responsible for frequent interaction and oversight of youth;

e.    Maintaining inadequate numbers of Direct Support Professionals such that youth were left unattended, unsupervised, and/or vulnerable to abuse occurring undetected by Devereux;

f.    Failing to prohibit and prevent romantic or sexual relationships between youth and Devereux staff;

g.    Failing to prohibit grooming and other sexually exploitative behavior by Devereux staff;

h.    Failing to require and ensure the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Devereux programs by staff or by peers;

i.     Failing to implement the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Devereux programs;

j.     Failing to mandate and implement adequate training of all staff who work directly with youth in Devereux programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

k.     Failing to protect Plaintiff Jines from her abuse and its foreseeable risks; and

l.     Failing to provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

288.    The gravity of the harm resulting from Devereux's conduct far outweighs any conceivable utility of this conduct. There are reasonably available alternatives that would further Defendant's stated purpose as a behavioral health care provider for children, such as enhanced screening measures, more reasonable and rigorous training of Direct Support Professionals, increased staffing during vulnerable nighttime hours, enhanced supervision of Direct Support Professionals, and implementing safer surveillance and/or building designs so as to avoid blind spots.

289.    Plaintiff Jines, who was 13 years old, could not have reasonably avoided injury from Devereux, as she was verbally and physically abused by adult Devereux staff members who were responsible for her care and supervision.

<u>Fraudulent</u>

290.    Devereux's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer:

    a.      When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jines.

    b.      Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

291.    Devereux had the opportunity to tell Plaintiff Jines and her family the truth about their behavioral health centers and services when Plaintiff Jines' family enrolled her in this treatment program. Despite this opportunity, Devereux failed to disclose the above information to Plaintiff Jines. Had Devereux made those disclosures, Plaintiff Jines would not have been sent to Devereux for her treatment.

292.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jines and her family.

293.     As a direct and proximate result of Defendant's UCL violations, Plaintiff Jines has suffered injuries in fact, including physical harms, and seeks appropriate relief under the UCL, including injunctive relief and restitution. Had Devereux not made misleading statements and omissions regarding the safety and security of their treatment program for youth, Plaintiff would not have enrolled in the program and paid the requisite fees. In the meantime, Devereux generated more revenue than they otherwise would have by earning Plaintiff Jines' treatment program fees, unjustly enriching itself. Plaintiff Jines thereby suffered economic losses in addition to her physical and emotional injuries.

294.     Plaintiff Jines was harmed, and Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harm.

295.     The requested injunction under the UCL will primarily benefit the interests of the general public. It will have the primary purpose and effect of prohibiting unlawful acts that threaten injury to members of the public, most notably their vulnerable children, who have been placed or who will be placed under the care and custody of Devereux Advanced Behavioral Health.

## COUNT X
**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
(Plaintiff Jines Against Devereux)**

296.     Plaintiff Jines incorporates by reference all prior paragraphs as if set forth in full herein.

297.     Devereux is a "person" as defined by Civil Code §§ 1761(c) and 1770 and have provided "services" as defined by Civil Code §§ 1761(b) and 1770.

298.     Plaintiff Jines is a "consumer" as defined by Civil Code §§ 1761(d) and 1770 and has engaged in "transaction[s]" as defined by Civil Code §§ 1761(e) and 1770.

299.    Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiff Jines, and those acts and practices violated Civil Code § 1770, including by:

  a.    representing that their services had characteristics, uses, and benefits that they did not have;

  b.    representing that their services were of a particular standard, quality, or grade, when they were not;

  c.    advertising services with intent not to sell them as advertised; and

  d.    representing that the subject of a transaction had been supplied in accordance with a previous representation when it had not.

300.    Devereux's acts and practices violated the Consumers Legal Remedies Act because Devereux failed to disclose information that was material to Plaintiff Jines' transactions with them:

  a.    When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jines.

  b.    Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

301.    Devereux had ample means and opportunities to alert Plaintiff at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alter Plaintiff and her family that Plaintiff Jines had suffered abuse while being treated in Defendant's behavioral health center.

302.    Devereux had the opportunity to tell Plaintiff Jines and her family the truth about their behavioral health centers and services when Plaintiff Jines' family enrolled her in this treatment program. Despite this opportunity, Devereux failed to disclose the above information to Jane Doe 2. Had Devereux made those disclosures, Plaintiff Jane Doe 2 would not have been sent to Devereux for her treatment.

303.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health center because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff Jines through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Plaintiff Jines and her family.

304.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the Consumer Legal Remedies Act, Plaintiff Jines has suffered actual damages. Had Devereux not made misleading statements and omissions regarding the safety and security of their treatment program for youth, Plaintiff Jines would not have enrolled in the program and paid the requisite fees. In the meantime, Devereux generated more revenue than they otherwise

would have by earning Plaintiff Jines' treatment program fees, unjustly enriching itself. Plaintiff

Jines thereby suffered economic harm in addition to suffering physical and emotional harm as a

result of Devereux's deceptive practices.

305.    Plaintiff Jines was harmed, and Devereux's misleading statements and omissions

were a substantial factor in causing Plaintiff's harm.

306.    Plaintiff Jines accordingly is entitled to equitable relief, reasonably attorneys' fees

and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful,

fraudulent and deceitful activity.

307.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff has sent a letter to Devereux

notifying them of these CLRA violations and affording Devereux the opportunity to correct its

business practices and rectify the harm caused. Plaintiff sent the CLRA notice via certified mail,

return receipt requested, to Devereux at Devereux's principal place of business. Plaintiff seeks

money damages under the CLRA.

308.    Plaintiff's CLRA venue declaration is attached as Exhibit 10 to this complaint in

accordance with Cal. Civ. Code § 1780(d).

309.    The conduct of Devereux set forth herein was reprehensible and subjected

Plaintiff Jines to cruel and unjust hardship in conscious disregard of her rights, constituting

oppression, for which Devereux should be punished by punitive and exemplary damages in an

amount according to proof. Devereux's behavior evidences a conscious disregard for the safety

of the children entrusted to them. Devereux's conduct was and is despicable conduct and

constitutes malice under Section 3294 of the California Civil Code. An officer, director, or

managing agent of Devereux personally committed, authorized, and/or ratified the reprehensible

conduct set forth herein. Plaintiff thus seeks an award of punitive damages sufficient to penalize Devereux.

**COUNT XI**
**FAILURE TO REPORT CHILD ABUSE**
**(California Child Abuse and Neglect Reporting Act,**
**Cal. Penal Code §§ 11164-11174.4)**
**(Plaintiff Jines Against Devereux)**

310.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

311.    The Child Abuse and Neglect Reporting Act, found in Sections 11164-11174.4 of the California Penal Code, imposes reporting requirements for certain professionals to report known or suspected instances of child abuse or neglect.

312.    Included in the list of "mandated reporters" are "an administrator or employee of a public or private organization whose duties require direct contact and supervision of children," "an employee of a child care institution, including, but not limited to, foster parents, group home personnel, and personnel of residential care facilities." Devereux and its staff fall within this list of mandated reporters, as Devereux is a behavioral health facility for youth through which its staff and employees routinely come into contact with children.

313.    In nearly every incident of abuse reported by the *Philadelphia Inquirer* in August 2020, Devereux failed to identify and report children on their campus that were being sexually abused or subject to grooming behaviors. Instead, these children with disabilities and mental health needs were left to report their own abuse or the abuse of their peers.

314.    For Plaintiff Jines, Defendant had reason to know or suspect that she was being abused by Devereux staff. Plaintiff Jines was emotionally, verbally, and physically abused by Devereux staff. Employees allowed Plaintiff Jines' roommate to hit her, and when she reported this to Devereux staff, they knowingly and intentionally did nothing. Devereux was thus aware of these acts of physical abuse. Plaintiff Jines also suffered from emotional and sexual abuse by

being forced to shower while being observed by a man who watched her get in and out of the shower naked. These acts of abuse all occurred within Devereux's facility in Santa Barbara, California.

315.    Devereux staff and officials need only "reasonable suspicion" that a child is being abused in order to trigger their duty to report. Even when clear, apparent, and repeated indicators of abuse and grooming were present, Devereux intentionally failed to take action to report this grievous abuse.

**COUNT XII**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**("UTPCPL"), 73 P.S. § 201-1, *et seq.***
**(Plaintiffs Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2 Against Devereux)**

316.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

317.    The UTPCPL prohibits acts of unfair competition and "unfair or deceptive acts or practices."

318.    Devereux is a "person" as defined by 73 P.S. § 201-2 and has engaged in "trade" or "commerce" as defined by 73 P.S. § 201-2.

319.    Plaintiffs Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2 are "person[s]" as defined by 73 P.S. § 201-2 who, through their parents and/or guardians, purchased behavioral health treatment services from Devereux.

320.    Devereux's acts and practices were intended to and did result in the continued sale of services to Plaintiffs, and those acts and practices violated the UTPCPL, 73 P.S. § 201-2, including by:

> a.    Representing that their services had characteristics or benefits that they did not have;

b.      Representing that their services were of a particular standard, quality or grade, when they were not;

c.      Advertising services with intent not to sell them as advertised; and

d.      Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

321.     Devereux's acts and practices violated the UTPCPL because Devereux failed to disclose information that was material to Plaintiffs' transactions with them:

a.      When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiffs Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2.

b.      Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

322.     Devereux had ample means and opportunities to alert Plaintiff sat the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Devereux later had means and opportunities to alert Plaintiffs and their families that Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2 had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

323.    Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of their treatment centers. Had Devereux made the above disclosures, revealing to Plaintiffs and their families that in reality, Devereux's patients were subjected to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Plaintiffs would not have been sent to Devereux for their treatment.

324.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from Plaintiffs Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2 and their families.

325.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the UTPCPL, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Devereux. Had it not been for Devereux's deception, Plaintiffs would not have enrolled in Devereux's treatment program and paid the requisite fees. Following their grievous abuse at Devereux, Plaintiffs also required more intensive behavioral health services. Plaintiff Brainard, for example, reports long-lasting PTSD from his time at Devereux which has impacted his ability to work. Plaintiff Kahn similarly describes the resounding psychological impact of being placed in isolation at Devereux for over two weeks at

a time, which led to serious cognitive and emotional effects that continue to interfere with Plaintiff Kahn's employment abilities. Devereux's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms, including these economic harms.

326.   Plaintiffs Kahn, Brainard, Jane Doe 1, John Doe 1, and John Doe 2 are accordingly entitled to actual damages, equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

### COUNT XIII
**Violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41, et seq. (Plaintiff Gilbert Kahn Against Devereux)**

327.   Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

328.   The Texas Deceptive Trade Practices–Consumer Protection Act protects consumers against "false, misleading and deceptive business practices, unconscionable actions, and breaches of warranty" and aims "to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44.

329.   Devereux is a "person" as defined by Tex. Bus. & Com. Code Ann. § 17.45and has engaged in the sale of  "services" as defined by Tex. Bus. & Com. Code Ann. § 17.45.

330.   Plaintiff Gilbert Kahn is a "person" and a "consumer" as defined by Tex. Bus. & Com. Code Ann. § 17.45 who, through his parents and/or guardians, purchased behavioral health treatment services from Devereux.

331.   Plaintiff Gilbert Kahn, through his parents and/or guardians, purchased behavioral health services from Devereux.  In connect with this sale of services, Devereux engaged in "false, misleading, or deceptive acts or practices" in violation of §17.46 of the DTPA including by:

a.  Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

c.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

d.  Advertising goods or services with intent not to sell them as advertised; and

e.  Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

332.   These unfair trade practices occurred in the course of Devereux's business as a behavioral health provider.

333.   Devereux's acts and practices violated the DTPA because Devereux failed to disclose information that was material to Plaintiff's transaction with them:

a.  When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and

processes in place to safely provide care and treatment free from abuse for
Plaintiffs Gilbert Kahn.

b.    Devereux knowingly and intentionally failed to disclose and actively
concealed that youth in Devereux programs had for decades been victims
of sexual, physical, and emotional abuse by Devereux staff, and that
Devereux did not take appropriate actions in response to this known abuse.

334.    Devereux had ample means and opportunities to alert Plaintiff Kahn and his
family at the outset to the fact that it was not employing appropriate processes, protocols, and
safeguards to reasonably protect the youth in its programs and facilities. Devereux later had
means and opportunities to alert Plaintiff Kahn and his family that the plaintiff had suffered
abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

335.    Plaintiff Kahn and his family justifiably and reasonably relied on the assurances,
promises, and representations Devereux made regarding the safety, security of their treatment
centers. Had Devereux made the above disclosures, revealing to Plaintiff Kahn and his family
that in reality, Devereux's patients were subjected  to frequent sexual, physical, and emotional
abuse by staff, and that Devereux did not have adequate procedures and policies in place to
adequately protect and care for vulnerable children, Plaintiff would not have been sent to
Devereux for their treatment.

336.    Devereux had the duty to accurately disclose the nature, safety, and quality of its
behavioral health centers because it made partial representations about the safety and quality of
its facilities. Devereux volunteered this specific information to Plaintiff Kahn and his family
through advertising, on its website, and in documents that its behavioral health treatment centers
provided high quality services, including representations that Devereux places a great emphasis

on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff Kahn, yet actively concealed this information from Plaintiffs Kahn and his family.

337.    As a direct and proximate result of Defendant's deceptive acts and practices in violation of the DTPA, Plaintiff Kahn has suffered actual damages caused by the abuse he endured while at Devereux. Plaintiff Kahn continues to suffer from the lasting psychological and cognitive consequences of his physical abuse, which significantly interfere with his ability to generate an income to support himself. Devereux's misleading statements and omissions were a substantial factor in causing Plaintiff's harms.

338.    Plaintiffs Kahn is accordingly entitled to actual damages, equitable relief, damages for mental anguish, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

**COUNT XIV**
**Violations of the Colorado Consumer Protection Act,**
**Colorado Revised Statutes ("C.R.S.") § 6-1-101, et seq.**
**(Plaintiffs John Doe 3, a Minor By and Through his Parent, and Jane Doe 4 Against Devereux)**

339.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

340.    The Colorado Consumer Protection Act protects consumers by deterring and punishing businesses for engaging in unfair or deceptive trade practices.

341.    Plaintiffs John Doe 3 and Jane Doe 4, through their parents and/or guardians, purchased behavioral health services from Devereux.

342.    Devereux engaged in deceptive trade practices in violation of §6-1-105 of the Colorado Consumer Protection Act including by:

> a.    Knowingly making a false representation as to the source, sponsorship, approval, or certification of their services;

      b.      Knowingly  making a false representation as to the characteristics,

ingredients, uses, benefits, alterations, or quantities of their services;

      c.      Representing that their services, or property are of a particular standard,

quality, or grade, when they knew or should have known that they are of

another; and

      d.      Advertising services with intent not to sell them as advertised.

343.    These unfair trade practices occurred in the course of Devereux's business as a

behavioral health provider.

344.    Devereux's acts and practices violated the Colorado Consumer Protection Act

because Devereux failed to disclose information that was material to Plaintiffs' transactions with

them:

      a.      When advertising its services as a behavioral health provider, Devereux

knowingly and intentionally failed to disclose and actively concealed that

it did not have reasonable and appropriate safeguards, systems and

processes in place to safely provide care and treatment free from abuse for

Plaintiffs John Doe 3 and Jane Doe 4.

      b.      Devereux knowingly and intentionally failed to disclose and actively

concealed that youth in Devereux programs had for decades been victims

of sexual, physical, and emotional abuse by Devereux staff, and that

Devereux did not take appropriate actions in response to this known abuse.

345.    Devereux had ample means and opportunities to alert Plaintiffs at the outset to the

fact that it was not employing appropriate processes, protocols, and safeguards to reasonably

protect the youth in its programs and facilities. Devereux later had means and opportunities to

alert Plaintiffs and their families that John Doe 3 and Jane Doe 4 had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

346.    Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of their treatment centers. Had Devereux made the above disclosures, revealing to Plaintiffs and their families that in reality, Devereux's patients were subjected to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Plaintiffs would not have been sent to Devereux for their treatment.

347.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from John Doe 3, Jane Doe 4, and their families.

348.    Devereux's unfair and deceptive practices continue to have a significant impact on the public.  Every year, over 25,000 families purchase behavioral health services from Devereux across the country, exposing an incredible number of vulnerable children to Devereux's deceptive conduct. Parents of these youth are positioned to be less knowledgeable than a leading behavioral health care provider like Devereux, whose services are meant to provide guidance and support to families navigating the challenges of raising children with

advanced behavioral, emotional, and mental health needs. Children with disabilities are among the most vulnerable of any recipient of a good or service, as they often times do not have the capacity to understand or respond to instances of the most grievous sexual, physical and emotional abuse. Devereux's pattern and practice of deceiving families regarding the safety and security of its programs and the ability of its staff to appropriately monitor and supervise patients has had devastating impacts on the dozens and dozens of children who have been abused during their treatment at Devereux, as detailed above.

349.   As a direct and proximate result of Defendant's deceptive acts and practices in violation of the Colorado Consumer Protection Act, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Devereux. Devereux's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms. Jane Doe 4 and John Doe 3 would not have paid for Devereux's behavioral health services had they not been deceived by Devereux in this way. Plaintiffs' harms therefore include economic harms: instead of receiving the treatment they paid for at Devereux, they were abused.

350.   Plaintiffs Jane Doe 4 and John Doe 3 are accordingly entitled to three times the amount of actual damages incurred, as Devereux acted in bad faith in knowingly failing to provide Plaintiffs with appropriate safety, care, and supervision during their time at Devereux. Plaintiffs also seek equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

**COUNT XV**
**Violations of the Arizona Consumer Fraud Act**
**Arizona Revised Statutes ("A.R.S.") §44-1521 *et seq*.**
**(Plaintiff Jane Doe 5 Against Devereux)**

351.   Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

352.    The Arizona Consumer Fraud Act forbids "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby."  A.R.S. § 44-1522(A).

353.    Devereux is a "person" as defined by A.R.S. § 44-1521(6) and has engaged in a "sale" as defined by A.R.S. § 44-1521(7) of "merchandise" as defined by A.R.S. § 44-1521(5).

354.    Plaintiff Jane Doe 5 is a "person" as defined by A.R.S. § 44-1521(6) who, through her parents and/or guardians, purchased behavioral health treatment services from Devereux.

355.    Devereux used deception in connection with the sale of behavioral health services to Jane Doe 5 and her family by making false promises and misrepresentations, concealing information, and suppressing or omitting material facts with the intent that others rely on such concealment:

    a.    When advertising its services as a behavioral health provider, Devereux knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiff Jane Doe 5.

    b.    Devereux knowingly and intentionally failed to disclose and actively concealed that youth in Devereux programs had for decades been victims of sexual, physical, and emotional abuse by Devereux staff, and that Devereux did not take appropriate actions in response to this known abuse.

356.    Devereux intended that Jane Doe 5 and her family rely upon these deceptive and false representations and omissions in order to solicit the provision of behavioral health services.

357.    Devereux had ample means and opportunities to alert Jane Doe 5 and her family at the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities, yet failed to do so.

358.    Jane Doe 5 and her family justifiably and reasonably relied on the assurances, promises, and representations Devereux made regarding the safety, security of their treatment centers. Had Devereux made the above disclosures, revealing to Jane Doe 5 and her family that in reality, Devereux's patients were subjected to frequent sexual, physical, and emotional abuse by staff, and that Devereux did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Jane Doe 5 would not have been sent to Devereux for their treatment.

359.    Devereux had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Devereux volunteered this specific information to Plaintiff Jane Doe 5 through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Devereux places a great emphasis on the safety and security of its programs. Devereux had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiff, yet actively concealed this information from Jane Doe 5 and her family.

360.    Jane Doe 5 suffered actual damage as a result of her reliance on Devereux's deceptive and unlawful misrepresentations about their behavioral health services. Devereux's misleading statements and omissions were a substantial factor in causing Jane Doe 5's

traumatizing sexual abuse. Had it not been for Devereux's deception, Jane Doe 5 and her family would not have paid for these behavioral health services.  Plaintiff Jane Doe 5 did not receive what she paid for; instead of receiving care and treatment, Jane Doe 5 was grossly abused. Plaintiff therefore suffered economic harms in addition to her physical and emotional harms.

361.    Plaintiff Jane Doe 5 is accordingly entitled to actual damages, equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Devereux from its unlawful, fraudulent and deceitful activities.

## COUNT XVI
## VICARIOUS LIABILITY

362.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

363.    Devereux is vicariously liable for alleged tortious misconduct through *respondeat superior*, negligent supervision, retention and hiring, and/or through enabling the mistreatment alleged herein by providing employment to staff who mistreated Plaintiffs.

364.    When Plaintiffs were physically and emotionally mistreated by Devereux staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Devereux patients, such as by employing medically improper, harmful restraining techniques against Plaintiff who had an ASD diagnosis.

365.    Devereux staff members used their position as employees of Devereux to enable mistreatment, including abuse, of Plaintiffs such that Devereux is vicariously liable for their conduct.

366.    Staff members at Devereux are charged with the care of children with physical, emotional, and/or intellectual disabilities and entrusted to keep them safe. But for their employment at Devereux, staff members would not have been in unsupervised situations with these young and vulnerable victims. Additionally, the responsibilities associated with staff

members' employment has enabled them to exert excessive and abusive authority over victims, including Plaintiffs.

367.    Staff members took advantage of the authority associated with their responsibilities at Devereux to Plaintiffs, including touching him inappropriately.

368.    Devereux staff members' abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

369.    Devereux ratified their staff members' abusive conduct towards Plaintiff by failing to discipline, take corrective action, and/or report the child abuse. For decades, Devereux has sanctioned this culture of abusive behavior by their staff, as described above.

370.    These tortious acts were also foreseeable, as Devereux was aware of repeated incidents of sexual, physical, and emotional abuse of Devereux patients within their facilities. These repeated instances of abuse alerted or should have alerted Devereux that other staff members may be abusing students.

371.    In addition to the long, repeated history of abuse by staff members, Devereux knew that their patients, including Plaintiffs, were particularly susceptible to mistreatment as youth with disabilities and critical mental health needs. Devereux knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

**COUNT XVIIAs a direct and proximate result of Devereux's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer physical and emotional pain and distress.**
**ASSAULT AND BATTERY: JANE DOE 1**
**(Plaintiff Jane Doe 1 Against Devereux)**

372.    Plaintiff Jane Doe 1 incorporates by reference all prior paragraphs as if set forth in full herein.

373.    While residing at Devereux in Malvern, PA between the ages of 14 and 17, Devereux Advanced Behavioral Health's staff members punished Jane Doe 1 with solitary confinement after she reported her roommate's attempts to have unwanted sexual contact with her.

374.    While in solitary confinement, Jane Doe 1, a minor, was raped by Devereux staff on Devereux property.

375.    Devereux staff members subsequently forced Jane Doe 1 to return to live with the same roommate who attempted to assault her. Devereux staff also punished Jane Doe 1 for crying by withholding her meals.

376.    These acts are intentional, unwanted, and offensive physical contacts and/or non-consensual sexual acts towards a minor which constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

377.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 1 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

378.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 1 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

379.     As a direct and proximate result of Defendant's assault and battery, Jane Doe 1 suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Jane Doe 1 for the rest of her life.

**COUNT XVIII**
**ASSAULT AND BATTERY: PLAINTIFF JINES**
**(Plaintiff Jines Against Devereux)**

380.     Plaintiff Jines incorporates by reference all prior paragraphs as if set forth in full herein.

381.     While a patient at Devereux in Santa Barbara, CA at age 13, Devereux staff physically and verbally abused Plaintiff Jines. Devereux staff allowed Plaintiff Jines' roommate to physically abuse and hit her. When she reported this abuse, the Devereux staff members did nothing.

382.     Plaintiff Jines witnessed a man sitting on a couch watching her and other minor girls getting in and out of the shower while naked.

383.     At no time did Plaintiff Jines consent to these abuses and harms that she suffered.

384.     These acts, which include attempts or actual uses of harmful or offensive touching, constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

385.     Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jines by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

386.     Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jines by its staff because it knew or had reason to know of this abusive conduct and

failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

387.    As a direct and proximate result of Defendant's acts, Plaintiff Jines has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XIX
## ASSAULT AND BATTERY: JANE DOE 2
### (Plaintiff Jane Doe 2 Against Devereux)

388.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

389.    Staff members, who are put in charge of Devereux patients and trusted to keep them safe, used the authority and power associated with their roles to abuse Jane Doe 2.

390.    While a patient at Devereux in Woodville, FL between the ages of 14 and 16, Devereux staff forced Plaintiff Jane Doe 2 to kiss another girl while Devereux staff took photos.

391.    Devereux staff members punished Plaintiff Jane Doe 2 by making her move her mattress to the living room to sleep. Devereux staff also withheld food from Jane Doe 2 as punishment.

392.    Devereux misdiagnosed Jane Doe 2 with a mental illness that she did not have. Devereux staff medicated Jane Doe 2 according to this misdiagnosed mental illness.

393.    Plaintiff Jane Doe 2 did not and could not consent to these grievous harms and abuses.

394.    These intentional acts of bodily harm and/or non-consensual sexual acts constitute assault and battery by Devereux Advanced Behavioral Health.

395.     As a direct and proximate result of Defendant's acts, Jane Doe 2 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XX
## ASSAULT AND BATTERY: JANE DOE 3
### (Plaintiff Jane Doe 3 Against Devereux)

396.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

397.     While a patient at Devereux in Woodville, Florida between the ages of 14 and 16, Jane Doe 3 was sexually assaulted, sexually groomed, raped, and physically abused by multiple Devereux staffers.

398.     One Devereux staff member took Jane Doe 3 on an excursion to the movies, where the staff member sexually assaulted Jane Doe 3 in the bathroom.

399.     Another Devereux staff member groomed Jane Doe 3 to have a romantic "relationship" with the staff member, eventually beginning a pattern and practice of picking up Jane Doe 3 in the Devereux van to have sex with Jane Doe 3, a minor, off campus.

400.     Plaintiff Jane Doe 3 did not and could not consent to these grievous harms and abuses.

401.     These intentional acts of bodily harm and/or non-consensual sexual acts with a minor constitute assault and battery by Devereux Advanced Behavioral Health.

402.     As a direct and proximate result of Defendant's acts, Jane Doe 3 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XXI
## ASSAULT AND BATTERY: PLAINTIFF KAHN
### (Plaintiff Gilbert Kahn Against Devereux)

403.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

404.     While residing at Devereux in Devon, Pennsylvania beginning at age 14, Devereux Advanced Behavioral Health's staff members punished Plaintiff Kahn by sedating him with medications including via pills, liquid drugs, and long-acting injections.

405.     While residing at his next Devereux placement in Victoria, Texas, Devereux staff continued to sedate Plaintiff Kahn, this time using Thorazine.

406.     Devereux staff locked Plaintiff Kahn in solitary confinement as "punishment."  At one point, Devereux staff detained him in solitary confinement for two weeks.

407.     These acts are intentional, unwanted, and offensive physical contacts which constitute assault and battery by Devereux.

408.     Although these acts are beyond what is normal or expected of employees, administering medication and punishing students falls within the scope of staff members' duties.

409.     As a direct and proximate result of the Defendant's assault and battery, Plaintiff Kahn suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Plaintiff Kahn for the rest of his life.

## COUNT XXII
## ASSAULT AND BATTERY: PLAINTIFF BERETTA
### (Plaintiff Nicco Beretta Against Devereux)

410.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

411.     While residing at Devereux Deerhaven beginning at age 12, Devereux staff regularly witnessed an older Devereux resident physically and sexually assault Plaintiff Beretta. This abuse included violently dragging Beretta up the stairs and committing sexual assault against Beretta.  Devereux did nothing about this abuse.

412.     These acts are intentional, unwanted, and offensive physical contacts which constitute assault and battery by Devereux.

413.     As a direct and proximate result of the Defendant's assault and battery, Plaintiff Beretta suffered severe and grievous physical and emotional injuries. These injuries will continue to harm Plaintiff Beretta for the rest of his life.

## COUNT XXIII
### ASSAULT AND BATTERY: PLAINTIFF BRAINARD
### (Plaintiff John Brainard Against Devereux)

414.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

415.     While a patient at Devereux in Devon, Pennsylvania beginning at age 6, Devereux staff physically and sexually assaulted Plaintiff John Brainard.

416.     Devereux staff drugged John with powerful ADHD medications against his will and without his consent.

417.     When John was six years old, Devereux staff placed a 15-year-old patient in his room. Without providing any supervision, Devereux staff allowed this teenager to solicit sexual acts from John and forcefully rape him, ignoring his cries for help.

418.     Devereux staff brought John to a laboratory where they strapped him to a table for hours while doctors performed experiments on him. Devereux did not obtain John's consent to perform these tests, which were conducted against his will and without any explanation as to their purpose.

419.     As a direct and proximate result of the Defendant's acts, Plaintiff John Brainard has suffered severe emotional and physical harms that continue to affect him today, and will continue to cause Plaintiff Brainard pain and suffering for the rest of his life.

## COUNT XXIV
### ASSAULT AND BATTERY: JOHN DOE 3
### (Plaintiff John Doe 3, by and through his parent, Against Devereux)

420.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

421.    While a patient at Devereux in Westminster, Colorado at age 14, Devereux staff physically and verbally abused Plaintiff John Doe 3, a young boy with autism.

422.    On at least 60 occasions, Devereux staff forcefully restrained Plaintiff John Doe 3 without his consent, leaving red marks and bruises on his body.  These restraints went beyond the protocol for standard behavioral health management techniques.

423.    In or about June 2020, Devereux staff tackled John Doe 3 and pinned him to the ground after John Doe 3 had gotten into an argument with a peer.

424.    At no time did Plaintiff John Doe 3 consent to these abuses and harms that he suffered through.

425.    These acts, which include attempts or actual uses of harmful or offensive touching, constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

426.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 3 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

427.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 3 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

428. As a direct and proximate result of the Defendant's acts, Plaintiff John Doe 3 has suffered severe emotional and physical harms that continue to affect him today and will continue to cause Plaintiff John Doe 3 pain and suffering for the rest of his life.

## COUNT XXV
## ASSAULT AND BATTERY: JANE DOE 4
### (Plaintiff Jane Doe 4 Against Devereux)

429. Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

430. While a patient at Devereux in Westminster, Colorado at age 14, Devereux staff sexually and physically assaulted Plaintiff Jane Doe 4.

431. When staff members saw Jane Doe 4 smoking a cigarette, they threatened to restrain her with a five-point harness and forced drugs if she did not do jumping jacks in a padded room.

432. Devereux staff drugged Jane Doe 4 using a powerful ADHD medication without her consent, checking her mouth to ensure that she swallowed all the pills that they gave her.

433. During Jane Doe 4's orientation, Devereux staff warned her that male patients at the facility were sexual predators, threatening her to "be careful" around them.

434. Devereux staff also watched Jane Doe 4 and other girls while they showered and would mock the youth by recounting their medical and personal history in front of other patients.

435. Plaintiff Jane Doe 4 did not and could not consent to these grievous harms and abuses.

436. These intentional acts of bodily harm and/or non-consensual sexual acts constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

437. Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 4 by its staff because forcefully restraining Plaintiff falls within the scope of the staff

members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

438.     Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 4 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

439.     As a direct and proximate result of the Defendant's acts, Jane Doe 4 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XXVI
## ASSAULT AND BATTERY: JANE DOE 5
### (Plaintiff Jane Doe 5 Against Devereux)

440.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

441.     While a patient at Devereux in Scottsdale, Arizona at age 14, Jane Doe 5 was repeatedly raped by an adult male staffer.  This Devereux staffer would force her into a private conference room in the middle of the night and make her perform vile sexual acts.  This sexual abuse occurred countless times over a period of seven months.

442.     Plaintiff Jane Doe 5 did not and could not consent to these grievous harms and abuses, and was threatened that if she reported the abuse, she would never be able to return home.

443.     But for the staff member's employment at Devereux, he would not have unsupervised access to Jane Doe 6 in the middle of the night, a situation that he could use to his advantage to further the abuse.

444.    These intentional acts of bodily harm and/or non-consensual sexual acts with a minor constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

445.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 5 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

446.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 5 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

447.    As a direct and proximate result of the Defendant's acts, Jane Doe 5 has suffered severe emotional and physical harms that continue to affect her today and will continue to cause Plaintiff pain and suffering for the rest of her life.

## COUNT XXVII
## ASSAULT AND BATTERY: JANE DOE 6
### (Plaintiff Jane Doe 6 Against Devereux)

448.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

449.    While a patient at Devereux in Newtown Square, Pennsylvania beginning at age 14, Jane Doe 6 was physically and sexually assaulted by Devereux staffers for over one year.

450.    Two Devereux staff members began regularly sexually assaulting Jane Doe 6 every morning and night.  They placed a blanket over her head and touched her breasts, butt and crotch areas.  Jane Doe 6 did not, and could not, consent to these horrific acts by Devereux staff.

451.    On one occasion, a Devereux teacher and assistant punished Jane Doe 6 by physically assaulting her, punching her in the head and kicking her vagina until she was no longer able to stand.  This attack left her crying on the ground for 15 minutes until she was able to return to her classroom.

452.    Devereux staff heavily medicated Plaintiff Jane Doe 6 with Zoloft without her consent and denied her the ability to visit her family after testing positive for benzodiazepines.

453.    These grievous actions are intentional, unwanted, and offensive physical contacts which constitute assault and battery of Jane Doe 6 by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

454.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 6 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

455.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff Jane Doe 6 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

456.    As a result of Devereux's actions, Devereux directly and proximately caused Jane Doe 6 to suffer both physical and emotional harms that she continues to suffer from today. These injuries will continue to cause Jane Doe 6 suffering for the rest of her life.

## COUNT XXVIII
## ASSAULT AND BATTERY: JOHN DOE 1
### (Plaintiff John Doe 1, By and Through His Parent, Against Devereux)

457.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

458.    While a patient at Devereux in Malvern, PA at age 8, John Doe 1 was denied the ability to speak to his parents for his first two weeks at school. John Doe 1 has been diagnosed with ASD.

459.    When John Doe 1 was able to speak to his parents, he told them that he had been hurt and that he was scared, after which Devereux staff made him get off the phone.

460.    When John Doe's parents were unable to reach him by phone any further, they drove to Devereux and discovered a red mark on John Doe's neck. John Doe told them that he was placed in a choke hold and had hit his head when Devereux staff threw him on his bed. John Doe was scared and begged his parents to go home.

461.    Devereux staff refused to tell John Doe 1's parents which staff members had injured John Doe 1. They told his parents that John Doe 1 had been moved to a different unit but refused to tell them whether any actions had been reported to DHS. John Doe 1's parents then removed him from his placement at Devereux despite Devereux staff fighting this decision.

462.    These grievous actions are intentional, unwanted, and offensive physical contacts which constitute assault and battery of John Doe 1 by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

463.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 1 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

464.     Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 1 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

465.     As a result of Devereux's actions, Devereux directly and proximately caused John Doe 1 to suffer both physical and emotional harms that he continues to suffer from today. These injuries will continue to cause John Doe 1 suffering for the rest of his life.

## COUNT XXIX
## ASSAULT AND BATTERY: JOHN DOE 2
### (Plaintiff John Doe 2, By and Through His Parent, Against Devereux)

466.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

467.     While placed at Devereux in Glenmoore, Pennsylvania at age 11, three or more Devereux staff members physical and verbally abused John Doe 2.

468.     John Doe 2 called his mother to warn her of this abuse but could not describe the harms in detail over monitored phone calls. When his mother visited him in person, she witnessed marks on his body including a swollen wrist, thumb marks on his ribs, and thumbnail indentations to his skin.

469.     John Doe 2 told his mother that staff members performed inappropriate restraints by pushing him against the wall while holding their arms on his throat and shoving their knee into his back.

470.     The same staff members publicly berated John Doe 2 when he reacted to the inappropriate restraint by spitting. The staff member mocked and chastised him in front of other youth and staff members, calling him a "little pussy."

471.    After John Doe 2's mother and/or therapist reported this physical and verbal abuse, one male staffer retaliated against John Doe 2 after being investigated on three occasions.

472.    These intentional actions by Devereux staff resulted in an unwanted, harmful, and offensive contact with Plaintiff John Doe 2. Such contact would offend a reasonably person's sense of dignity and constitute assault and battery by Devereux through the doctrine of vicarious liability and/or under principles of negligent hiring, retention, and/or supervision.

473.    Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 2 by its staff because forcefully restraining Plaintiff falls within the scope of the staff members' employment. Devereux staff members work with children suffering from autism and other mental disorders which may necessitate restraint to protect the student, their peers and/or staff from harm.

474.    Further Devereux is vicariously liable for assault and battery perpetrated on Plaintiff John Doe 2 by its staff because it knew or had reason to know of this abusive conduct and failed to act to prevent it. As described above, Devereux knew or should have known of the long history of abuse at its facilities, and failed to act to prevent the practices enabling this mistreatment.

475.    As a result of Devereux's actions, Devereux directly and proximately caused John Doe 2 to suffer both physical and emotional harms that he continues to suffer from today. These injuries will continue to cause John Doe 2 suffering for the rest of his life.

## COUNT XXX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

476.    Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

477.    Devereux's negligent acts and omissions constitute the negligent infliction of emotional distress.

478.     Devereux acted negligently towards each Plaintiff, as described above.

479.     This negligent conduct created an unreasonable risk of physical harm, which caused Plaintiffs to be in fear of their own safety.

480.     Devereux's negligence either placed Plaintiffs in the zone of danger of physical impact or injury or resulted in the Plaintiff suffering actual injury.

481.     Plaintiffs suffered emotional distress as a result of Devereux's negligent conduct. This resulted in physical consequences and/or long-continued emotional disturbance, as described above.

482.     Devereux's conduct was the cause of these damages.

483.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

## COUNT XXXI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

484.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

485.     Devereux's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Devereux acted with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result. Pa. SSJI (Civ) § 17.40; CACI § 1600; Fla. Stat. § 410.

486.     Devereux's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

487.     Moreover, Devereux's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

488.     By permitting a culture of systematic physical, emotional, and sexual abuse at Devereux facilities, Devereux caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

## COUNT XXXII
## BREACH OF FIDUCIARY DUTY

489.     Plaintiffs incorporate by reference all prior paragraphs as if set forth in full herein.

490.     Devereux, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a child is placed in a Devereux facility, Devereux assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

491.     By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Devereux programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Devereux has breached their fiduciary duty towards Plaintiffs.

492.    Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment on their

behalf and against Devereux, and further grant the following relief:

A.    Award Plaintiffs compensatory damages, punitive damages, pain and suffering, and any other relief to which they are entitled under the law;

B.    Award Plaintiffs prejudgment interest, costs and attorneys' fees; and

C.    Award to the Plaintiffs such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs respectfully request a trial by jury as to all matters so triable.

Dated: June 15, 2021                                    Respectfully submitted,


                                                        */s/ Joseph G. Sauder*
                                                        Joseph G. Sauder
                                                        Lori G. Kier
                                                        Davina C. Okonkwo
                                                        **SAUDER SCHELKOPF LLC**
                                                        1109 Lancaster Avenue
                                                        Berwyn, PA 19312
                                                        Phone: (610) 200-0580
                                                        Facsimile: (610) 421-1326
                                                        jgs@sstriallawyers.com
                                                        lgk@sstriallawyers.com
                                                        dco@sstrialllawyers.com

                                                        Annika K. Martin (*admitted pro hac vice*)
                                                        **LIEFF CABRASER HEIMANN &**
                                                        **BERNSTEIN, LLP**
                                                        250 Hudson Street, 8th Floor
                                                        New York, NY  10013
                                                        Phone: (212) 355-9500
                                                        Facsimile: (212) 355-9592
                                                        akmartin@lchb.com

Mark Chalos (*admitted pro hac vice*)
Hannah Lazarz (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com
hlazarz@lchb.com

David Rudovsky
**KAIRYS, RUDOVSKY, MESSING,
FEINBERG & LIN, LLP**
718 Arch Street
Philadelphia, PA 19106
Phone: (215) 925-4400
drudovsky@krlawphila.com

## **<u>CERTIFICATE OF SERVICE</u>**

I, Lori G. Kier, certify that a true and correct copy of the SECOND AMENDED

COMPLAINT has been filed electronically this 15th day of June, 2021 with the Clerk of Court

using the CM/ECF system, which will send notification of such to all counsel of record indicated

below:

> Joseph McHale, Esq.
> Cameron Redfern, Esq.
> Corey Norcross, Esq.
> Jeffrey Lutsky, Esq.
> Stradley Ronon Stevens & Young, LLP
> 30 Valley Stream Parkway
> Malvern, PA. 19355-1481


> */s Lori G. Kier*
> Lori G. Kier